## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CHAD BARRY BARNES, | ) Civ. No. 13-00002 ACK-RLP |
| Plaintiff, | ) |
| v. | ) |
| SEA HAWAII RAFTING, LLC, KRIS HENRY, M/V TEHANI, et al., | ) |
| Defendants. | ) |

## **ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT FOR PAYMENT OF MAINTENANCE**

For the following reasons, the Court DENIES Plaintiff Chad Berry Barnes's Motion for Summary Judgment for Payment of Maintenance.

## **FACTUAL BACKGROUND**[1]

This matter arises under admiralty law. Plaintiff Chad Berry Barnes alleges that he was employed by Defendant Kris Henry and/or Defendant Sea Hawaii Rafting as a crew member on the vessel M/V TEHANI. (Compl. ¶¶ 14-15.) On July 3, 2012, Barnes was injured when an explosion occurred under the deck of the boat as Barnes was starting its engine and helping to launch it into the Honokohau Small Boat Harbor in Kailua-Kona, Hawaii. (Id. ¶¶ 12-13.) Barnes alleges that he suffered severe physical and

---

[1] The facts as recited in this Order are for the purpose of disposing of the current motion and are not to be construed as findings of fact that the parties may rely on in future proceedings.

emotional injuries as a result of the accident that require "ongoing medical treatment, loss of time from work, and may have left him permanently disabled." (Id. ¶¶ 16-17.)

**PROCEDURAL BACKGROUND**

On January 1, 2013, Barnes filed a Verified Complaint against Sea Hawaii Rafting, LLC, Kris Henry, and a number of Doe defendants, *in personum*, and M/V TEHANI, HA-1629 CP, and her engines, equipment, tackle, stores, furnishings, cargo and freight, *in rem* (together, "Defendants"). (Doc. No. 1 ("Compl.").) In his complaint, Barnes brings the following claims: (1) negligence under the Jones Act, 46 U.S.C. § 688, against the *in personam* Defendants (Count I); (2) unseaworthiness as against the M/V TEHANI (Count II); (3) maintenance, cure, and wages under general maritime law (Count III); (4) compensation and recovery for negligence pursuant to the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 905, against the *in personam* and *in rem* Defendants (Counts IV-VII); (5) individual liability of Defendant Kris Henry and the Doe Defendants for the negligence of Sea Hawaii Rafting, pursuant to a theory of "piercing the veil of limited liability" (Count VII); and (6) intentional and/or negligent infliction of emotional distress as against all Defendants (Count VIII). (Id. ¶¶ 23-71.) Barnes seeks compensatory damages, punitive damages, and recovery of attorneys' fees.

On August 20, 2013, Barnes filed a Motion for Summary Judgment for Payment of Maintenance and Cure, asking for judgment as to Count III of his complaint. (Doc. No. 25.) On November 15, 2013, the Court issued its Order Granting in Part and Denying in Part Plaintiff's Motion for Summary Judgment for Payment of Maintenance and Cure.[2/] (Doc. No. 44 ("11/15/13 Order").) In the 11/15/13 Order, the Court found that Barnes is entitled to maintenance and cure from July 3, 2012 (the date of his injury) until he reaches maximum cure. (Id. at 9.) The Court denied Barnes's motion as to the appropriate amount of maintenance and cure, finding that Barnes failed to proffer sufficient evidence to demonstrate the reasonable amount of maintenance for a seaman in Barnes's locality, and failed to prove his medical expenses.[3/] (Id. at 18.)

On January 27, 2014, Barnes filed the instant Motion for Summary Judgment, supported by a concise statement of facts and a number of exhibits. (Doc. Nos. 58, 59.) Defendants filed their memorandum in opposition, also supported by a concise

---

[2/] In the 11/15/13 Order, the Court urged the parties to engage in a settlement conference in an effort to reach a stipulation with respect to the amount of maintenance payments. (Id. at 15 n.9.) Defendants have offered to stipulate to $30 per day without prejudice to a future determination as to the fairness of that amount. (Defendants' Concise Statement of Facts ("CSF"), Ex. 1.) Barnes has apparently declined this offer.

[3/] On November 22, 2013, Barnes filed a Motion for Reconsideration of the 11/15/13 Order. (Doc. No. 45.) The Court denied the motion on December 13, 2013. (Doc. No. 51.)

3

statement of facts and numerous exhibits, on March 24, 2014. (Doc. Nos. 68, 69.) Barnes filed his reply, with exhibits attached, on April 1, 2014. (Doc. No. 71.)

A hearing on the motion was held on April 14, 2014.

**STANDARD**

Summary judgment is appropriate when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If that burden has been met, the nonmoving party must then come forward and establish the specific material facts in dispute to survive summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party. Id. at 587.

In supporting a factual position, a party must "cit[e] to particular parts of materials in the record . . . or show[]

4

that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita</u>, 475 U.S. at 585. "[T]he requirement is that there be no <u>genuine</u> issue of material fact . . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Anderson</u>, 477 U.S. at 247–48 (emphasis in original). Also, "[t]he mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient[]" to defeat summary judgment. <u>Triton Energy Corp. v. Square D Co.</u>, 68 F.3d 1216, 1221 (9th Cir. 1995). Likewise, the nonmoving party "cannot defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." <u>Hernandez v. Spacelabs Med. Inc.</u>, 343 F.3d 1107, 1112 (9th Cir. 2003).

## **DISCUSSION**

In the instant motion, Barnes seeks summary judgment solely as to the proper amount of maintenance. Barnes notes that the Court, in its 11/15/13 Order, found that Barnes had proffered sufficient evidence to show that his actual expenses are $2,050 per month, or approximately $68 per day, and that Barnes is entitled to maintenance in the amount of his actual expenses up

to the reasonable amount for his locality. (Mot. at 5; see also 11/15/13 Order at 12, 14.) With the instant motion, therefore, Barnes seeks to demonstrate the reasonable cost of living in his locality. Relying upon two affidavits (Barnes's own affidavit regarding his investigation of the cost of food and lodging in Kailua-Kona, and the affidavit of Sarah Ellen Gray, a single seaman living at the Honolulu Sailor's Home), Barnes argues that the reasonable cost of living for a seaman in Kailua-Kona is between $50 and $57 per day. (Mot. at 7.) Barnes therefore requests that the Court award him maintenance payments of $54 per day from the date of his injury until he reaches maximum medical cure. (Reply at 14.)

**I.      Maintenance and Cure**

When a seaman is injured in the service of his vessel, the shipowner has an obligation to pay maintenance (room and board), cure (medical expenses), and unearned wages. Vaughan v. Atkinson, 369 U.S. 527, 531–33 (1962); Lipscomb v. Foss Maritime Co., 83 F.3d 1106, 1109 (9th Cir. 1996). The entitlement to maintenance and cure continues until the seaman reaches "maximum cure" - a recovery as complete as the injury allows. Permanente S.S. Corp. v. Martinez, 369 F.2d 297, 298–99 (9th Cir. 1966) (stating that the obligation to furnish maintenance and cure "continues until the seaman achieves maximum recovery; that is, until the seaman is well or his condition is found to be

6

incurable."); see also Berg v. Fourth Shipmor Assocs., 82 F.3d 307, 309 (9th Cir. 1996) (same). When a seaman is injured in the service of a vessel, the employer must pay maintenance and cure even where the employer is not at fault. Aquilar v. Standard Oil Co. of N.J., 318 U.S. 724, 730 (1943); Crooks v. United States, 459 F.2d 631, 632 (9th Cir. 1972).[4/]

A plaintiff's burden of proof on a maintenance and cure claim is slight: he need only establish that he was injured or became ill while "subject to the call of duty as a seaman." Aquilar, 318 U.S. at 732. Further, the Court resolves any ambiguities or doubts as to the seaman's right to receive maintenance and cure in favor of the seaman. Vaughan, 369 U.S. at 532. As the Supreme Court has noted, a "shipowner's liability for maintenance and cure [is] . . . not to be defeated by restrictive distinctions nor 'narrowly confined.'" Id. at 532 (quoting Aquilar, 318 U.S. at 730).

---

[4/] The Court notes that it is an open question in the Ninth Circuit whether a pretrial motion for maintenance and cure should be viewed under the summary judgment standard or through an approach that takes into account the flexibility that admiralty law affords to the Court and the deference afforded to seamen. See, e.g., Best v. Pasha Haw. Transport Lines, LLC, 2008 WL 1968334, at *1 (D. Haw. May 6, 2008) (discussing the Ninth Circuit's inconsistent treatment of such motions); Buenbrazo v. Ocean Alaska, LLC, 2007 WL 3165523, at *1 (W.D. Wash. Oct. 24, 2007) (noting the "obvious tension" between summary judgment and resolving all doubts in favor of the seaman). The Court need not determine which standard of review is appropriate here, however, as even under the more flexible standard viewing the facts in the light most favorable to Barnes, the existence of genuine issues of fact preclude judgment in his favor.

This Court has already found that Barnes is entitled to payment of maintenance from the date of his accident until he reaches maximum cure. (11/15/13 Order at 21.) Defendants nevertheless argue that Barnes is not entitled to maintenance payments for times during which he has not incurred any food or lodging costs. Defendants note that Barnes has stated that he has been living on the charity of friends for the past year. (Opp'n at 11.) This statement may not, however, be used as a basis for denying Barnes maintenance payments. Generally, "if the seaman's actual expenses are not sufficient to afford him food and lodging that are reasonably adequate, the court should award maintenance sufficient to provide reasonable food and lodging, even if the award exceeds the seaman's actual costs." Hall, 242 F.3d at 587. In other words, if a seaman's actual expenses for rent are quite low because he cannot afford adequate housing, as appears to be the case here, this does not mean that he is not entitled to a reasonable amount of maintenance. This is in keeping with the courts' traditional solicitude for the "poor, friendless and improvident" seaman. See Calmar S.S. Corp. v. Taylor, 303 U.S. 525, 528 (1938).

Moreover, while it is true that a seaman is only entitled to the reasonable cost of food and lodging where he has actually incurred the expense, "when the seaman has made 'an expressed intention' to pay for lodging and food, even if the

obligation is not legally enforceable, the seaman may recover maintenance." Hall, 242 F.3d at 287-88. Here, even for those periods of time during which he has been "couch surfing," or relying upon the charity of his friends and family to provide for his food and lodging, Barnes has stated that he intends to repay this charity when he is able. In an affidavit attached to his reply in support of the instant motion, Barnes states that "[a]lthough I have stated that I have been sleeping on couches due to the charity of friends, I did not mean that I am not obligated to pay them back for their help . . . . we have all agreed that I must pay them back for their 'charity' when I am able to do so."[5/] (Reply, Barnes Aff. ¶ 21.) It thus appears that Barnes has made "an expressed intention" to pay for his food and lodging and is therefore entitled to a reasonable amount in maintenance even for those periods during which he has had to rely upon the charity of others. See Hall, 242 F.3d at 588; see also Barnes v. Andover Co., L.P., 900 F.2d 630, 641 (3rd Cir. 1990) ("[A] seaman living with his family is entitled to maintenance if he shows that he paid his family for his room and board or that he had promised that he would and was obliged to do so.").

---

[5/] Similarly, Barnes stated in the June 11, 2013 letter attached as Exhibit D to his first Motion for Summary Judgment for Payment of Maintenance and Cure that his father has been subsidizing his rent each month "with the agreement all monies will be paid back to him." (Doc. No. 25, Ex. D at 1.)

9

The Court therefore turns to an analysis of the issue before it in the instant motion: the proper rate of maintenance.

## II. **Amount of Maintenance**

As this Court stated in its 11/15/13 Order, when determining maintenance, the Court must look at both reasonable expenses and Barnes's actual expenses. Specifically, "[a] seaman is entitled to the reasonable cost of food and lodging, provided he has incurred the expense." Hall v. Noble Drilling, Inc., 242 F.3d 582, 587 (5th Cir. 2001). Determining the maintenance award involves three steps:

> First, the court must estimate two amounts: the plaintiff seaman's actual costs of food and lodging; and the reasonable cost of food and lodging for a single seaman in the locality of the plaintiff. In determining the reasonable costs of food and lodging, the court may consider evidence in the form of the seaman's actual costs, evidence of reasonable costs in the locality or region, union contracts stipulating a rate of maintenance or per diem payments for shoreside food or lodging while in the service of a vessel, and maintenance rates awarded in other cases for seamen in the same region.
>
> ...
>
> Second, the court must compare the seaman's actual expenses to reasonable expenses. If actual expenses exceed reasonable expenses, the court should award reasonable expenses. Otherwise, the court should award actual expenses. Thus, the general rule is that seamen are entitled to maintenance in the amount of their actual expenses on food and lodging up to the reasonable amount for their locality.
>
> Third, there is one exception to this rule that the court must consider. If the court concludes that the plaintiff's actual expenses were inadequate to provide him with reasonable food and lodging, the plaintiff is

> entitled to the amount that the court has determined is
> the reasonable cost of food and lodging. This insures
> that the plaintiff's inability to pay for food and
> lodging in the absence of maintenance payments does not
> prevent him from recovering enough to afford himself
> reasonable sustenance and shelter.

Id. at 590.

Here, Barnes argues that the maintenance rate should be set at $54 per day. (Mot. at 7; Reply at 14.) Defendants argue that Barnes has failed to establish either his actual expenses, or the reasonable expenses in his locality.

First, as to Barnes's actual expenses, this Court found in its 11/15/13 Order that Barnes produced sufficient evidence that they are $2,050 per month, or approximately $68 a day.[6] (11/15/13 Order at 11-12.) Defendants argue, however, as they did in opposition to Barnes's prior motion, that Barnes's claims regarding his expenses, absent substantiation with receipts, are insufficient to establish his actual expenses. (Opp'n at 8-9.) As this Court stated in its 11/15/13 Order, however, a seaman's burden in producing evidence establishing his actual expenses is "feather light." Yelverton v. Mobile Laboratories, Inc., 782 F.2d 555, 558 (5th Cir. 1986); see also Hall, 242 F.3d at 590. Indeed, a plaintiff's own testimony as to the cost of room and board in the community where he is living is sufficient to support an

---

[6] Barnes's total claimed eligible monthly expenses included $500 for rent, $200 for utilities, and $1,350 ($45/day x 30 days) for food, for a total of $2,050, or approximately $68 per day ($2,050 divided by 30 days). (See 11/14/13 Order at 11 n.7.)

11

award. Yelverton, 782 F.2d at 558; see also Hall, 242 F.3d at 585, 591 (noting that plaintiffs "presented itemized lists of their expenses," and finding this sufficient evidence of their actual expenses). Barnes submitted as an exhibit attached to his first Motion for Summary Judgment for Payment of Maintenance and Cure a letter itemizing his monthly expenses. (Doc. No. 25 (1st Mot.), Ex. D.) This Court found in its 11/15/13 Order that the letter was sufficient to establish Barnes's actual monthly expenses as $2,050 per month, or approximately $68 per day. (11/15/13 Order at 12.) Barnes is entitled to maintenance in the amount of the actual cost of his food and lodging, "up to the reasonable amount for [his] locality." See Hall, 585 F.2d at 590. As such, the Court's determination on the instant motion turns on an assessment of Barnes's claimed actual expenses[7/] in light of the evidence proffered as to the reasonable expenses for a seaman in Barnes's locality. See Hall, 242 F.3d at 590.

With respect to reasonable expenses, as an initial matter the Court notes that, surprisingly, neither party has

---

[7/] Defendants also argue that Barnes has made inconsistent statements as to his actual expenses. (Opp'n at 11-12.) This argument appears, however, to misunderstand the purpose of Barnes's affidavit in the instant motion. Whereas the affidavit and exhibits attached to his prior motion for summary judgment were made for the purpose of establishing Barnes's actual costs, (see Doc. No. 25, Barnes Aff. & Ex. D), Barnes's affidavit here is made for the purpose of establishing the reasonable cost of living in Barnes's locale. As such, the fact that there is some discrepancy between the figures in the two statements is unremarkable.

produced any expert testimony. Without offering any expert testimony of their own, Defendants argue that the affidavits Barnes provides in support of his claims regarding the cost of living in his locale (one by Barnes himself and one by a fellow seaman residing in Honolulu) are insufficient to establish a reasonable maintenance rate. While it is true that the affidavits are far from the most probative evidence conceivable regarding the reasonable cost of living in Barnes's locale, they are nevertheless relevant and the Court will consider them. See Morel v. Sabine Towing & Transp. Co., Inc., 669 F.2d 345, 347 (5th Cir. 1982) (acknowledging that a seaman's own testimony regarding the reasonable cost of room and board in his locale was not "the most probative evidence one might conceive[,]" but was nevertheless admissible and relevant); see also Yelverton, 782 F.2d at 558 (stating that a seaman's "own testimony as to reasonable cost of room and board in the community where he is living is sufficient to support an award.")

First, Barnes offers the affidavit of Sarah Ellen Gray, a seaman residing at the Honolulu Sailor's Home in Honolulu.[8/] (See Mot. Ex. I (Gray Aff.).) Ms. Gray states that she rents a single room with a shared shower and toilet in the Honolulu

---

[8/] The Court notes that both parties argue that there may be differences in the cost of living between Honolulu and Kailua-Kona (see Reply at 8; Opp'n at 16); however, neither party provides any evidence to support such an assertion or clarify what those differences may be.

Sailor's Home for $22 per day, and that she could rent a single room with a private toilet for $30 per day.[9/] (Id. ¶¶ 7-8.) Ms. Gray states that she spends between $27 and $31 per day on food.[10/] (Id. ¶¶ 11-15, 22.) In sum, Ms. Gray states that the reasonable allowable maintenance expenses for a seaman in Honolulu are approximately $49 to $66 per day.

The second affidavit in support of Barnes's claim as to reasonable expenses in his locale is Barnes's own affidavit in which he reports the results of an investigation he conducted to determine the reasonable cost of living for a single seaman living in Kailua-Kona. (See Mot. Ex. I (Barnes Aff.).) In addition to his own statements regarding the cost of living, Barnes attaches to his affidavit (1) printouts from Craigslist of advertisements for apartments and rooms for rent in the Kailua-Kona area (Exs. A & B); (2) classified advertisements from *West Hawaii Today* for apartments and rooms for rent (Ex. C.); (3) a hand-written estimate of the cost of renting a room in a Kailua-Kona hostel (as well as reviews of the hostel), and a brochure listing the prices for rooms at two local hotels (Exs. D-F.); (4)

---

[9/] Ms. Gray states that these rates are set to increase to $25 and $35 per day, respectively, at some point in the near future. (Id. ¶ 9.)

[10/] Ms. Gray also lists a number of expenses that are not allowable maintenance expenses, including toiletries, clothing, transportation, and telephone service. See Hall, 242 F.3d at 587 n.17.

a spreadsheet setting forth selections from the weekly specials at Safeway.com for the week of January 22, 2014 (Ex. H.); and (5) sample menus from local restaurants (Ex. G.) Barnes states that, based on his investigation and the attached exhibits, the reasonable rate for rent and utilities in Kailua-Kona is between $720 and $900 per month, or $25 and $30 per day. (Barnes Aff. ¶ 31.) He states that food from a grocery store costs approximately $21 to $25 per day, and to eat three meals a day out costs approximately $35 per day.[11/] (Id. ¶¶ 21-27, 31.) Because the costs for rent and utilities that Barnes sets forth are based on rental listings that would allow a person to cook his meals at home, the Court will consider the costs for groceries that Barnes sets forth, rather than the costs associated with eating three meals per day out at restaurants. Excluding those costs Barnes lists that are not permissible maintenance expenses, Barnes's affidavit indicates that the reasonable cost of living for a single seaman in Kailua-Kona is approximately $46 to $55 per day.

Taking the two affidavits together, and including only those expenses allowable in maintenance, it appears Barnes's evidence suggests that the reasonable cost of food is between $21 and $31 per day, and that the reasonable cost of rent is between

---

[11/] In his affidavit, Barnes includes a number of expenses that are not allowable maintenance expenses, including laundry, clothing, and telephone service. See Hall, 242 F.3d at 587 n.17.

$22 and $30 per day. This would indicate that the reasonable maintenance rate is between $43 and $61 per day.[12]

Defendants, on the other hand, argue that, contrary to Barnes's assertions, a reasonable maintenance rate for Barnes's locale is between $30 and $33 per day. (Opp'n at 21-22.) Further, Defendants state that as of November 13, 2013[13] they have begun making maintenance payments of $30 per day to Barnes. (Opp'n at 22 & Ex. 8.)

Defendants assert that Barnes's proffered evidence as to the reasonable costs for food and rent in his locale is contradicted by Defendants' own evidence and, thus, summary judgment is inappropriate. (Opp'n at 12-13.) With respect to the cost of rent, Defendants submit evidence of rentals with rents ranging from $360 to $650 per month, or $12 to $22 per day. (Id. Exs. 5 & 6.) Barnes counters that the rentals Defendants submit that are less than approximately $600 per month (or $20 per day) are unsuitable for him, either because they require the applicant to have a job (and he is unable to work because of his injury), or because they are located outside of walking distance from

---

[12] Puzzlingly, in his Reply, Barnes states that "[t]he cost of living asserted by the Plaintiff is, by necessity, hypothetical." (Reply at 10.) Nevertheless, it appears Barnes has provided some evidence to support his claims regarding the cost of living.

[13] It appears Defendants actually sent the first payment to Barnes on March 10, 2014; however, the payment covered the period of November 13, 2013 to March 10, 2014. (Opp'n, Ex. 8.)

downtown Kailua-Kona, where all of his medical providers are located (Barnes is unable to drive or ride a bike because of his medical condition). (See Reply, Barnes Aff. ¶¶ 5-15.)

As to the cost of food, Defendants argue that Barnes's own testimony as to the reasonable cost of food in his area, along with his proffered evidence from one Safeway store, is insufficient to support a finding as to the reasonable cost of food because it is not representative of costs generally, and merely reflects one store's prices on one given day. (Opp'n at 14-15.) Defendants further argue that Barnes's claim that the reasonable cost of food is between $21 and $31 per day is contradicted by the United States Department of Agriculture ("USDA"), Center for Nutrition Policy and Promotion statistics regarding the costs for food for a single male Barnes's age living in Hawaii. (Id.) Specifically, Defendants attach to their opposition the Official USDA Alaska and Hawaii Thrifty Food Plans[14/] for the second half of 2012 and the year of 2013. (Opp'n Ex. 7.) According to the USDA plans, for the second half of 2012, a single male living in Hawaii has an average food cost of approximately $360.24 per month, or $12.01 per day. (Opp'n, Ex. 7

---

[14/] The USDA's Thrifty Food Plan ("TFP") is the cheapest of the USDA's four model food plans specifying types and amounts of foods that provide a nutritious diet at different cost points. The TFP is used to set benefit levels for the Supplemental Nutrition Assistance Program (formerly known as the food stamp program). USDA, USDA Food Plans: Cost of Food, http://www.cnpp.usda.gov/USDAFoodPlansCostofFood.htm.

at 1.) The figure for the first half of 2013 is $367.44 per month, or $12.25 per day, and the figure for the second half of 2013 is $361.32 per month, or $12.04 per day. (Id. at 2-3.)

In sum, Defendants proffer evidence that the reasonable cost of food for Barnes in his locality[15/] is approximately $12 per day, and the reasonable cost of rent is between $12 and $22 per day, for a total reasonable maintenance rate of between $24 and $34 per day. Barnes, on the other hand, has produced evidence that the reasonable cost of food is between $21 and $31 per day, and the reasonable cost of rent is between $22 and $30 per day, for a total maintenance rate of between $43 and $61 per day. Based on the disparities between the evidence provided by the parties on the reasonable cost of living, the Court finds that there is a genuine dispute of material fact. The Court cannot, therefore, make a determination as a matter of law as to the reasonable cost of living in Barnes's locale, or as to the proper amount of maintenance in this case. The Ninth Circuit has ruled that a court may properly refuse to compel maintenance before trial when issues of fact still exist. See Glynn v. Roy Al Boat

---

[15/] The Court notes that the USDA cost estimates are for a single male of Barnes's age living in the State of Hawaii, and do not appear to address whether the cost of living in Kailua-Kona may be more or less than the average cost of living for the state as a whole. As noted above, both parties make arguments regarding differences between the cost of living in Kailua-Kona and Honolulu; however, neither party has produced any evidence establishing what those differences may be.

Mgm't Corp., 57 F.3d 1495, 1505-06 (9th Cir. 1995) (abrogated on other grounds) (stating that this district court "did not err in concluding that a grant of maintenance was premature" where a disputed issue of fact remained). This is such a case. Because factual issues remain, the Court cannot make a determination as to the proper rate of maintenance at this time.

### **CONCLUSION**

For the foregoing reasons, the Court DENIES Barnes's Motion for Summary Judgment for Payment of Maintenance.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 15, 2014



_____
Alan C. Kay
Senior United States District Judge

Barnes v. Sea Hawaii Rafting, et al., Civ. No. 13-00002 ACK-RLP, ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT FOR PAYMENT OF MAINTENANCE.

19