IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

CHAD BARRY BARNES,       )   Civ. No. 13-00002 ACK-RLP
                    )
       Plaintiff,   )
                    )
   v.               )
                    )
SEA HAWAII RAFTING, LLC, KRIS )
HENRY, M/V TEHANI, et al.,   )
                    )
       Defendants.  )
_____)

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO UNSEAWORTHINESS, NEGLIGENCE PER SE, AND JONES ACT NEGLIGENCE, AND DISMISSING DEFENDANT M/V TEHANI FOR LACK OF JURISDICTION**

      For the following reasons, the Court GRANTS IN PART AND DENIES IN PART Plaintiff Chad Berry Barnes's Motion for Summary Judgment as to Unseaworthiness, Negligence Per Se, and Jones Act Negligence. (Doc. No. 108.) As to Count XII of the First Amended Complaint (Barnes's negligence per se claim), the Court GRANTS the Motion as to Defendant Sea Hawaii Rafting, LLC, but DENIES it as to the remaining Defendants. The Court DENIES the Motion as to Counts I and II. In addition, the Court DISMISSES all claims against Defendant M/V Tehani, *in rem*, for lack of jurisdiction.

**FACTUAL BACKGROUND**

      This matter arises under admiralty law. Plaintiff Chad Berry Barnes claims he was injured while working as a seaman aboard the vessel M/V TEHANI. Defendant Sea Hawaii Rafting, LLC is the owner of the Tehani, and Defendant Kris K. Henry is the

Master of Vessel of the Tehani and sole owner and manager of Sea Hawaii Rafting, LLC. (Def.'s CSF, Henry Decl. ¶¶ 1, 3 & Ex. A; Pl.'s CSF, Ex. I; Answer ¶ 10.) The vessel is a 25-foot rigid-hull inflatable boat powered by twin outboard engines. (Def.'s CSF, Henry Decl. ¶ 3.)

On July 3, 2012, the date of the accident in question, Barnes states that he was called into work to replace a deck hand who was unable to work as scheduled. (Pl.'s CSF, Ex. J (Barnes Aff.) at ¶ 3.) At the time of the accident, Henry and Barnes were preparing the vessel for an evening snorkel trip. (Id. ¶ 4.) Henry was backing the Tehani, which was on a trailer, into the water at the Honokohau Small Boat Harbor in Kailua-Kona, Hawaii. (Def.'s CSF ¶ 9.) Once the vessel was lowered into the water, Henry instructed Barnes to start the engine; when Barnes did so, there was an explosion from under the floorboards which caused parts of the vessel to be thrown into the air, striking Barnes on the back of the head and causing his claimed injuries. (Pl.'s CSF, Ex. E (Coast Guard Investigator Statement Form) at 1; Def.'s CSF ¶¶ 9-10.)

The explosion and fire appear to have been caused by fuel that had leaked out of the fuel tank through a missing bolt in the fuel tank sender gauge; the fuel leaked into the bilge and ignited when Barnes started the engine. (Def.'s CSF ¶¶ 14-15; Pl.'s CSF, Ex. C (Offshore Marine Surveyors Field Report) at 1.)

2

## PROCEDURAL BACKGROUND

On January 1, 2013, Barnes filed a Verified Complaint against Sea Hawaii Rafting, LLC, Kris Henry, and a number of Doe defendants, *in personum*, and M/V TEHANI, HA-1629 CP, and her engines, equipment, tackle, stores, furnishings, cargo and freight, *in rem*. (Doc. No. 1.) Barnes filed his unverified First Amended Complaint on May 21, 2014. (Doc. No. 91 ("FAC").) In the First Amended Complaint, Barnes brings the following claims: (1) negligence under the Jones Act, 46 U.S.C. § 688, against the *in personam* Defendants (Count I); (2) unseaworthiness as against the M/V TEHANI, *in rem*, and the *in personam* Defendants (Count II); (3) maintenance, cure, and wages under general maritime law (Count III); (4) compensation and recovery for negligence pursuant to the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 905, against the *in personam* and *in rem* Defendants (Counts IV-VI); (5) individual liability of Defendant Kris Henry and the Doe Defendants for the negligence of Sea Hawaii Rafting, pursuant to a theory of "piercing the veil of limited liability" (Count VII); (6) intentional and/or negligent infliction of emotional distress as against all Defendants (Count VIII); and Jones Act negligence per se (Count XII).[1/] (Id. ¶¶ 23-71.) On

---

[1/] With his First Amended Complaint, Barnes also filed a demand for jury trial. (Doc. No. 91, Ex. 3.) While no jury trial is available to claims brought under general admiralty law, see Fed. R. Civ. P. 38(e), Barnes's Jones Act claims do give rise to a right to trial by jury. See 46 U.S.C. § 30104. The United

July 7, 2014, Defendants Kris Henry, M/V Tehani, and Sea Hawaii Rafting, LLC filed their Answer to the First Amended Complaint. (Doc. No. 107.)

On August 20, 2013, Barnes filed a Motion for Summary Judgment for Payment of Maintenance and Cure, asking for judgment as to Count III of his complaint. (Doc. No. 25.) On November 15, 2013, the Court issued its Order Granting in Part and Denying in Part Plaintiff's Motion for Summary Judgment for Payment of Maintenance and Cure. (Doc. No. 44.) In the Order, the Court found that Barnes is entitled to maintenance and cure from July 3, 2012 (the date of his injury) until he reaches maximum cure, and that Barnes had sufficiently proffered evidence that his actual daily expenses are approximately $68 per day. (Id. at 9, 12.) The Court denied Barnes's motion as to the appropriate

---

States Supreme Court has ruled that a seaman who joins in one complaint claims under the general admiralty law and the Jones Act, all arising out of one set of facts, is entitled to a jury trial as of right on all claims. See Fitzgerald v. U.S. Lines Co., 374 U.S. 16 (1963). At the hearing on the instant Motion, counsel for Barnes stated that he wished to withdraw his demand for a jury trial. In addition, on December 17, 2015, Barnes filed a Waiver of Jury Demand. (Doc. No. 196.) Under Rule 39(a) of the Federal Rules of Civil Procedure, after a demand for jury trial has been made, the Court may only proceed with a bench trial if the parties or their attorneys file a stipulation to a nonjury trial or so stipulate on the record. Fed. R. Civ. P. 39(a)(1). Here, counsel for Barnes, counsel for Defendant Henry, and counsel for the bankruptcy trustee in the Sea Hawaii Rafting bankruptcy proceeding all stipulated to a waiver of jury trial on the record during the hearing on the instant Motion. The Court is therefore satisfied that it may proceed with a nonjury trial in this matter.

amount of maintenance and cure; however, finding that Barnes failed to proffer sufficient evidence to demonstrate the reasonable amount of maintenance for a seaman in Barnes's locality, and failed to prove his medical expenses.[2/] (Id. at 18.)

On January 27, 2014, Barnes filed a second Motion for Summary Judgment for Payment of Maintenance. (Doc. No. 58.) The Court denied the motion on April 15, 2014, concluding that issues of fact precluded a determination as a matter of law on the issue of the appropriate rate of maintenance.[3/] (Doc. No. 77.) On May 30, 2014, Barnes filed his Third Motion for Summary Judgment for Payment of Maintenance. (Doc. No. 94.) In addition, on July 1, 2014, Barnes filed a Motion for Summary Judgment for Payment of Cure. (Doc. Nos. 103.) The Court issued orders denying both motions on September 2, 2014. (Doc. Nos. 120, 121.)

On July 7, 2014, Barnes filed the instant Motion for Summary Judgment as to Unseaworthiness, Negligence Per Se, and Jones Act Negligence, along with a concise statement of facts and

---

[2/] On November 22, 2013, Barnes filed a Motion for Reconsideration of the 11/15/13 Order. (Doc. No. 45.) The Court denied the motion on December 13, 2013. (Doc. No. 51.)

[3/] Barnes filed a Motion for Reconsideration of the 4/15/14 Order on April 16, 2014, (doc. no. 78,) which the Court denied on May 14, 2014. (Doc. No. 88.)

numerous exhibits.[4/] (Doc. Nos. 108 & 109.) On September 29, 2014, Defendants filed their memorandum in opposition to the Motion, along with a concise statement of facts and exhibits. (Doc. Nos. 124 & 125.) Barnes did not file a reply.[5/]

---

[4/] The Court notes that Barnes has once again violated the Local Rules by attaching his supporting exhibits to his motion, rather than his separate concise statement of facts. See Local Rule 56.1(h). Additionally, Barnes states in his Motion that he "hereby incorporates by reference all his prior motions for summary judgment in this case, along with all supporting memoranda, declarations, affidavits and exhibits attached thereto." (Mot. at 2.) As this Court made clear in its September 2, 2014 Order Denying Plaintiff's Third Motion for Summary Judgment for Payment of Maintenance, it is a violation of the Federal Rules of Civil Procedure for Barnes to attempt to so incorporate by reference his previous filings. (Doc. No. 120 at 11 & n.9.) Under Federal Rule of Civil Procedure 10(c), parties may incorporate by reference only pleadings or exhibits to pleadings. See Swanson v. U.S. Forest Serv., 87 F.3d 339, 345 (9th Cir. 1996) (holding that, under Rules 7(b)(2) and 10(c), "the incorporation of substantive material by reference is not sanctioned by the federal rules . . .."); Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002) (stating that Rule 10(c) applies to "pleadings" and not "motions". A pleading is a complaint, an answer, or a court-allowed reply to an answer — not a motion or other paper. Fed. R. Civ. P. 7. There is no authority for Barnes's attempt to incorporate prior briefing instead of articulating and supporting with evidence his arguments in the instant motion. See Roth v. Meridian Fin. Network, Inc., No. 07-00045, 2008 WL 3850478, at *2 (D. Haw. Aug. 19, 2008). The Court will therefore not consider any of the materials Barnes purports to incorporate by reference. The Court further notes that Defendants have likewise violated the Local Rules with their own concise statement of facts by failing to include "a single concise statement that admits or disputes the facts set forth in the moving party's concise statement." Local Rule 56.1(b). The Court cautions both parties that further violations of this Court's Local Rules or the Federal Rules of Civil Procedure may result in sanctions.

[5/] Barnes did, however, file a Fourth Motion for Summary Judgment to Set a Maintenance Rate on July 1, 2015. (Doc. No. 157.) During the hearing on the instant motion, the Court

A hearing on the Motion was originally scheduled for November 17, 2014; however, on November 3, 2014, Defendant Kris Henry filed a Notice of Filing of Bankruptcy with this Court, indicating that he had filed for Chapter 13 bankruptcy protection in the United States Bankruptcy Court, District of Hawaii. (Doc. No. 142.) Likewise, on November 13, 2014, Defendant Sea Hawaii Rafting, LLC filed Notice with the Court that it had filed for Chapter 7 bankruptcy protection in the United States Bankruptcy Court, District of Hawaii. (Doc. No. 148.) The Court therefore stayed the instant case pursuant to 11 U.S.C. § 362(a). (Doc. No. 152.) On June 22, 2015, Barnes filed a notice with this Court that the bankruptcy judge had partially lifted the automatic stay

---

questioned the parties regarding the reasonable maintenance rate in Barnes's locale. Counsel for Defendant Henry stated that a rate of $30 per day sounded reasonable. Barnes's counsel declined to stipulate to that rate; however, he stated that he would be agreeable to whatever rate the Court determined. Accordingly, without Barnes's stipulation, the Court will be required to determine the appropriate maintenance rate at trial. In his most recent summary judgment motion regarding maintenance, Barnes has raised no new issues of law or fact that would change this Court's prior conclusion that there is a factual dispute regarding the reasonable maintenance rate for a single seaman in Barnes's locale. (See Doc. 120 at 14.) In view of the foregoing and the fact that this matter will be set for trial shortly, the Court suggests it appears in the interests of justice, as well as the interest of the parties, for Barnes to withdraw his Fourth Motion for Summary Judgment to Set a Maintenance Rate, and for these issues to be determined at trial.

as to Defendant Kris Henry to allow the Court to "value to its conclusion" Barnes's claim against him.[6/] (Doc. No. 155.)

On November 25, 2015, the bankruptcy judge partially lifted the automatic stay as to Defendant Sea Hawaii Rafting, to permit this Court "to adjudicate the validity, extent, amount, and date of perfection of any maritime lien claim by Chad Barnes against the assets of the bankruptcy estate." (Doc. No. 182, Ex. B.) The stay was not lifted, however, for any other purpose, including with respect to the enforcement of any such maritime lien.[7/]

In light of the lifting of the bankruptcy stays, the Court held the hearing on the instant Motion on December 16, 2015. At the hearing, counsel for Barnes appeared, as well as counsel for Defendant Henry (who also represents Henry in his bankruptcy proceeding), and counsel for the bankruptcy trustee in the Sea Hawaii Rafting bankruptcy proceeding.[8/]

───────────────

[6/] The bankruptcy court stated that the stay was not lifted, however, as to the Tehani, reasoning that this Court does not have jurisdiction over the vessel *in rem* because the vessel has not been arrested pursuant to the Supplementary Rules for Certain Admiralty Claims. (See id.)

[7/] This Court thereafter ordered supplemental briefing regarding the issues raised by the bankruptcy court's order. The parties, as well as the Bankruptcy Trustee in the Sea Hawaii Rafting bankruptcy case, each timely filed those briefs. (Doc. Nos. 188, 189 & 194.)

[8/] The Ninth Circuit has stated that, in Chapter 7 liquidation proceedings (like the Sea Hawaii Rafting bankruptcy proceeding), "only the trustee has standing to prosecute or

## STANDARD

Summary judgment is appropriate when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If that burden has been met, the nonmoving party must then come forward and establish the specific material facts in dispute to survive summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party. Id. at 587.

---

defend a claim belonging to the estate." In re DiSalvo, 219 F.3d 1035, 1039 (9th Cir. 2000). Thus, the bankruptcy trustee in the Sea Hawaii Rafting bankruptcy case properly appeared before this Court at the hearing on the instant Motion. With respect to Chapter 13 reorganization proceedings (like Defendant Henry's bankruptcy proceeding), however, the same cannot be said; in those cases "the debtor has express authority to sue and be sued." Id. Thus, counsel for Defendant Henry may continue to represent him in the instant litigation, notwithstanding the ongoing Chapter 13 proceeding.

In supporting a factual position, a party must "cit[e] to particular parts of materials in the record . . . or show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 585. "[T]he requirement is that there be no genuine issue of material fact . . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 247-48 (emphasis in original). Also, "[t]he mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient[]" to defeat summary judgment. Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995). Likewise, the nonmoving party "cannot defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." Hernandez v. Spacelabs Med. Inc., 343 F.3d 1107, 1112 (9th Cir. 2003).

## **DISCUSSION**

## **I.   Preliminary Issues Arising Out of the Ongoing Bankruptcy Proceedings**

As an initial matter, the Court must determine the extent to which it may proceed in the instant litigation, in light of the ongoing bankruptcy proceedings. First, as to

Defendant Henry, the bankruptcy court lifted the automatic stay to allow the Court to "value to its conclusion" Barnes's claims against him. (Doc. No. 155.) The Court therefore concludes that it may proceed in analyzing the underlying issues of liability as to Defendant Henry.

As to Defendant Sea Hawaii Rafting, the bankruptcy court lifted the automatic stay to permit this Court to "adjudicate the validity, extent, amount, and date of perfection of any maritime lien claim by Chad Barnes against the assets of the estate in bankruptcy."[9] (Doc. No. 182, Ex. B.) Thus, the

---

[9] In a separate order adjudicating the Bankruptcy Trustee's Objection to Barnes's "Notice of Maritime Lien" in the Sea Hawaii bankruptcy proceeding, the bankruptcy judge ruled that, because Barnes had failed to file any opposition to the Objection or otherwise provide evidence of his claim, any unsecured prepetition claim of Barnes's is "disallowed in its entirety." (Doc. No. 182, Ex. A.) The bankruptcy court further found that Barnes's claim for maintenance and cure is a prepetition claim because it arises out of a prepetition incident, even though his damages may continue to accrue post-petition. (Id.) Barnes did not appeal the ruling. In a minute order issued on December 4, 2015, this Court informed the parties that it is "constrained to proceed in conformance with the bankruptcy judge's rulings" as to these matters. (Doc. No. 187); see In re Millenium Seacarriers, Inc., 419 F.3d 83, 94 (2d Cir. 2005) (noting that "the doctrine of custodia legis has typically been invoked to resolve [the] apparent conflict between bankruptcy proceedings and admiralty actions in rem," and that under that doctrine, "the court that first secures custody of the property administers the property."). The Court notes that, during the hearing on the instant Motion, counsel for Barnes asserted that he wished to bring an interlocutory appeal; however, it is unclear which particular order or decision he wishes to appeal. It appears he may have been referring to an appeal from the bankruptcy court's ruling that his claim for maintenance and cure is a prepetition claim. If that is the case, Barnes should have brought any such appeal in the bankruptcy court. To the extent Barnes is seeking

Court must as an initial matter determine the extent to which Barnes has a valid, perfected maritime lien.

In general, maritime liens exist to keep ships moving in commerce, while preventing them from sailing away from the debts they incur. Ventura Packers, Inc. v. F/V JEANINE KATHLEEN, 305 F.3d 913, 919 (9th Cir. 2002). The theoretical basis for the maritime lien rests on the legal fiction that the ship itself caused the loss and may be called into court to make good. Id. Maritime liens arise at the time that the debt arises. Governor and Co. of Bank of Scotland v. Sabay, 211 F.3d 261, 267-68 (5th Cir. 2000) ("A maritime lien arises from the moment of the service or occurrence that provides its basis."). Thus, under the general maritime law, a seaman injured in the service of a vessel is entitled to recover maintenance and cure and other damages, and has a priority maritime lien on the vessel.[10] See The Imperator, 288 F. 372, 373 (5th Cir. 1923); Associated Metals and Minerals Corp. v. Alexander's Unity M/V, 41 F.3d 1007, 1011-12

---

an interlocutory appeal in the litigation before this Court, he should do so by filing an appropriate motion.

[10] The Court notes, however, that claims arising under the Jones Act, rather than the general maritime law, do not create a maritime lien. Plamals v. The Pinar Del Rio, 277 U.S. 151, 155-57 (1928); see also Johnson v. Venezuelan Line S. S. Co., 314 F. Supp. 1403, 1406 (E.D. La. 1970) ("The Jones Act does not support an in rem action because it does not create a maritime lien."). Thus, in the instant suit, to the extent Barnes has a maritime lien, it only arises out of his maintenance and cure and unseaworthiness claims, and not out of his Jones Act negligence and negligence per se claims against the in personam Defendants.

(5th Cir. 1995); <u>Leger v. Offshore Staffing Servs. of Acadania</u>, Civ. No. 11-1539, 2012 WL 525477, at *3 (W.D. La. Feb. 10, 2012) *report and recommendation adopted sub nom.* <u>Leger v. Offshore Staffing Servs. of Acadiana</u>, Civ. No. 11-1539, 2012 WL 524119 (W.D. La. Feb. 15, 2012). A maritime lien grants the creditor the right to seize the vessel, have it sold, and be paid from the proceeds of the sale. <u>Equilease Corp. v. M/V SAMPSON</u>, 793 F.2d 598, 602 (5th Cir. 1986). This lien follows the vessel, even when it is sold, and remains enforceable against it *in rem*. <u>Id.</u>; <u>see also St. Paul Fire & Marine Ins. Co. v. Chau Van Kha</u>, Civ. No. 05-5059, 2006 WL 2513422, at *3 (E.D. La. Aug. 28, 2006).

Thus, maritime liens are enforced via an *in rem* action against the vessel itself. Admiralty Supplemental Rule C(2)(a) of the Federal Rules of Civil Procedure provides that when a party pursues an *in rem* action to enforce a maritime lien, the complaint for such an action must be verified. <u>United States v. Argent Chem. Labs., Inc.</u>, 93 F.3d 572, 574 (9th Cir. 1996) ("Under the Supplemental Rules for Certain Admiralty and Maritime Claims ..., an *in rem* action begins with a complaint that must 'be verified on oath or solemn affirmation' and that must 'describe with reasonable particularity the property that is the subject of the action.'") (quoting Supplemental Rule C(2)). Absent verification, no lien may attach and the court lacks *in rem* jurisdiction. <u>See</u> <u>Madeja v. Olympic Packers, LLC</u>, 310 F.3d

13

628, 637 (9th Cir. 2002) ("[C]ontrolling precedent dictates that Appellants' failure to verify their complaint deprived the district court of *in rem* jurisdiction."); see also Madeja v. Olympic Packer, LLC, 155 F. Supp. 2d 1183, 1211 (D. Haw. 2001), *aff'd* 310 F.3d 628 (9th Cir. 2002) ("The failure to verify a claim will result in the denial of the maritime lien."); Goodman v. 1973 26 Foot Trojan Vessel, 859 F.2d 71, 74 (8th Cir. 1988) (requiring dismissal of *in rem* action for failure to file an affidavit verifying claims, and to serve and arrest the vessel); Amstar Corp. v. M/V Alexandros T., 431 F. Supp. 328, 334 (D. Md. 1977) ("Both Supplemental Rule B(1) and Supplemental Rule C(2) require that an action of this sort be instituted by means of a verified complaint."), *aff'd*, 664 F.2d 904 (4th Cir. 1981)).

Here, it appears Barnes failed to file a valid verified complaint such that the maritime lien may attach and this Court may exercise *in rem* jurisdiction over the vessel. Barnes filed his First Amended Complaint on May 21, 2014 without any verification.[11/] (Doc. No. 91.) Over a year later, on July 23, 2015, Barnes filed an "Affidavit of Verification of First Amended Complaint." (Doc. No. 159.) This document did not, however,

---

[11/] It is well-settled law in this circuit that an amended complaint "supersedes the original, the latter being treated thereafter as non-existent." Lacey v. Maricopa County, 693 F.3d 896, 925 (9th Cir. 2012) (citing cases). It is therefore of no import to the Court's analysis that Barnes's original complaint was verified.

actually contain an affidavit of verification. Several months later, on December 1, 2015, Barnes filed his "Errata" to the verification, this time including a signed affidavit by Barnes. (Doc. No. 184.) The notary's signature on the affidavit stated, however, that the signed document had only one page, indicating that the First Amended Complaint had not been attached to the affidavit at the time it was signed. (See id.) Therefore, on December 10, 2015, Barnes filed his "First Amended verification of First Amended Complaint," in which he included another affidavit of verification signed by Barnes, this time referencing the correct number of pages included in the Complaint as an attachment. (Doc. No. 191.)

Notwithstanding Barnes's many attempts to verify his First Amended Complaint after the fact, he can point to no authority (and the Court can find none) to support the notion that, under the facts of this case, a complaint may be validly verified at any time after its filing.[12/] Barnes neither sought

---

[12/] Indeed, Barnes's successive attempts at verification very likely violated one or both of the automatic bankruptcy stays in effect at the time. While the bankruptcy court had lifted the stay as to the Henry bankruptcy proceeding (for this Court to "value to its conclusion the claim of [Barnes] arising" from this litigation, but leaving the stay in place with regard to the M/V Tehani, "which will remain in the Bankruptcy Estate.") at the time Barnes filed his attempts at verification, the stay had not been lifted as to the Sea Hawaii Rafting bankruptcy proceeding. Moreover, even when the bankruptcy court did lift that stay, it did so only partially, and expressly left the stay in place as to any action by Barnes to perfect or enforce any lien he may have. Thus, Barnes's verification filings violated the stay in the Sea

nor received permission from the Court under the Federal Rules of Civil Procedure to file a third amended complaint, or to supplement the current filing with the verification affidavits. Indeed, by the time of Barnes's first attempt at verification (on July 23, 2015), the deadline for filing amended pleadings had long since passed under this Court's Second Amended Rule 16 Scheduling Order. (See Doc. No. 96.) The Court must therefore conclude that Barnes has failed to file a valid verified complaint, as required by the Admiralty Rules. Thus, as discussed above, this Court lacks *in rem* jurisdiction over the vessel. See, e.g., Madeja, 310 F.3d at 637.

Barnes argues, however, that this Court may nevertheless exercise jurisdiction over the vessel because it has waived any objection to jurisdiction by filing an Answer (among other filings). Barnes is correct that, generally, a vessel may consent to jurisdiction *in rem* by appearing in the action and failing to raise the defense of lack of jurisdiction over the party in a timely fashion. United States v. Republic Marine, Inc., 829 F.2d 1399, 1402 (7th Cir. 1987); see also Cactus Pipe and Supply Co. v. M/V Montmartre, 756 F.2d 1103, 1107-11 (5th Cir. 1985) (holding that such a waiver occurred).

---

Hawaii Rafting bankruptcy proceeding, and are therefore void. See 11 U.S.C. § 362; In re Gruntz, 202 F.3d 1074, 1082 (9th Cir. 2000) ("[A]ctions taken in violation of the automatic stay are void.").

The case law is somewhat unclear, however, as to whether a vessel may waive the verification requirement, or whether waiver may only be applied to excuse the absence of an arrest or service of process upon the vessel. Compare Garcia v. M/V Kubbar, 4 F. Supp. 2d 99, 108-09 (N.D. N.Y. 1998) ("In cases allowing a waiver of objection to *in rem* jurisdiction, the waiver is applied only to excuse the absence of an arrest or service of process upon the vessel.") with Pizani v. M/V Cotton Blossom, 669 F.2d 1084, 1089-90 (5th Cir. 1982) (implying without holding that a party may waive the verification requirement). The Court need not decide the issue of whether a party may waive the jurisdictional verification requirement here, however, as Defendants did, in fact, object to *in rem* jurisdiction in their Answer to the First Amended Complaint. (See Answer (Doc. No. 107) ¶ 8 (denying (except to admit that the vessel is registered and located in the State of Hawaii) the allegations contained in paragraph eight of the First Amended Complaint, in which Barnes alleges that "[u]pon information and belief the vessel is in this district and subject to the IN REM jurisdiction of this court.").) The Court therefore rejects Barnes's argument that the M/V Tehani waived any objection to this Court's exercise of *in rem* jurisdiction.

In sum, because the Court finds that Barnes failed to verify his First Amended Complaint, it must conclude that this

Court is without *in rem* jurisdiction over the vessel, and no maritime lien may attach to the M/V Tehani. See Madeja, 310 F.3d at 637 (finding that the district court correctly concluded that, because certain claims were not verified, "no lien attached to the [vessel], *in rem*."). The Court therefore DISMISSES for lack of jurisdiction all claims against the M/V Tehani, and turns next to an analysis of the instant Motion as to the remaining Defendants.[13/]

## II.  **Barnes's Summary Judgment Motion**

Having found that it lacks *in rem* jurisdiction over the Tehani, the Court turns next to Barnes's Motion for Summary Judgment as against the remaining defendants. In the instant Motion, Barnes seeks summary judgment as to the claims in his First Amended Complaint for unseaworthiness under general maritime law (Count II), and negligence (Count I) and negligence per se (Count XII) under the Jones Act. The Jones Act provides a cause of action for "[a]ny seaman who shall suffer personal injury in the course of his employment." 46 U.S.C. § 30104. Likewise, under general maritime law, a seaman injured by a

---

[13/] The Court understands that, to some extent, the effect of its rulings as against the *in personam* Defendants may be limited by the rulings in bankruptcy court. Nevertheless, because Barnes has raised an argument in his First Amended Complaint (that has yet to be briefed by the parties) that the corporate veil should be pierced such that Henry may be held personally liable for any liability on the part of Sea Hawaii Rafting, the Court will address Barnes's Motion as to both remaining Defendants.

shipowner's failure to provide a seaworthy vessel may sue the shipowner for his harm. See, e.g., Ribitzki v. Canmar reading & Bates, Ltd. Partnership, 111 F.3d 658, 664 (9th Cir. 1997).

There appears to be no dispute that Barnes was employed as a seaman within the meaning of the Jones Act and under general maritime law at the time he was injured. (See Pl.'s CSF ¶ 1; Def.'s CSF ¶ 1.) Likewise, it appears the parties agree that Sea Hawaii Rafting was the owner of the vessel and Barnes's employer for purposes of the Jones Act.[14] (See Def's Supp. Memo (Doc. No. 167) at 2, 4 (asserting that Sea Hawaii Rafting was the legal owner of the vessel and was Barnes's employer at the time of the accident, noting that his pay checks were drawn from Sea Hawaii Rafting's checking account); Pl.'s Supp. Memo (Doc. No. 164) at 4, 7 (stating that "SHR, as owner of the vessel and issuer of the paychecks, is Barnes' Jones Act employer . . ..").)

The Ninth Circuit has held that there may be only one employer for purposes of Jones Act liability. See Glynn v. Roy Al Boat Mgmt. Corp., 57 F.3d 1495, 1500 (9th Cir. 1995), *abrogated on other grounds by* Atlantic Sounding Co., Inc. v. Townsend, 557 U.S. 404 (2009). Because Sea Hawaii Rafting, rather than Defendant Henry, is Barnes's Jones Act employer and the owner of the vessel, it appears Barnes may only bring his Jones Act

---

[14] Although, as noted above, Barnes argues that Henry may nevertheless be held liable for the actions of Sea Hawaii Rafting under a theory of piercing the corporate veil.

negligence claims and his unseaworthiness claim as against Sea Hawaii Rafting. The Court therefore DENIES the instant Motion as to Defendant Henry.[15/] Accordingly, the Court proceeds to analyze Barnes's claims as against Sea Hawaii Rafting.[16/]

### A.   Negligence Per Se (Count XII)

With the instant motion, Barnes seeks to establish that Defendants may be held liable for per se negligence based upon certain violations of Coast Guard safety regulations. Specifically, Barnes seeks an order finding that Defendants violated the Coast Guard's regulations governing small passenger vessels, and that they are therefore subject to per se liability for Barnes's injuries pursuant to Kernan v. American Dredging Co., 355 U.S. 426 (1958). Defendants do not dispute that the Coast Guard regulations at issue were applicable to the Tehani at the time of the accident. (See generally Opp'n; Def.'s CSF.)

In Kernan, the United States Supreme Court held that, under the Jones Act, a violation of a statute or Coast Guard

---

[15/] The Court notes that it expresses no opinion here on the issue of whether Henry may nevertheless be held liable for the actions of the LLC under a theory of piercing the corporate veil.

[16/] As noted above, the Court is aware that its rulings in the instant suit may be limited to some extent by the rulings in the bankruptcy court. As this case proceeds, the Court will need further direction from the bankruptcy court as to the extent to which this Court can determine ultimate liability as against the remaining Defendants, particularly with respect to the Court's determination regarding whether the corporate veil should be pierced and Henry should be held liable for any liability on the part of Sea Hawaii Rafting.

regulation that causes the injury or death of any employee creates liability "in the absence of any showing of negligence." 355 U.S. at 431. Thus, under the Jones Act, "the common-law concepts of foreseeability and risk of harm are not applicable where the employer violates a federal statute or a Coast Guard regulation, if such conduct in whole or in part caused injury." MacDonald v. Kahikolu Ltd., 442 F.3d 1199, 1203 (9th Cir. 2006) (McDonald I). Any seaman who proves that his employer violated a Coast Guard regulation is entitled to a finding of per se fault so long as the violation played "any part, even the slightest, in producing" the seaman's injuries. Id. (internal quotation omitted). Moreover, the seaman's right to recovery is without regard to his comparative fault, as long as the injury is attributable to the violation. Fuszek v. Royal King Fisheries, Inc., 98 F.3d 514, 517 (9th Cir. 1996); Best v. Pasha Hawaii Transport Lines, LLC, Civ. No. 06-00634 DAE-KSC, 2009 WL 587202 at *4 (D. Haw. Mar. 6, 2009).

First, as to the alleged violation of Coast Guard regulations, Barnes has introduced evidence that, at the time of the incident, the Tehani did not have a flammable vapor detection system as required by 46 C.F.R. § 182.460, and did not have a mechanical ventilation exhaust system, as required by 46 C.F.R.

§ 182.480.[17] (Mot. at 9; Pl.'s CSF, Ex. B (Supp. Expert Witness

Report) at 4-6; Ex. C (Knutson Field Survey) at 2.) Defendants do

not dispute that the Coast Guard regulations are applicable to

the Tehani, nor do they appear to dispute that the Tehani lacked

_____

[17] Among the exhibits Barnes has submitted in support of his
Motion, he includes a Coast Guard Investigator Statement Form
(Ex. E) and a Coast Guard Report of Investigation (Ex. G).
Defendants point out that, generally, Coast Guard reports such as
these are not admissible as evidence pursuant to 46 C.F.R.
§ 4.07-1(b), as stated in Huber v. United States, 838 F.2d 398,
402-03 (9th Cir. 1988). The Court notes, however, that there is
some question as to whether the Huber rule applies generally to
exclude all Coast Guard Reports where the government is not a
party to the litigation (as the Coast Guard was in Huber). See,
e.g., Complaint of Nautilus Motor Tanker Co., Ltd., 85 F.3d 105,
111-13 (3d Cir. 1996) (finding Coast Guard Report admissible as a
public record under Federal Rule of Evidence 803(8)); Puerto Rico
Ports Auth. v. M/V Manhattan Prince, 897 F.2d 1, 8 (1st Cir.
1990) (affirming district court's admission of three conclusions
in a Coast Guard Report); Fox v. United States and Robert
Anderson, Civ. No. C-94-0941, slip op. at 4-8 (N.D. Cal. February
14, 1996) (Coast Guard report admissible under Rule 803(8) so
long as report meets trustworthiness standard of Beech Aircraft
Corp. v. Rainey, 488 U.S. 153 (1988)); Wright v. Daviesyndicate,
Inc., 1993 WL 246020, *8,*9 n. 10 (E.D. Pa. 1993) (conclusions
contained in Coast Guard Report admitted without comment);
Complaint of Kenneth I. Munyan, 143 F.R.D. 560, 565-66 (D.N.J.
1992) (conclusions and opinions in Coast Guard Report deemed
admissible under Rule 803(8)(C)); Taylor v. Bouchard, 1991 WL
107279, *4 (S.D.N.Y. 1991) (opinions and conclusions in Coast
Guard Report admitted); see also Windjammer Cruises, Inc. v.
Paradise Cruises, Ltd., Civ. No. 93-00190 ACK, 1993 WL 732431 at
*2 n.2 (D. Haw. June 8, 1993) (stating that a Coast Guard
Report's admissibility must be considered in terms of whether its
absence would unduly prejudice its proponent, and finding no
prejudice where key witnesses, including those who prepared the
report, were available to testify). Even excluding the Coast
Guard Reports here, however, Barnes has still demonstrated
through other evidence, including the expert witness reports of
Dennis Smith (Exs. A & B), and the Field Survey conducted by Mark
Knutson of Offshore Marine Surveyors (Ex. C), that the Tehani was
in violation of the enumerated Coast Guard regulations at the
time of the accident.

a flammable vapor detection system and a mechanical ventilation exhaust system. (See generally Opp'n; Def.'s CSF.) Rather, they argue that the vessel had a valid Certificate of Inspection from the Coast Guard at the time of the accident.[18] (Opp'n at 11; Def.'s CSF ¶¶ 16, 19, Ex. A.)

With respect to the Certificate of Inspection, the Court concludes that this document does not constitute evidence of compliance with the requirements of 46 C.F.R. §§ 182.460 & 182.480 on the date of the accident. The Coast Guard's own regulations describe the Certificate of Inspection as a descriptive document that "describes the vessel, the route(s) that it may travel, the minimum manning requirements, the survival and rescue craft carried, the minimum fire extinguishing equipment and lifejackets required to be carried, the maximum number of passengers," and several other requirements. 46 C.F.R. § 176.103. The mere existence of a valid Certificate of Inspection therefore does not in and of itself establish whether

---

[18] Defendants also argue without citing any authority that Barnes cannot establish per se liability because the Coast Guard did not ever actually charge Defendants with violating any regulation. The Court is unable to locate any authority for the proposition that negligence per se under Kernan requires proof of issuance of a formal sanction from the Coast Guard. Rather, it appears sufficient for a plaintiff to demonstrate that the vessel in question was, in fact, in violation of Coast Guard regulations, regardless of whether any formal citation was actually issued.

23

the vessel was actually being operated in accordance with the Coast Guard's regulations and requirements.

Moreover, while the Certificate of Inspection does indicate that the Tehani was subject to annual inspections, it appears that the most recent inspection prior to the date of the accident (on July 3, 2012) was conducted on December 6, 2011. (Def.'s CSF, Ex. A at 4.) Thus, the Certificate of Inspection does not itself demonstrate that the Tehani was in compliance with all Coast Guard regulations on the date of the accident. As such, the mere fact that the Tehani was operating pursuant to a valid Certificate of Inspection does not refute Barnes's evidence demonstrating that the vessel was nevertheless in violation of certain Coast Guard regulations at the time of the accident.

The Court therefore concludes that Barnes has established that the Tehani was operating in violation of Coast Guard regulations (namely, 46 C.F.R. §§ 182.460 & 182.480) at the time of the accident. Accordingly, the Court turns next to the issue of causation. Specifically, the Court must determine whether the absence of a flammable vapor detection system and a mechanical ventilation exhaust system, as required by the Coast Guard regulations, played any part in producing Barnes's alleged injuries. See MacDonald I, 442 F.3d at 1200.

"The burden to establish legal causation under the Jones Act is minimal." Brooker v. Cleghorn, 907 F. Supp. 1406,

1413 (D. Haw. 1994). Indeed, causation is sufficiently established if the employer's violation of Coast Guard regulations "played *any* part in producing the injury, no matter how slight." MacDonald I, 442 F.3d at 1203 (quoting Oglesby v. S. Pac. Trans. Co., 6 F.3d 603, 609 (9th Cir. 1993)) (emphasis in original). Here, Barnes has introduced evidence from his expert that had the Tehani been equipped with the required mechanical exhaust ventilation system and flammable vapor detection system, "the explosion and fire would not have happened, or [Barnes would have been] alerted to [the unsafe condition]." (Pl.'s CSF, Ex. B at 5.) Moreover, the July 5, 2012 Coast Guard Witness/Investigator Statement Form states that had the vapor detector and mechanical exhaust systems been in place, "this incident may have been avoided." (Pl.'s CSF, Ex. E at 2.) Thus, Barnes has demonstrated that the violations of the Coast Guard regulations played at least some part in causing the explosion and his claimed injuries.

Defendants have failed to produce any contrary evidence as to causation; however, they assert that "the cause of the incident was the leaky fuel line and Plaintiff's failure to do his duty as Captain to ensure the Vessel could be operated safely by inspecting the Vessel before starting the engine." (Opp'n at 11.) While it is true that the leaky fuel line contributed to the accident, Barnes's expert has testified that, had the flammable

vapor detection system been in place, Barnes might have been alerted to the danger of the leak, and had the mechanical exhaust ventilation system been in place, the explosion would not have taken place at all. (Pl.'s CSF, Ex. B at 5.) Thus, Defendants' claim regarding the leaky fuel line does not contradict Barnes's evidence that the explosion was caused at least in part by Defendants' failure to adhere to Coast Guard regulations. This is sufficient to satisfy Barnes's "minimal" burden in establishing causation. See Brooker, 907 F. Supp. at 1413 (stating that "it does not matter that the evidence points to other causes for the injury," so long as the employer's negligence was a contributing cause).

Defendants' argument that Barnes cannot show causation because he was the captain of the vessel at the time of the accident and, thus, contributed to his injuries by failing to properly inspect the vessel is likewise without merit. Even assuming Barnes was acting as the captain of the vessel (which Barnes disputes), in the context of a Jones Act per se negligence claim premised on a violation of Coast Guard regulations, the Ninth Circuit has made clear that a seaman whose injuries were caused by a violation of a statute or safety regulation may recover damages under the Jones Act without regard to any comparative fault so long as his employer's failure to comply with the Coast Guard regulations "played any part, 'even the

26

slightest,' in producing [his] injuries[.]" MacDonald I, 442 F.3d at 1203 (quoting Oglesby, 6 F.3d at 607); see also Best, 2009 WL 587202 at *4. Here, as discussed above, Barnes has established that the Tehani was in violation of certain sections of the Coast Guard regulations (46 C.F.R. §§ 182.460 & 182.480), and that these violations contributed at least in part to the accident that caused Barnes's alleged injuries.[19] Thus, Jones Act per se liability applies. The Court therefore concludes that there is no question of fact as to Barnes's per se negligence claim, and that Sea Hawaii Rafting is liable under the Jones Act for Barnes's alleged injuries arising out of the accident. Accordingly, the Court GRANTS Barnes's Motion as against Sea Hawaii Rafting as to Count XII of his First Amended Complaint.

**B.   Jones Act Negligence (Count I)**

Barnes also asserts a separate Jones Act negligence claim based on Defendants' alleged breach of the duty to provide a reasonably safe workplace. (FAC ¶¶ 23-27.) To recover on this claim, Barnes must establish that Sea Hawaii Rafting was

---

[19] Moreover, there can be no question that the regulations Defendants violated (46 C.F.R. §§ 182.460 & 182.480) were established for the express purpose of protecting the safety of a class of individuals to which Barnes belongs (those operating small passenger vessels), and preventing accidents exactly like the one here. Indeed, the Coast Guard regulations state specifically that the intent of Part 182 of the Coast Guard Regulations is "to afford adequate protection from causing fire, explosion, machinery failure, and personnel injury." 46 C.F.R. § 182.100.

negligent, and that this negligence "was a cause, however slight, of [Barnes's] injuries." Ribitzki v. Canmer Reading & Bates, Ltd. Partnership, 111 F.3d 658, 662 (9th Cir. 1997), as amended on denial of reh'g and reh'g en banc (June 5, 1997), amended on reh'g en banc sub nom. Ribitzki v. Canmar Reading & Bates, Ltd., 1997 WL 34580081 (9th Cir. June 5, 1997). The "quantum of evidence necessary to support a finding of Jones Act negligence is less than that required for common law negligence . . . and even the slightest negligence is sufficient to sustain a finding of liability." Id. (quoting Havens v. F/T Polar Mist, 996 F.2d 215, 218 (9th Cir. 1993)). The elements of a Jones Act negligence claim are duty, breach, notice, and causation. Id.

As to the issue of duty, a shipowner has a duty to use reasonable care in furnishing his employees with a safe place to work. Id. Here, it is undisputed that Barnes was a seaman employed by Sea Hawaii Rafting at the time of the accident. Thus, the first element is satisfied.

As to the issue of whether Sea Hawaii Rafting breached its duty to provide Barnes with a safe work environment, Dennis Smith, Barnes's expert, has stated that the Tehani was an unsafe place to work because "the vessel owner failed to properly maintain and care for the below deck enclosed spaces and mechanical equipment, [and] failed to comply with regulations regarding proper safety equipment." (Pl.'s CSF, Ex. B at 5.) As

to the issue of notice, "[a]n employer is only liable under the Jones Act if the employer or its agents either knew or should have known of the dangerous condition." Ribitzki, 111 F.3d at 663. Mr. Smith states that Defendant Henry[20] "knew that the working environment on the Tehani was unsafe because he was on notice as to the lack of proper maintenance from numerous Coast Guard Inspections."[21] (Pl.'s CSF, Ex. B at 6.) Indeed, the Coast Guard's Witness/Investigator Statement Form indicates that the vessel had a "poor maintenance record[,]" and that "[a] review of the vessel[']s Coast Guard Inspection reports [] shows a lack of regulatory compliance at every annual inspection since the vessel[']s original certification in 2005." (Pl.'s CSF, Ex. E at 2.) Moreover, when Defendant Henry purchased the vessel it was delivered to him from the factory without a fuel tank or fuel

---

[20] It is well settled that knowledge of an agent is ordinarily imputed to the principal. See Restatement (Second) Agency § 272; see also In re Signal Int'l, LLC, 579 F.3d 478, 496 (5th Cir. 2009) ("A corporation is charged with the knowledge of any of its managing agents who have authority over the sphere of activities in question." (internal quotation marks and citation omitted)). Thus, here, Henry's knowledge is imputed to Sea Hawaii Rafting, as Henry was the registered agent and sole owner and manager of the LLC. (See Pl.'s CSF, Ex. I.)

[21] The Court notes that Mr. Smith does not, however, attach copies of any of the "numerous Coast Guard Inspections" that would have put Defendants on notice of the lack of proper maintenance. It appears that this statement in the expert report is simply based upon Mr. Smith's review of a July 5, 2012 Coast Guard Witness/Investigator Statement Form. In light of the lack of support provided for Mr. Smith's statements, the Court places little weight on his report.

delivery system; he had these systems designed and installed after the vessel arrived in Hawaii. (Pl.'s CSF, Ex. A at 3.) Thus, he was clearly aware that the vessel lacked the required vapor detector and mechanical exhaust systems at the time of the accident. Finally, as discussed above, Barnes's expert states in his Supplemental Report that the accident would not have occurred had Defendants ensured that the necessary safety equipment was installed on the Tehani. (Pl.'s CSF, Ex. B at 5.) Thus, it appears Barnes has introduced evidence sufficient to establish Jones Act negligence.

Defendants argue, however, that the primary duty rule precludes Jones Act negligence liability here. Under the primary duty rule, "a seaman-employee may not recover from his employer for injuries caused by his own failure to perform a duty imposed on him by his employment." Northern Queen Inc. v. Kinnear, 298 F.3d 1090, 1095 (9th Cir. 2002) (quoting California Home Brands, Inc. v. Ferreira, 871 F.2d 830, 836–837 (9th Cir. 1989)).

Defendants argue that Barnes was acting as the captain of the Tehani on the day of the accident and, as such, was responsible for inspecting the vessel to ensure its safety. Thus, Defendants contend that Barnes is precluded from establishing liability under the primary duty rule. As an initial matter, it appears that there is a question of fact as to whether Barnes or Defendant Henry was acting as the captain of the Tehani on the

30

day of the accident. Barnes states that Henry was acting as the captain and Barnes was serving as the crew member, and that Henry would customarily act as captain whenever he was present on the Tehani. (Pl.'s CSF, Ex. J ¶¶ 5-8.) Henry states, on the other hand, that Barnes was a licensed captain and was assigned to captain the Tehani on the day of the accident. (Def.'s CSF, Henry Decl. ¶ 5.) The Coast Guard Report on the incident refers to Barnes as a "crewmember" on a number of occasions, while also referring to him as the "Captain" in other places. (See Pl.'s CSF, Ex. G at 2-3, 12.) Absent these conflicting statements, there is no other evidence as to who was actually serving as captain of the Tehani on the day of the accident. The Court therefore concludes that a question of fact exists as to whether Barnes was acting as captain at the time of the accident.

In light of the question of fact as to whether Barnes was acting as captain at the time of the accident, the Court must likewise conclude that questions of fact exist to preclude a ruling on the applicability of the primary duty rule. In order for an employer to be relieved of liability under the primary duty rule,

> (1) the seaman must have consciously assumed a duty as a term of employment; (2) the dangerous condition that injured the seaman must have been created by the seaman or could have been controlled or eliminated solely by the seaman in the proper exercise of his or her employment duties; and (3) the seaman must have knowingly

31

> violated a duty consciously assumed as a condition of employment.

Northern Queen, 298 F.3d at 1096.

Here, as to the missing fuel ventilation equipment, other than Defendant Henry's vague statement that, "[a]s Captain, it was Plaintiff's responsibility to inspect the vessel and ensure it was operating properly," (Def.'s CSF ¶ 7,) Defendants have introduced no evidence that Barnes in fact "consciously assumed" a duty to ensure that all required safety equipment was installed on the Tehani. Indeed, it is hard to believe that Barnes would have primary responsibility or control over the installation of equipment such as a flammable vapor detection system and mechanical exhaust ventilation system when he had no ownership interest in the Tehani, (see Def.'s CSF, Ex. A,) and there is no evidence otherwise suggesting that he played any part whatsoever in the purchase, installation, or maintenance of this type of machinery on the vessel.

Barnes's expert stated in his report, however, that the fuel that leaked into the bilge, causing the explosion, leaked out because of the missing fuel gauge sender bolt. (Pl.'s CSF, Ex. B at 2.) Defendant Henry states in his declaration that "[a]s Captain, Plaintiff was responsible for inspecting the Vessel to ensure she could be operated safely," including by checking the bilge, fuel tanks, and fuel lines. (Def.'s CSF, Henry Decl. ¶¶ 8-9.) Thus, there is at least a question of fact as to whether,

assuming Barnes was acting as captain at the time of the accident, his failure to properly inspect the vessel and discover the missing bolt may have contributed to the cause of his injuries. The Court therefore concludes that questions of fact preclude a conclusion as a matter of law that Barnes's injuries were not "caused by his own failure to perform a duty imposed by him by his employment." Northern Queen, 298 F.3d at 1095.

The Court notes that Defendants also argue - again based on the contention that Barnes was the acting captain at the time of the accident and had a duty to inspect the fuel lines and bilge - that, even if this Court finds Sea Hawaii Rafting was negligent, any damages awarded to Barnes must be reduced because of Barnes's contributory negligence. Generally, comparative negligence is applicable in a Jones Act action "when a seaman is injured if 'alternative courses of action are available to the injured party, and he chooses the unreasonable course.'" Simeonoff v. Hiner, 249 F.3d 883, 888-89 (9th Cir. 2001). "Courts apply the doctrine of comparative fault to encourage reasonable care by seamen while at the same time placing a high degree of responsibility on owners for the seaworthiness and safety of their vessels and appliances." Id. at 889. Importantly, however, a defense of comparative negligence is not available where the seaman's injuries are attributable, at least in part, to the vessel's being in violation of Coast Guard safety regulations

designed to protect the class of individuals to which the seaman belongs. See Fuszek, 98 F.3d at 517; Brooker, 907 F. Supp. at 1409-11.

As discussed above, Barnes has introduced undisputed evidence that, at the time of the incident, the Tehani did not have a flammable vapor detection system as required by 46 C.F.R. § 182.460, and did not have a mechanical ventilation exhaust system, as required by 46 C.F.R. § 182.480. (Mot. at 9; Pl.'s CSF, Ex. B (Supp. Expert Witness Report) at 4-6; Ex. C (Knutson Field Survey) at 2.) He has also demonstrated that his alleged injuries are attributable, at least in part, to the violation of these Coast Guard safety regulations. (Pl.'s CSF, Ex. B (Supp. Expert Witness Report) at 5.) Finally, it is clear that the Coast Guard regulations at issue were intended to prevent the very injuries that Barnes alleges he suffered. Indeed, the Coast Guard regulations state specifically that the intent of Part 182 of the Coast Guard Regulations is "to afford adequate protection from causing fire, explosion, machinery failure, and personnel injury." 46 C.F.R. § 182.100. Thus, a defense of comparative negligence is not available to Defendants in this case. See, e.g., Fuszek, 98 F.3d at 517 (concluding that the district court erred by reducing the plaintiff's damage award for comparative negligence where "[t]he ship was in unexcused violation of a Coast Guard safety regulation that was designed not only to

34

protect members of the class to which [the plaintiff] belonged, but also to prevent the type of injury he sustained.").

In sum, because the Court concludes that questions of fact exist as to whether Barnes was the captain of the vessel at the time of the accident and, thus, whether the primary duty rule applies here, the Court DENIES Barnes's Motion as to Jones Act negligence (Count I).

### C.   Unseaworthiness (Count II)

Finally, Barnes also seeks summary judgment as to his claim for unseaworthiness. The admiralty doctrine of unseaworthiness is a form of strict liability that requires the owner of a vessel to ensure that a vessel and its appurtenant equipment and appliances are "reasonably fit for her intended service." Usner v. Luckenbach Overseas Corp ., 400 U.S. 494, 499 (1971); see also Seas Shipping Co. v. Sieracki, 328 U.S. 85, 90 (1946). "A shipowner has an absolute duty to furnish a seaworthy ship." Ribitzki, 111 F.3d at 664 (citing Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 549 (1960)).

To establish a claim for unseaworthiness, a plaintiff must establish: "(1) the warranty of seaworthiness extended to him and his duties;[22/] (2) his injury was caused by a piece of the ship's equipment or an appurtenant appliance; (3) the equipment

---

[22/] As discussed above, it appears to be undisputed that Barnes is a Jones Act seaman; thus, he is entitled to a warranty of seaworthiness.

used was not reasonably fit for its intended use; and (4) the unseaworthy condition proximately caused his injuries." Id. at 664-65. Importantly, the shipowner's actual or constructive knowledge of an unseaworthy condition is not essential to liability. Id. at 664.

Here, Barnes argues that the Tehani was unseaworthy because the missing flammable vapor detection system, mechanical ventilation exhaust system, and fuel tank sender bolt made the fuel delivery system not reasonably fit for its intended use. (See Mot. at 15.) The "existence of a defective condition, however temporary, on a physical part of the ship" may constitute an unseaworthy condition. Ribitzki, 111 F.3d at 664 (citing Usner, 400 U.S. at 499). Barnes has introduced expert testimony that "due to the lack of a flammable vapor detection system, a mechanical exhaust ventilation system, and the missing fuel gauge sender bolt, the Tehani was not reasonably fit for its intended use." (Pl.'s CSF, Ex. B at 4.) Defendants do not appear to dispute that the fuel bolt was, in fact, missing from the fuel gauge sender at the time of the accident, which allowed fuel to leak out of the resulting hole. (Def.'s CSF ¶ 15.) Nor do they dispute that the Tehani lacked a flammable vapor detection system and a mechanical ventilation exhaust system. Barnes has therefore established that the fuel delivery system on the Tehani was not reasonably fit for its intended use at the time of the accident.

As to the issue of causation, in the context of a claim for unseaworthiness, "[c]ausation is established by showing that the unseaworthy condition was a substantial factor in causing the injury." <u>Ribitzki</u>, 111 F.3d at 665. Here, Defendants themselves acknowledge that the missing fuel bolt "allowed fuel to leak out of the resulting hole," and that "fuel vapors under the floorboards were ignited when Plaintiff started the engine." (Def.'s CSF ¶¶ 14-15.) Indeed, Defendants state in their opposition to the Motion that "[t]he cause of the incident was the leaky fuel line . . .." (Opp'n at 11.) It therefore appears there is no dispute that the missing fuel ventilation systems and the missing bolt and resultant leaking fuel were substantial factors in causing Barnes's alleged injuries.

Defendants argue again, however, that the primary duty rule precludes Barnes's recovery on his unseaworthiness claim because his injuries were caused by his own breach of his employment duties as captain. (Opp'n at 14.) As discussed above, there is a factual dispute as to whether Barnes was acting as the captain of the Tehani at the time of the accident. Moreover, there is also a factual dispute as to whether, as captain, it was his duty to inspect the vessel such that he would have discovered the missing fuel sender bolt and resultant fuel leak. The Court therefore concludes that questions of fact preclude a finding as a matter of law as to whether the primary duty rule applies to

defeat Barnes's unseaworthiness claim. Barnes's Motion is therefore DENIED as to Count II.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART Plaintiff Barnes's Motion for Summary Judgment as to Unseaworthiness, Negligence Per Se, and Jones Act Negligence (Doc. No. 108.) As to Count XII of the First Amended Complaint (Barnes's negligence per se claim), the Court GRANTS the Motion as to Defendant Sea Hawaii Rafting, LLC, but DENIES it as to the remaining Defendants. The Court DENIES the Motion as to Counts I and II. In addition, the Court DISMISSES all claims against Defendant M/V Tehani, *in rem*, for lack of jurisdiction.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, December 22, 2015



_____
Alan C. Kay
Senior United States District Judge

Barnes v. Sea Hawaii Rafting, et al., Civ. No. 13-00002 ACK-RLP, Order Granting in Part and Denying in Part Plaintiff's Motion for Summary Judgment as to Unseaworthiness, Negligence Per Se, and Jones Act Negligence, and Dismissing the M/V Tehani for Lack of Jurisdiction