IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CHAD BARRY BARNES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| SEA HAWAII RAFTING, LLC; | ) |
| KRIS HENRY; ALOHA OCEAN | )  Civ. No. 13-00002 ACK-RLP |
| EXCURSIONS, LLC; JOHN | ) |
| DOES 1-20; MARY DOES | ) |
| 1-20; DOE CORPORATIONS | ) |
| 1-20; DOE PARTNERSHIPS | ) |
| 1-20; DOE ASSOCIATES | ) |
| 1-20; DOE GOVERNMENTAL | ) |
| AGENCIES 1-20; AND OTHER | ) |
| ENTITES 1-20, in personam; | ) |
| AND M/V TEHANI, HA 1629-CP, | )  FINDINGS OF FACT AND |
| AND HER ENGINES, EQUIPMENT, | )  CONCLUSIONS OF LAW |
| TACKLE, FARES, STORES, | ) |
| PERMITS, FURNISHINGS, CARGO | ) |
| AND FREIGHT; DOE VESSELS 1-20,) |
| in rem, | ) |
| | ) |
| Defendants. | ) |
| | ) |

FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter arises under admiralty law.  Plaintiff Chad

Barry Barnes was injured on July 3, 2012, by an explosion while

working as a seaman aboard in rem defendant M/V Tehani.

Exhibits ("Ex.")[1] 1, 27.  The Tehani is a 25-foot rigid-hull

inflatable boat powered by twin outboard engines, Ex. 23, which

_____

[1] Because Defendants failed to submit any exhibits at the non-
jury trial, all citations to exhibits herein are to Plaintiff
Barnes's exhibits admitted into evidence.

in personam defendant Sea Hawaii Rafting, LLC ("SHR") owned at
the time of the accident,[2] Henry Tsti. Tr. 27:5—9.

In Barnes v. Sea Hawaii Rafting, LLC, the Ninth
Circuit issued a writ of mandamus directing this Court to award
Barnes maintenance at the rate of $34 per day, subject to a
potential upward increase after trial.  889 F.3d 517, 543 (9th
Cir. 2018).  Further, the Ninth Circuit encouraged this Court to
sever the issue of maintenance and cure and expeditiously set it
for trial.  Id. at n.21.  On May 2, 2018, the Court entered a
minute order setting an expedited trial on Plaintiff Barnes's
claims for maintenance and cure to commence on June 12, 2018.
ECF No. 314.  However, the parties requested a continuance of
that date, ECF Nos. 317, 319, so the Court entered a minute
order rescheduling the non-jury trial to commence on Tuesday,
July 31, 2018.  ECF No. 322.

On July 31, 2018, Barnes's claim for maintenance and
cure came on for a three-day trial without a jury.  The issues
for determination were: (1) the daily rate of maintenance—at

_____

[2] Kris K. Henry was the sole owner and manager of SHR.  Henry is
not a defendant for purposes of this trial because he filed for
Chapter 13 bankruptcy protection in 2014, see In re Kristin Kimo
Henry, Case No. 14-01475, and the bankruptcy court recently
declined Barnes's request for leave to assert in personam,
unsecured claims against Henry or his bankruptcy estate, see In
re Sea Hawaii Rafting, LLC, Case No. 14-01520, Dkt. 300 at pp.
13-14.  That matter is currently on appeal before another
district judge in this district.  See id. at Dkts. 301, 302.

2

least $34 per day—to which Barnes is entitled; (2) the amount of cure, if any, to which Barnes is entitled; (3) whether Barnes has reached maximum medical cure; (4) whether SHR's denial of maintenance and cure was willful and wanton, justifying an award of attorneys' fees and punitive damages to Barnes; and (5) the appropriate rate of pre-judgment interest, if any, applicable to any judgment in favor of Barnes.

The Court, having carefully considered the testimony of the witnesses, the exhibits in the record, and pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, makes the following Findings of Fact and Conclusions of Law.  To the extent that a Finding of Fact constitutes a Conclusion of Law, the Court adopts it as such.  And to the extent that a conclusion of Law constitutes a Finding of Fact, the Court also adopts that assumption.

## I.   FINDINGS OF FACT

### A.   <u>The Parties</u>

1.   At all times material, plaintiff Chad Barry Barnes was a resident of the District of Hawaii. Barnes was a seaman serving on the M/V Tehani on July, 3, 2012.  Barnes Tsti. Tr. 24:4—11; Order Granting in Part and Denying in Part Plaintiff's Motion for Summary Judgment as to Unseaworthiness, Negligence Per Se, and Jones Act Negligence, and Dismissing Defendant M/V Tehani for Lack of Jurisdiction at p. 19, ECF No. 197.

2.  At all times material, in personam defendant Sea
Hawaii Rafting, LLC ("SHR") was a Hawaii limited liability
corporation with its principle place of business in Hawaii.[3]  SHR
was Barnes's employer at the time of the July 3, 2012 accident,
and Kris Henry was the owner and sole member of SHR.  Henry
Tsti. Tr. 17:20—21, 27:5—9.  On May 21, 2018, the bankruptcy
court in In re Sea Hawaii Rafting, LLC, Case No. 14-01520,
granted Barnes relief from the automatic bankruptcy stay to
proceed on his in personam claims against SHR.  Id. Dkt. 300 at
pp. 12-13.

3.  At all times material, in rem defendant the M/V Tehani
and her appurtenances (together with SHR, "Defendants"), was

---

[3] The Court allowed Henry to represent SHR in this case because
of the following unique circumstances:  (1) Henry is the sole
member of SHR; (2) SHR has filed for bankruptcy; (3) SHR's
attorneys in this case were allowed to withdraw because SHR was
no longer able to pay for their services; (4) while the Court
urged SHR to find another attorney, SHR was unable to do so even
after being given extensions for that purpose; (5) this case has
a long life of six years, and contrary to established law,
Barnes has not received required payments for maintenance and
cure, even though as an injured seaman, he was entitled to
prompt payment for maintenance and cure; and (6) the Ninth
Circuit has urged this Court to proceed expeditiously in
determining the amount of maintenance and cure to which Barnes
is entitled.  "The general rule, widely recognized in federal
and state courts, is that a corporation can appear only through
an attorney."  Taylor v. Knapp, 871 F.2d 803, 806 (9th Cir.
1989) (citations omitted).  However, as a Ninth Circuit court
has reasoned:  "Allowing a sole shareholder to represent the
interests of a close corporation amounts to no more than
allowing the real beneficial owner of the corporation to
represent his own interests."  Id.

4

located in the District of Hawaii.  The M/V Tehani was and is a commercial vessel duly registered and/or documented by and with the State of Hawaii, Division of Boating and Ocean Recreation. E.g., Ex. 4 at pp. 3.

**B.    The July 3, 2012 Accident**

4.    On July 3, 2012, Henry called Barnes into work for SHR because another deck hand was unable to work as scheduled. Barnes Tsti. Tr. 24:4–11.

5.    The two men arrived at the Honokohau Small Boat Harbor in Kailua-Kona, Hawaii, and began to prepare the M/V Tehani for SHR's evening snorkeling trip.  Ex. 29; Henry Tsti. Tr. 30:20–25, 31:1–13.

6.    After the initial preparations were complete, Henry started to trailer the Tehani into the water.  Ex. 27 at p. 3; Ex. 29 at p. 1.

7.    As the vessel was being lowered into the water, Barnes began to start its engines.  Ex. 27 at p. 3; Ex. 29 at p. 1. When Barnes started the second engine, there was an explosion from under the floorboards which caused parts of the vessel to be thrown into the air, striking Barnes on the back of the head and injuring him.   Ex. 27 at p. 3; Ex. 29 at p. 1.

8.    The explosion and fire appear to have been caused by fuel that had leaked out of the fuel tank through a missing bolt in the fuel tank sender gauge; the fuel leaked into the Tehani's

bilge and ignited when Barnes started the engine.  Ex. 27 at p. 18.  A United States Coast Guard investigation concluded that the accident may have been avoided if Henry had installed a required flammable vapor detector and mechanical exhaust system. Id.

9.   Following the explosion, Barnes was transferred by ambulance to Kona Community Hospital.  Id. at pp. 3, 13; Ex. 29 at p. 1; Henry Tsti. Tr. 42:9—12.

10.   At Kona Community Hospital, Barnes received numerous staples to reattach parts of his scalp.  Ex. 49 at p. 2; Henry Tsti. Tr. 24:6—8; Reumann Trial Tr: 35:9-37—1.  Barnes was released from the hospital later that day.  Ex. 27 at pp. 3, 13.

### C.   Barnes's Post-Accident Medical Treatment

11.   Following the July 3, 2012 accident, Barnes began to receive treatment for his physical and psychological injuries at the West Hawaii Community Health Center ("WHCHC").  E.g., Ex. 50 at pp. 1, 98

12.   From August 2012 through the time of trial, WHCHC psychiatrist Dr. Victoria Hanes, M.D. treated Barnes for various psychological disorders, including: (1) Major Depressive Disorder, Severe; (2) Cognitive Disorder Not Otherwise Specified; and (3) Psychological Factors Affecting Hypothyroidism, Diabetes Mellitus Type II, High Cholesterol, and

Tinnitus.  Ex. 50 at p. 1, 98; <u>see generally</u> Hanes Tsti. Tr. 47-77.

13.  Dr. Hanes reported that Barnes's primary symptoms are chronic depressed mood, thoughts of self harm, and cognitive disorganization.  Ex. 50 at pp. 1, 98; <u>see generally</u> Hanes Tsti. Tr. 47-77.

14.  Barnes continues to schedule appointments with Dr. Hanes to receive treatment for his various psychological disorders and symptoms resulting from the July 3, 2012 accident. <u>Id.</u> at 76:21-77:3.

15.  In addition, after seeing various primary care providers since the July 3, 2012 accident, Ex. 50 at pp. 1, 98, Barnes has received treatment from Dr. Heather Miner, M.D. since September 4, 2013, Ex. 50 at p. 71; Miner Tsti. Tr. 49:6—18.

16.  Dr. Miner observed that Barnes has several chronic issues that are difficult to manage, including diabetes, hypothyroidism, headaches, memory and cognition issues, difficulty sleeping, Tinnitus.[4]  Miner Tsti. Tr. 51:23—25, 52:2—5, 55:10—12, 57:5—19, 59:1—3.

---

[4] The Court notes that there is conflicting evidence regarding whether Barnes was diagnosed with diabetes and hypothyroidism before or after the June 3, 2012 accident.  Dr. Marko Reumann's notes from Barnes's first visit on August 17, 2012, list under "Past medical history": "Depression, hypothyroid, DM II [Type II Diabetes], HTN [hypertension], Hyperlipidemia."  Ex. 50 at p. 39.  When questioned whether the listing of diabetes and (Continued . . . .)

17.  Dr. Miner most recently treated Barnes on July 12, 2018, and felt that he was making progress.  Id. at 69:7—16. Overall, Dr. Miner has observed that Barnes' condition fluctuates, but that he is in the most stable condition he has been in since she began treating him.  Id. at 70:22—25.

18.  Barnes has another appointment scheduled with Dr. Miner on October 17, 2018.  Miner Tsti. Tr. 70:15—17.

19.  From August 2012 through around February 2016, Barnes's also received treatment from Dr. Marko Reumann, M.D. E.g., Ex. 49 at p. 39; Reumann Tsti. Tr. 30:16—20, 71:13—16. Dr. Reumann testified as an expert in the field of general neurology at trial, and stated that during the course of his treatment of Barnes, Barnes suffered from severe headaches, neck pain, and Tinnitus.  Reumann Tsti. Tr. 31:18-32:7.

---

(Continued . . . .)
hypothyroidism under "Past medical history" means that Barnes had these conditions before the July 3, 2012 accident, Dr. Reumann explained that he likely incorrectly listed those diagnoses under that heading because WHCHC had earlier diagnosed them during Barnes's first post-accident visit.  Reumann Tsti. Tr. 44:23-45:23.  Dr. Reumann admitted, however, that if he was simply referring to WHCHC's post-accident diagnoses, he "should not have listed th[ose conditions] in th[at] way . . . ."  Id. at 45:18—23.  Additionally, Dr. Hanes testified that WHCHC's records from April 1, 2011 mention that Barnes was diagnosed with diabetes by that date at the latest.  Hanes Tsti. Tr. 52:7—21.  However, Dr. Hanes testified that there is no indication that Barnes was being treated for diabetes prior to July 17, 2012.  E.g., Hanes Tsti. Tr. 84:5—7.

20.  Dr. Reumann originally believed that Barnes's symptoms were due to a post-concussive syndrome.  Id. at 33:8—25; Ex. 49 at p. 2.  When Barnes's symptoms persisted, however, it became clear to Dr. Reumann that Barnes was experiencing chronic post-traumatic headache disorder, sensorineural hearing loss with Tinnitus, and chronic insomnia and mood disorder with mild cognitive impairment.  Ex. 49 at p. 2.

21.  Barnes's post-traumatic headaches were found to be medically intractable, and Dr. Reumann performed ten occipital nerve blocks to provide Barnes with temporary pain relief. Reumann Tsti. Tr. 53:2—14; Ex 49 at p. 2.  Accordingly, Dr. Reumann now believes it likely that Barnes sustained a microscopic microstructural lesion to several parts of his brain in the July 3, 2012 accident.  Reumann Tsti. Tr. 39:9—18; Ex. 49 at p. 2.

22.  Dr. Reumann further opined that Barnes would benefit from future treatment and would regress if unable to continue his course of treatment.  Reumann Tsti. Tr. 74:5—18; Ex. 49 at p.p. 3-4.  When asked whether Barnes had reached maximum medical cure, Dr. Reumann stated that Barnes had not.  Reumann Tsti. Tr. 75:18—25.  Dr. Reumann also stated that Barnes needs continued treatment and could continue to improve.  Id.

23.  Beyond the testimony of Henry and Barnes, SHR did not submit any evidence or call any other witnesses at trial,

including with regard to Barnes's past or current medical
conditions.

**D.  Barnes's Post-Accident Living Arrangements**

24.  At the time of the July 3, 2012 accident, Barnes was
living in a two-bedroom, two-bathroom condominium, which cost
him $1,200.00 per month for rent and approximately $200.00 per
month for utilities.  Barnes Tsti. Tr. 19:25-21:22.  Barnes
later lost that condominium unit.  Id. at 21:7—16.

25.  Within days of Barnes's discharge from the hospital
following the July 3, 2012 accident, he began to stay with a man
named David Pane.  Barnes Tsti. Tr. 30: 3—12; Henry Tsti. Tr.
20:21-22:5.  Henry or SHR provided Pane with one $600.00 check
on Barnes's behalf to cover rent.  Barnes Tsti. Tr. 30: 3—12;
Henry Tsti. Tr. 20:21-22:5.

26.  After leaving Mr. Pane's residence, Barnes relocated
between many different rooms, apartments, and other living
arrangements.  Barnes Tsti. Tr. 35:19-36:10.  Barnes's average
rent at these various locations was around $500.00-$700.00 per
month.  Barnes Tsti. Tr. 36:1—10.

27.  Among these various places that Barnes stayed for a
period of time was the "ohana" house that Mr. William T.
Hughes's daughter owned.  Hughes Tsti. Tr. 73:10—14.  Mr. Hughes
and his family also began to transport Barnes to and from his

medical appointments, for meals and groceries, and for prescriptions.  E.g., id. at 73:19-76:19, 80:8-82:10.

28.  During this time, Barnes could not pay or reimburse Mr. Hughes or his family, but Barnes promised Hughes that he would do so in the event he ever prevailed in this action or found himself in a better financial situation.  E.g., id. at 85:23-86:15; Barnes Tsti. Tr. 29:6—19.

29.  Barnes also spent short periods of time with his mother on the United States mainland. E.g., Barnes Tsti. Tr. 36:14-37:1.  Further, Barnes's mother helped to support him while he was financially struggling.  Id. at 14:20-15:5.

30.  Barnes currently rents at a location that costs him approximately $700.00 per month—$500.00 per month for rent and around $200.00 per month for utilities.  Barnes Tsti. Tr. 17:7-18:7.

### E.   Barnes's Post-Accident Food Costs

31.  Barnes submitted evidence that his food costs average up to $45.00 per day.  Ex 16 at p. 1.  Because the places that he lived post-July 3, 2012 accident often lacked kitchens, he was forced to have most of his meals at restaurants.  Id.

32.  Barnes also submitted evidence that, if he were able to buy groceries to prepare every meal in his own kitchen, he would require at least $25.00 per day comprising $5.00 per day

for breakfast, $8.00 per day for lunch, and $12.00 per day for dinner.  Id. at pp. 12-13.

33.  Mr. Hughes estimated that an average breakfast and lunch in Kailua-Kona, Hawaii would cost between approximately $10.00 and $12.00, while lunch would cost around $12.00.  Hughes Tsti. Tr. 82:3—10.

34.  For his part, Henry testified that he believes three meals per day would cost up to $37.00 per day. Henry Tsti. Tr. 28:23-30:1.

**F.  Legal Proceedings and Defendants' Post-Accident Conduct**

35.  As stated above, Henry or SHR provided David Pane with one $600.00 check on Barnes's behalf to cover rent following the July 3, 2012 accident.  Barnes Tsti. Tr. 30: 3—12; Henry Tsti. Tr. 20:21-22:5.

36.  On January 1, 2013, Barnes filed a Verified Complaint against SHR, Henry, and a number of Doe defendants, in personam, and M/V TEHANI, HA-1629 CP, and her engines, equipment, tackle, stores, furnishings, cargo and freight, in rem.  ECF No. 1.  The Complaint alleged the following counts: (1) negligence under the Jones Act, 46 U.S.C. § 688 (Count I); (2) unseaworthiness (Count II); (3) maintenance, cure, and wages under general maritime law (Count III); (4) compensation and recovery for negligence pursuant to the Longshore and Harbor Workers' Compensation Act,

33 U.S.C. § 901 et seq. (Count IV); (5) negligence under 28
U.S.C. § 905(a) (Count V); (6) negligence under 28 U.S.C. §
905(b) (Count VI); (7) individual liability of Henry and the Doe
Defendants for the negligence of SHR, pursuant to a theory of
"piercing the veil of limited liability" (Count VII); (8)
intentional and/or negligent infliction of emotional distress
(Count VIII); (9) attorneys' fees (Count IX); and (10) punitive
damages (Count X).  Id.

37.  On August 20, 2013, Barnes filed a Motion for Summary
Judgment for Payment of Maintenance and Cure.  ECF No. 25; Ex.
7.  In opposition, Defendants stated that they attempted to
investigate Barnes's maintenance and cure claims but were
thwarted by Barnes's failure to cooperate fully with their
discovery requests.  ECF No. 34; Ex. 8.

38.  On November 15, 2013, the Court issued its Order
Granting in Part and Denying in Part Plaintiff's Motion for
Summary Judgment for Payment of Maintenance and Cure.  ECF No.
44.  The November 15, 2013 Order granted the motion as to
Barnes's entitlement to maintenance and cure, but denied the
motion as to the amount of such claims.  Id.  The cure claim was
denied because the amount Plaintiff Barnes sought was not
clearly established.  Id.  The maintenance claim was denied
because of inadequate evidence as to the reasonable amount of
daily maintenance in the Kailua-Kona community, as required by

the Fifth Circuit in <u>Hall v. Noble Drilling (U.S.) Inc.</u>, 242
F.3d 582 (5th Cir. 2001).  However, the Ninth Circuit
subsequently in <u>Barnes</u> adopted as a matter of first impression
the burden-shifting framework for determining a community's
reasonable rate of maintenance as set forth in <u>Incandela v.</u>
<u>American Dredging Company</u>, 659 F.2d 11, 14 (2d Cir. 1981).  <u>See</u>
889 F.3d at 541-42.

39.  Also in November 2013, Defendants, pursuant to the
Court's proposed stipulation, notified the Court that they were
willing to stipulate to and pay $30 per day in maintenance to
Barnes without prejudice to either side's right to seek a
further higher or lower final determination as to a reasonable
daily rate of maintenance; however, Barnes declined this win-win
Court-proposed stipulation.  <u>See</u> Order Denying Plaintiff's Third
Motion for Summary Judgment for Payment of Maintenance at p. 3
n.2, 12, ECF No. 120; Order Denying Plaintiff's Motion for
Reconsideration at pp. 4-5, ECF No. 51.

40.  On January 27, 2014, Barnes filed a second Motion for
Summary Judgment for Payment of Maintenance.  ECF No. 58.  The
Court denied the motion on April 15, 2014, concluding that
issues of fact precluded a determination as a matter of law on
the issue of the appropriate rate of maintenance.  ECF No. 77.

41.  On March 7, 2014, and April 1, 2014, Barnes received
two payments of $962.83 each from SHR.  Ex. 32 at pp. 3-4; <u>see</u>

<u>also</u> Order Denying Plaintiff's Third Motion for Summary Judgment for Payment of Maintenance at p. 9 n.7, ECF No. 120.

42. On May 21, 2014, Barnes filed his First Amended Complaint. ECF No. 91. In the First Amended Complaint, Barnes brought the following claims: (1) negligence under the Jones Act, 46 U.S.C. § 688, against the in personam Defendants (Count I); (2) unseaworthiness as against the M/V TEHANI, in rem, and the in personam Defendants (Count II); (3) maintenance, cure, and wages under general maritime law (Count III); (4) compensation and recovery for negligence pursuant to the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 905, against the in personam and in rem Defendants (Counts IV-VI); (5) individual liability of Henry and the Doe Defendants for the negligence of SHR, pursuant to a theory of "piercing the veil of limited liability" (Count VII); (6) intentional and/or negligent infliction of emotional distress as against all Defendants (Count VIII); and Jones Act negligence per se (Count XII). <u>Id.</u>

43. On May 30, 2014, Barnes filed his Third Motion for Summary Judgment for Payment of Maintenance. ECF No. 94. In addition, on July 1, 2014, Barnes filed a Motion for Summary Judgment for Payment of Cure. ECF No. 103. The Court issued orders denying both motions on September 2, 2014. ECF Nos. 120, 121.

44.   Separately, on July 7, 2014, Barnes filed a Motion for Summary Judgment as to Unseaworthiness, Negligence Per Se, and Jones Act Negligence.   ECF No. 108.

45.   On November 3, 2014, Henry filed for Chapter 13 bankruptcy protection.   In re Kristin Kimo Henry, Case No. 14-01475, Dkt. 1.   On November 12, 2014, SHR filed for Chapter 7 bankruptcy protection.   In re Sea Hawaii Rafting, LLC, Case No. 14-01520, Dkt. 1.

46.   On December 22, 2015, following delays caused by the above bankruptcy proceedings, the Court issued an Order Granting in Part and Denying in Part Plaintiff's Motion for Summary Judgment as to Unseaworthiness, Negligence Per Se, and Jones Act Negligence, and Dismissing Defendant M/V Tehani for Lack of Jurisdiction.   ECF No. 197.

47.   After entry of the December 22, 2015 Order, Barnes filed a Motion for Leave to File Interlocutory Appeal.   ECF No. 199.   On December 30, 2015, the Court denied as moot Barnes's Motion for Leave to File Interlocutory Appeal, finding that Barnes need not seek this Court's permission prior to filing an appeal under 28 U.S.C. 1292(a)(3).   ECF No. 203.

48.   On March 28, 2018 the Ninth Circuit reversed in part and remanded the December 22, 2015 Order.   Barnes, 889 F.3d at 543.   The Ninth Circuit also issued a writ of mandamus directing the Court to award Barnes maintenance at the rate of $34 per

day, subject to a potential upward increase after trial.  Id. at
543.  Further, the Ninth Circuit encouraged the Court to sever
the issues of maintenance and cure and expeditiously set these
issues for trial.  Id. at n.21.

49.  The Ninth Circuit's Mandate issued on April 27, 2018,
and the Court entered a minute order on May 2, 2018 scheduling a
non-jury trial on Barnes's claims for maintenance and cure to
commence on June 12, 2018.  ECF No. 314.  After the parties
requested a continuance of the non-jury trial, the Court
rescheduled it to commence on July 31, 2018.  ECF No. 322.

50.  On June 29, 2018, the Court issued a Directive to the
United States Bankruptcy Court for the District of Hawaii,
directing the bankruptcy court transfer to this Court the
$10,000.00 in rental income which the bankruptcy court received
for use of the M/V Tehani.  ECF No. 337.  The Court stated that
the $10,000.00 in rental income would be available to Plaintiff
Barnes, id., and Barnes has since received those funds, ECF No.
373 at p. 2.

51.  On July 8, 2018, Barnes filed a Second Amended
Complaint, which he later verified, against SHR, Henry, Aloha
Ocean Excursions, LLC ("AOE")[5] and a number of Doe defendants, in

_____

[5] AOE was joined as a party defendant since the M/V Tehani was
sold to AOE by the bankruptcy court.  However, the Ninth Circuit
held in Barnes that the bankruptcy court did not have
(Continued . . . .)

17

personam, and the M/V TEHANI, HA-1629 CP, and her engines, equipment, tackle, fares, stores, permits, furnishings, cargo and freight, and several "Doe Vessel" defendants, in rem. ECF Nos. 349, 355.

52. On July 10, 2018, Plaintiff Barnes filed an "Errata Second Amended Complaint," which mirrors the Second Amended Complaint but remedies some of the Second Amended Complaint's spelling, grammatical, and typographical errors. ECF No. 356. On July 17, 2018, Plaintiff Barnes filed a Verification of Errata Second Amended Complaint. ECF No. 363.

53. In the Errata Second Amended Complaint, Barnes alleges the following counts: (1) negligence under the Jones Act, 46 U.S.C. § 688, against the in personam Defendants (Count I); (2) unseaworthiness as against the M/V TEHANI, in rem, and the in personam Defendants (Count II); (3) maintenance and cure under general maritime law (Count III); (4) individual liability of Henry and the Doe Defendants for the negligence of SHR and AOE, pursuant to a theory of "piercing the veil of limited liability" (Count IV); (5) intentional infliction of emotional distress as

_____

(Continued . . . .)
jurisdiction over the vessel and that Barnes has a maritime lien on the vessel. E.g., 889 F.3d at 533 ("The bankruptcy court lacked jurisdiction to adjudicate Barnes's maritime lien because the admiralty court had already obtained jurisdiction over the Tehani."). The sale of the vessel by the bankruptcy court has been appealed and is under pending litigation. See In re Sea Hawaii Rafting, LLC, Case No. 14-01520, Dkts. 331, 343.

against all Defendants (Count V); (6) an accounting of Henry, SHR, AOE, and the M/V Tehani (Count VI); (7) attorneys' fees against all defendants (Count VII); (8) punitive damages against the in personam defendants (Count VIII); and (9) Jones Act negligence per se against SHR and Henry (Count IX). ECF No. 356.

54. At the time of trial, Barnes has never received maintenance or cure payments from Defendants beyond the: (a) $600.00 check SHR or Henry paid to David Pane to cover Barnes's rent, Barnes Tsti. Tr. 30: 3—12; Henry Tsti. Tr. 20:21-22:5; (b) two payments of $962.83 each from SHR or Henry, Ex. 32 at pp. 3-4; see also Order Denying Plaintiff's Third Motion for Summary Judgment for Payment of Maintenance at p. 9 n.7, ECF No. 120; and (c) $10,000.00 rental proceeds from use of the M/V Tehani, which this Court obtained from the bankruptcy court and sent to Plaintiff Barnes, and which was available to prepay for the arrest of the vessel, ECF No. 373.

## II.  CONCLUSIONS OF LAW

### A.  General Maritime Law

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1333, which provides original jurisdiction over admiralty or maritime claims. Venue is proper because the defendants are subject to personal and in rem jurisdiction of this Court.

2.    The matters before the Court are: (a) the daily rate of maintenance—at least $34 per day—to which Barnes is entitled; (b) the amount of cure, if any, to which Barnes is entitled; (c) whether Barnes has reached maximum medical cure; (d) whether SHR's denial of maintenance and cure was willful and wanton, justifying an award of attorneys' fees and punitive damages to Barnes; and (e) the appropriate rate of pre-judgment interest, if any, applicable to any judgment in favor of Barnes.

3.    "Policy considerations have led to the adoption of a somewhat paternalistic attitude toward seamen." Perry v. Morgan Guaranty Trust Co., 528 F.2d 1378, 1379 (5th Cir. 1976); see also Miles v. Apex Marine Corp., 498 U.S. 19, 36 (1990) ("admiralty courts have always shown a special solicitude for the welfare of seamen and their families").

4.    "Under principles of general maritime law, seamen are entitled to maintenance and cure from their employer for injuries incurred in the service of the ship[.]" Aguilera v. Alaska Juris F/V, O.N.569276, 535 F.3d 1007, 1009 (9th Cir. 2008) (alteration in original) (citation and internal quotation marks omitted). "'Maintenance . . . is designed to provide a seaman with food and lodging when he becomes sick or injured in the ship's service; and it extends during the period when he is incapacitated to do a seaman's work and continues until he

reaches maximum medical recovery.'"  Id. (quoting Vaughan v. Atkinson, 369 U.S. 527, 531 (1962)).

**B.  <u>Maintenance</u>**

5.    A seaman seeking maintenance "is entitled to the reasonable cost of food and lodging, provided he has incurred the expense."[6]  <u>Hall v. Noble Drilling (U.S.) Inc.</u>, 242 F.3d 582, 587 (5th Cir. 2001).  The Ninth Circuit determined that Barnes is entitled to daily maintenance at the rate of $34.00, subject to an upward increase at trial.  <u>Barnes</u>, 889 F.3d at 543.

6.    In seeking to prove entitlement to a daily maintenance rate higher than $34.00, Barnes must "present evidence to the court that is sufficient to provide an evidentiary basis for the court to estimate his actual costs."  <u>Hall</u>, 242 F.3d at 590. The Ninth Circuit in <u>Barnes</u> interpreted <u>Hall</u> as stating that the seaman's actual expenses are presumptively reasonable.  889 F.3d at 540.  The seaman's evidentiary burden "is 'feather light,' and a court may award reasonable expenses, even if the precise amount of actual expenses is not conclusively proved."  Id. at

---

[6] The <u>Hall</u> court explained:  "While 'food' is self-explanatory, lodging requires definition. 'Lodging' includes expenses 'necessary to the provision of habitable housing,' such as heat, electricity, home insurance, and real estate taxes. . . . Other expenses, such as telephone service, clothing, toiletries, and travel, are not part of maintenance."  242 F.3d at 587 n.17.

588 (quoting <u>Yelverton v. Mobile Labs., Inc.</u>, 782 F.2d 555, 558 (5th Cir. 1986).

7.   Indeed, a plaintiff's own testimony as to the cost of room and board in the community where he is living is sufficient to support an award.  <u>Yelverton</u>, 782 F.2d at 558; <u>see also</u> <u>Morel v. Sabine Towing & Transp. Co., Inc.</u>, 669 F.2d 345, 347-48 (5th Cir. 1982) (noting that, while a plaintiff's own testimony is not "the most probative evidence one might conceive," the district court did not err in admitting and considering it, given the Supreme Court's emphasis that doctrines of maintenance and cure are to be construed liberally and in favor of the seaman).

8.   Barnes's current lodging expenses amount to around $700.00 per month.  Barnes Tsti. Tr. 17:7-18:7.  This $700.00 amount comprises $500.00 per month for rent and approximately $200 per month for utilities.  <u>Id.</u>  Accordingly, Barnes actual lodging expenses are approximately $23 per day.[7]

9.   The Court notes that at the time of the July 3, 2012 accident, Barnes's reasonable lodging expenses also amounted to approximately $700.00 per month.  Barnes Tsti. Tr. 19:25-21:22. At that time, Barnes was paying around $1400.00 total for a two-

_____

[7] This amount of daily lodging expenses is calculated by multiplying Barnes's $700.00 per month in lodging expenses by 12 months and dividing the product by 365 days (($700 x 12)/365).

bedroom, two-bathroom condominium—the $1400.00 amount comprised $1200.00 per month in rent and approximately $200.00 per month in utilities.[8]  Id.  Dividing the cost for Barnes's two-bedroom and two-bath unit in half shows that Barnes's reasonable lodging expenses amounted to approximately $700.00 per month.

10.  Barnes has also submitted evidence that his food costs average as much as approximately $45.00 per day.  Ex. 16 at pp. 1, 14.

11.  From Barnes's evidence and testimony at trial, therefore, the Court finds that Barnes has adequately established that his actual expenses are $23.00 per day for lodging and $45.00 per day for food.  Said differently, the

---

[8] The time during which Plaintiff Barnes lived with Mr. Hughes' daughter, his mother, and others despite having no ability to pay is properly included as part of Barnes maintenance award. "[A] seaman living with his family is entitled to maintenance if he shows that he paid his family for room and board or that he had promised that he would and was obliged to do so." Barnes v. Andover Co., 900 F.2d 630, 641 (3d Cir. 1990); McCormick Shipping Corp. v. Duvalier, 311 F.2d 933, 934 (5th Cir. 1963) (affirming maintenance award when "there was an expressed intention of the appellee to make payment and an expectation of her cousin to receive it"); see also Hall, 242 F.3d at 588 ("[W]hen the seaman has made 'an expressed intention' to pay . . . even if the obligation is not legally enforceable, the seaman may recover maintenance." (quoting McCormick Shipping Corp., 311 F.2d at 934)); Posey v. Bouchard Transp. Co., No. CIV.A.04-1751, 2005 WL 2050279, at *2 (E.D. La. July 29, 2005) (same).  Barnes stated his intention to repay these individuals if he were ever able to prevail in this action or otherwise become more financially independent.  Hughes Tsti. Tr. 85:23-86:15; Barnes Tsti. Tr. 14:20-15:5, 29:6—19.

Court finds that Barnes has established actual expenses of $68.00 per day.

12. When a "seaman makes out a prima facie case on the maintenance rate question [by] prov[ing] the actual living expenditures which he found it necessary to incur during his" recovery, "the burden shift[s] to the defendant to demonstrate that [the seaman']s actual expenditures were excessive, in light of any realistic alternatives for room and board available to him in [the locality]." Incandela v. Am. Dredging Co., 659 F.2d 11, 14 (2d Cir. 1981); see also Barnes, 889 F.3d at 541-42 (quoting Incandela and, as a matter of first impression, "expressly adopt[ing]" its burden-shifting framework).

13. Defendants have entirely failed to carry their burden to demonstrate that Barnes's actual expenses were excessive or unreasonable. Defendants put on a limited case at trial, calling only Henry and Barnes to testify, introducing no exhibits, but extensively cross-examining Barnes's witnesses. In addition, Mr. Henry testified that he believes: (a) lodging in Kailua-Kona, Hawaii would cost Barnes up to $700 per month (or $23.00 per day), Henry Tsti. Tr. 27:25-28:20; and (b) three meals would cost up to $37.00 per day, Id. at 28:23-30:1.[9] Thus,

---

[9] The Court notes that Mr. Henry's testimony regarding estimated food costs is generally consistent with Mr. Hughes's estimate that an average breakfast and lunch in Kailua-Kona, Hawaii would (Continued . . . .)

according to Mr. Henry's testimony, Barnes is entitled to up to at least $60.00 per day. Such testimony does not establish that Barnes' actual expenses were excessive.

14. Where a seaman provides evidence of actual expenses and the defendant has not shown that the seaman's actual expenditures were excessive, "the court must determine the maintenance award" by "compar[ing] the seaman's actual expenses to reasonable expenses," and awarding the lower amount unless "the plaintiff's actual expenses were inadequate to provide him with reasonable food and lodging." Hall, 242 F.3d at 590. The seaman "need not present evidence of the reasonable rate" of maintenance in his district; rather, "a court may take judicial notice of the prevailing rate in the district." Id.

15. The Court's research indicates that the most recent cases regarding the reasonable rate of daily maintenance for a seaman in the state of Hawaii (let alone in the locality of Kailua-Kona, Hawaii) appear to be more than ten-years old. E.g., Nelson v. Research Corp. of Univ. of Haw., 805 F. Supp. 837, 853 (D. Haw. 1992) (holding that maintenance rate of $24 per day was reasonable). In addition, a district court in the District of Hawaii noted in 2008 that the American Maritime

---

(Continued . . . .)
cost between approximately $10.00 and $12.00, while lunch would cost around $12.00. Hughes Tsti. Tr. 82:3–10.

Officers union's 2004 collective bargaining agreement set a maintenance rate of $12 per day.  See Best v. Pasha Haw. Transp. Lines, L.L.C., No. 06-00634 DAE-KSC, 2008 WL 1968334, at *1 (D. Haw. May 6, 2008).  Given the age and distinguishable facts of these cases, the Court finds them unpersuasive in determining the prevailing rate of daily maintenance in this district.

16.  However, Dr. Jack Suyderhoud, Ph.D., plaintiff's expert witness in the field of economics, testified regarding the reasonable rate of daily maintenance for a seaman living in the locality of Kailua-Kona, Hawaii.  Dr. Suyderhoud also provided a report concluding that a rate of "around $70" per day "may be a reasonable estimate of the daily cost [of maintenance] in Kailua-Kona."  Ex. 48 at p. 8.  To make this determination, Dr. Suyderhoud employed three alternative methods for estimating the reasonable rate of daily maintenance in Kailua-Kona in 2015-dollar values.  Ex. 48.  While the Court has concerns regarding some of Dr. Suyderhoud's methodology, the Court finds his Exhibit 3 especially helpful.  See Ex. 48 at p. 10.

17.  The Court finds that Dr. Suyderhoud's Exhibit 3 is very helpful in establishing the reasonable rate of daily maintenance for the Kailua-Kona community.  Ex. 48 at p. 10. Exhibit 3 includes a number of categories of expenses, some of which are not appropriate considerations in a determination of the reasonable daily rate of maintenance; however, Exhibit 3

26

does include expenses for food and housing, which amount to
$87.70 per day for the year 2015.  Accordingly, the Court finds
that the standard reasonable rate of daily maintenance in
Kailua-Kona is at least $87.70, even without adding inflation
costs from and after the year 2015.  The Court notes that under
Incandela, the burden of proof as to a community's reasonable
rate of maintenance is shifted to Defendants, 659 F.2d at 14;
and the Court finds that Defendants have failed to establish
such reasonable rate.

18.  As stated above, where a seaman provides evidence of
actual expenses, "the court must determine the maintenance
award" by "compar[ing] the seaman's actual expenses to
reasonable expenses," and awarding the lower amount unless "the
plaintiff's actual expenses were inadequate to provide him with
reasonable food and lodging."  Hall, 242 F.3d at 590.

19.  Barnes has presented evidence that his actual expenses
are $68.00 per day ($23.00 per day for lodging and $45.00 per
day for food).  The Court has considered expert witness evidence
that the reasonable rate of daily maintenance in Barnes's
locality is over $87.70.  Comparing these two maintenance rates,
the Court finds that Barnes is entitled to maintenance at the
rate of $68.00 per day from the date of his injury to the
current date.

20.   Further, the Court finds that maintenance at the rate of $68.00 per day is adequate to provide Barnes with "reasonable food and lodging."  <u>Id.</u>

21.   Accordingly, Barnes is entitled to maintenance at the rate of $68.00 per day from the date of his injury, July 3, 2012, until he reaches maximum medical cure.

### C.   **Cure and Maximum Medical Cure**

22.   Cure is generally understood to require the provision of medical treatment and similarly extends until maximum medical recovery has been reached as a result of "continued and necessary medical treatment."  <u>Luksich</u>, 140 F.2d 812, 814 (9th Cir. 1944).

23.   Treatment need not be intended to return a seaman to work in order to be considered "curative."  A seaman suffering from permanent and incurable conditions is entitled to maintenance and cure until the point his "condition has stabilized and further progress ended short of a full recovery." <u>In re RJF Int'l Corp.</u>, 354 F.3d 104, 106 (1st Cir. 2004) (holding that where a seaman suffered a serious brain injury which reduced his mental capacity to that of an 18-24 month old, treatment which had the potential to provide cognitive improvement and help the seaman cope with muscle spasticity and contraction was "curative"); <u>Permanente S. S. Corp. v. Martinez</u>, 369 F.2d 297, 298 (9th Cir. 1966) (stating that maximum cure is

28

reached when "the seaman is well or his condition is found to be incurable").

24.  A seaman must establish the amount of cure to which he is entitled.  E.g., Buenbrazo v. Ocean Ala., LLC, No. C06-1347C, 2007 WL 7724765, at *4 (W.D. Wash. Feb. 28, 2007) (stating that a seaman has a "duty to show at trial . . . the amount of maintenance and cure to which [he] is entitled").

25.  Here, Barnes has provided evidence that the State of Hawaii—through its Department of Human Services Med-QUEST Division—holds a lien against Barnes in the amount of $21,697.76 as a result of necessary medical treatment provided to Barnes. Ex. 41.  At trial, Barnes's counsel stated that the full amount of the State of Hawaii's lien is the extent of what Barnes is seeking for cure.  August 1, 2018 PM Tsti. Tr. 89:19-90:8.

26.  Defendants introduced no evidence at trial to undermine or rebut Barnes's evidence as to this amount of curable damages, and the Court thus finds that Barnes is entitled to $21,697.76 in curable damages.

27.  Moreover, Defendants "bear[] the burden of proving by a preponderance of the evidence that [the seaman] has reached maximum cure" in relation to his injuries.  Debbie Flo, Inc. v. Shuman, 2014 AMC 840 (D.N.J. 2014) ("It is the vessel owner's burden to prove that MMI, or maximum cure, has been attained by the injured seaman.") (citing Smith v. Delaware Bay Launch

Serv., Inc., 972 F. Supp. 836, 848 (D. Del. 1997)); Haney v. Miller's Launch, Inc., 773 F. Supp. 2d 280, 290 (E.D.N.Y. 2010) (stating that the employer has the burden of showing the seaman has reached maximum cure); Hedges v. Foss Mar. Co., No. 3:10-CV-05046 RBL, 2015 WL 3451347, at *5 (W.D. Wash. May 29, 2015) (collecting cases); Zermeno v. N. Pac. Fishing, Inc., No. C16-1540RSL, 2017 WL 4843484, at *2 (W.D. Wash. Oct. 26, 2017) ("[I]t is the shipowner's burden to prove by a preponderance of the evidence that plaintiff reached maximum cure . . . .").

28.  If any doubt exists as to whether a seaman is entitled to coverage, whether particular medical treatment is necessary, or whether maximum cure has been reached, courts generally resolve disputes in favor of the seaman.  E.g., Moore v. The Sally J., 27 F. Supp. 2d. 1255, 1262 (W.D. Wash. 1998) (citing Vella v. Ford Motor Company, 421 U.S. 1 (1975)).

29.  Defendants put on a limited case at trial, calling only Henry and Barnes to testify, introducing no exhibits, but extensively cross-examining Barnes's witnesses. Accordingly, Defendants wholly failed to carry their burden to establish that Barnes has reached maximum medical cure.

30.  The testimony of Barnes's expert medical witness and treating physicians support this conclusion.  Barnes's general neurology expert witness, Dr. Reumann, opined that Barnes has not yet reached maximum medical cure.  Reumann Tsti. Tr. 74:5—

18; 75:18—25; Ex. 49 at p.p. 3-4.  Barnes's treating physicians also reported that Barnes continues to schedule appointments with them and seeks treatment for his accident-related conditions.  E.g., Hanes Tsti. Tr. 76:21-77:3; Miner Tsti. Tr. 70:15—17.

31.  Based on Barnes evidence, and considering the extremely limited case that Defendants put on, the Court finds that Barnes has not yet reached maximum medical cure.

**D.  Attorneys' Fees and Punitive Damages**

32.  Attorneys' fees and punitive damages are available under general maritime law for the willful and wanton disregard of the maintenance and cure obligation.  See Atlantic Sounding Co., Inc. v. Townsend, 557 U.S. 404, 424 (2009); Vaughan, 369 U.S. at 530; see also Castaneda v. Bradley, No. 16-CV-00746-JD, 2016 WL 6778650, at *3 (N.D. Cal. Nov. 16, 2016).

33.  The Ninth Circuit has further explained that attorneys' fees incurred in order to secure a maintenance and cure award may be recovered where the failure to provide maintenance and cure is "arbitrary, recalcitrant or unreasonable."  Kopczynski v. The Jacqueline, 742 F.2d 555, 559 (9th Cir. 1984); see also Helffrich v. Atlantis Submarines, Inc., 210 F.3d 383 (9th Cir. 2000) ("Attorney's fees are properly awarded only 'where the shipowner has been willful and persistent in its failure to investigate a seaman's claim for

31

maintenance and cure or to pay maintenance.'" (citation
omitted)); <u>Vaughan</u>, 369 U.S. at 530-31 (allowing attorneys' fees
against shipowner who willfully and persistently failed to
investigate a claim for maintenance and cure).

34.  And courts have stated that "[a] shipowner becomes
liable for punitive damages when its refusal to pay maintenance
can be described as callous and recalcitrant, arbitrary and
capricious, or willful, callous, and persistent." <u>Guevara v.</u>
<u>Mar. Overseas Corp.</u>, 34 F.3d 1279, 1282 (5th Cir. 1994).

35.  An employer, however, is "entitled to investigate a
claim for maintenance and cure before tendering any payments to
the seaman—without subjecting itself to liability for
compensatory or punitive damages." <u>Boudreaux v. Transocean</u>
<u>Deepwater, Inc.</u>, 721 F.3d 723, 728 (5th Cir. 2013) (citing
<u>Morales v. Garijak, Inc.</u>, 829 F.2d 1355, 1358 (5th Cir. 1987));
<u>MNM Boats, Inc., v. Johnson</u>, 248 F.3d 1139 (5th Cir. 2001);
<u>McWilliams v. Texaco, Inc.</u>, 781 F.2d 514, 519-20 (5th Cir.
1986); <u>Snyder v. L & M Botruc Rental, Inc.</u>, 924 F. Supp. 2d 728,
734 (E.D. La. 2013); <u>Sullivan v. Tropical Tuna, Inc.</u>, 93 F.
Supp. 42, 45 (D. Mass. 1997).

36.  Generally, moreover, "the willful, wanton and callous
conduct required to ground an award of punitive damages requires
an element of bad faith." <u>Ward v. EHW Constructors</u>, No. C15-
5338 BHS, 2016 WL 7407226, at *5 (W.D. Wash. Dec. 22, 2016)

(citing Harper v. Zapata Off-Shore Co., 741 F.2d 87, 90 (5th Cir. 1984)).

37. "Examples of employer behavior that could merit punitive damages have included (1) laxness in investigating a claim; (2) termination of benefits in response to the seaman's retention of counsel or refusal of a settlement offer; [and] (3) failure to reinstate benefits after diagnosis of an ailment previously not determined medically." Tullos v. Resource Drilling, Inc., 750 F.2d 380, 388 (5th Cir. 1985); Johnson v. Am. Interstate Ins. Co., No. CIV.A. 6:08CV1988, 2010 WL 3802451, at *1 (W.D. La. Sept. 20, 2010).

38. Defendants argued in 2013 that they attempted to investigate Barnes's maintenance and cure claims but were thwarted by Barnes's failure to cooperate fully with its discovery requests. Order Granting in Part and Denying in Part Plaintiff's Motion for Summary Judgment for Payment of Maintenance and Cure at p. 17, ECF No. 44. However, the Court found in November 2013 that Barnes was entitled to an award of maintenance and cure, even without establishing the amount of such an award. Id. at pp. 18, 21. Defendants were thus on notice at least five years ago of their obligation to pay Barnes maintenance and cure.

39. In addition, the Ninth Circuit concluded earlier this year that Barnes was entitled to maintenance in the amount of at

least $34 per day from the date of the July 3, 2012 accident, subject to a potential upward increase at trial. Barnes, 889 F.3d at 542, 543. Shortly after the Ninth Circuit issued its mandate in this matter, this Court entered an Order Regarding Maintenance which stated: "Pursuant to the Ninth Circuit's writ of mandamus, Plaintiff Barnes is entitled to an award of maintenance at the rate of $34 per day, subject to a potential upward modification after trial." ECF No. 313 at p. 1. Defendants have not paid Barnes any maintenance or cure since the issuance of the Ninth Circuit's decision or this Court's Order Regarding Maintenance.

40. Indeed, aside from two payments of $962.83 each on March 7, 2014, and April 1, 2014, Ex. 32 at pp. 3-4; see also Order Denying Plaintiff's Third Motion for Summary Judgment for Payment of Maintenance at p. 9 n.7, ECF No. 120, and a single payment of $600 for rent, Barnes Tsti. Tr. 30: 3—12; Henry Tsti. Tr. 20:21-22:5, Defendants have never paid Barnes maintenance or cure since the July 3, 2012 accident. The Court finds that these isolated payments indicate that Defendants were aware of their obligation to pay maintenance and cure years ago, but have failed to make any additional payments during the more than six years following the July 3, 2012 accident.

41. The Court notes that there are considerations weighing against awarding punitive damages and attorneys' fees. For

example, pursuant to the Court's proposed stipulation, Defendants notified the Court in November 2013 that they were willing to stipulate to and pay $30 per day in maintenance to Barnes without prejudice to either side's right to seek a further higher or lower final determination as to a reasonable daily rate of maintenance; however, Barnes declined this win-win Court-proposed stipulation.  See Order Denying Plaintiff's Third Motion for Summary Judgment for Payment of Maintenance at p. 3 n.2, 12, ECF No. 120; Order Denying Plaintiff's Motion for Reconsideration at pp. 4-5, ECF No. 51. Defendants' unrequited early efforts to stipulate to an interim rate of maintenance subject to a final determination of the appropriate rate at trial cut against any inference of willful, wanton, or callous conduct.  See Ward, 2016 WL 7407226, at *5 ("[T]he willful, wanton and callous conduct required to ground an award of punitive damages requires an element of bad faith.").

42.   However, the Court finds that the amount of time that has passed since Defendants unambiguously were obligated to pay Barnes maintenance and cure—including after Barnes's rejection of the proposed stipulated amount of maintenance—weighs in favor of awarding punitive damages and attorneys' fees.

43.   In addition, Henry filed for Chapter 13 bankruptcy protection on November 3, 2014, and SHR filed for SHR filed for Chapter 7 bankruptcy protection on November 12, 2014.  See In re

Kristin Kimo Henry, Case No. 14-01475, Dkt. 1; In re Sea Hawaii Rafting, LLC, Case No. 14-01520, Dkt. 1. Henry testified that he relied on the advice of his former counsel in seeking bankruptcy protection for himself and SHR, and was unsure of how bankruptcy proceedings affected "the maintenance and cure through th[e] whole bankruptcy process . . ." Henry Tsti. Tr. 41:5–22. Nevertheless, Henry testified that he was aware that SHR was obligated to pay "some maintenance," but again was "uncertain of that when bankruptcy came into play." Henry Tsti. Tr. 27:17–22. In other words, SHR's decision to forego its obligation to pay maintenance was at least arbitrary, unreasonable, and willful. See Townsend, 557 U.S. at 424; Kopczynski,742 F.2d at 559.

44. Accordingly, the Court finds that Barnes is the prevailing party and has sufficiently demonstrated that Defendants acted willfully and wantonly in failing to pay him maintenance and cure. Selhorst v. Alward Fisheries, LLC, No. 3:12-CV-00133-TMB, 2013 WL 12119575, at *4 (D. Alaska July 25, 2013) ("To obtain punitive damages, a plaintiff must demonstrate that 'there are facts sufficient to allow a reasonable trier of fact to find, by a preponderance of the evidence, that [defendant] acted with gross negligence, manifest recklessness, callous disregard, or criminal indifference of the Plaintiff's safety or well-being.'" (quoting Kahumoku v. Titan Maritime,

36

LLC, 486 F. Supp. 2d 1144, 1153 (D. Haw. 2007)).  And
Defendants' willful and wanton conduct had an element of bad
faith, however slight.  The Court thus concludes that Defendants
are liable for punitive damages and attorneys' fees and costs.

45.  As to Barnes's reasonable attorneys' fees and costs,
Barnes shall file a motion before the magistrate judge to
determine the appropriate quantum within fourteen days of the
entry of this Order.  Barnes is directed to file a bill of costs
and a motion for attorneys' fees and related non-taxable
expenses in strict compliance with Local Rules 54.2 and 54.3.
LR 54.2(d) provides that any objections must be filed within
seven days after a bill of costs is served, and LR 54.3(f)
provides that any opposing response must be filed within
fourteen days after service of the statement of consultation
regarding the motion for attorneys' fees. LR 54.3(f) allows a
reply to be filed thereafter within fourteen days.  The
magistrate judge will then determine the appropriate amount of
attorneys' fees and costs to which Barnes is entitled, and
thereafter any party may file an appeal in accordance with the
aforesaid Local Rules.  A separate judgment for attorneys' fees
and costs will be entered, which will include the application of
the below-determined rate of pre-judgment interest.

46.  As to the amount of punitive damages for which
Defendants are liable, the Court finds it appropriate to award

an amount "necessary to ensure the next worker who falls ill aboard one of Defendant's vessels receives the treatment he deserves, as a seaman and as a human being." Jefferson v. Baywater Drilling, LLC, No. CIV.A. 14-1711, 2015 WL 365526, at *6 (E.D. La. Jan. 27, 2015).

47.  Defendants must be made aware that injured seamen are entitled to prompt payment of maintenance and cure.  E.g., The Troop, 118 F. 769, 770-771, 773 (D. Wash. 1902) (concluding that $4,000 was a reasonable punitive award because the captain's "failure to observe the dictates of humanity" and obtain prompt medical care for an injured seaman constituted a "monstrous wrong.").

48.  Based on the evidence and testimony presented at trial, the length of time Barnes has not received any payments of maintenance or cure, the complicated factual and procedural history of this case, and Defendants' pro se status for a considerable portion of these proceedings, the Court finds it appropriate to award Barnes $10,000.00 in punitive damages.

### E. Pre-judgment Interest

49.  The final issue is whether prejudgment interest should be awarded.  It is generally accepted that, under maritime law, the award of prejudgment interest is nearly automatic.  Id.  The trial court has discretion to deny prejudgment interest "only where peculiar circumstances would make such an award

inequitable." <u>Corpus Christi Oil & Gas Co. v. Zapata Gulf</u>
<u>Marine Corp.</u>, 1996 AMC 543, 552, 71 F.3d 198, 204 (5th Cir.
1995).

50.  Peculiar circumstances may be found "where plaintiff
improperly delayed resolution of the action, where a genuine
dispute over a good faith claim exists in a mutual fault
setting, where some equitable doctrine cautions against the
award, or where the damages award was substantially less than
the amount claimed by plaintiff." <u>Reeled Tubing, Inc. v. M/V</u>
<u>Chad G</u>, 794 F.2d 1026, 1028, 1987 AMC 2112 [DRO] (5th Cir.
1986).  The Court finds that no such peculiar circumstances
exist in this case.

51.  When determining the appropriate amount of pre-
judgment interest to apply, admiralty courts "may look to state
law and other reasonable guideposts." <u>Todd Shipyard Corp. v.</u>
<u>Auto Transp., S.A.</u>, 1987 AMC 1831, 1843, 763 F.2d 745, 753 (5th
Cir. 1985).  Under Hawaii law, pre-judgment "[i]nterest at the
rate of ten per cent a year, and no more, [is] allowed on any
judgment recovered before any court in the State, in any civil
suit."  Haw. Rev. Stat. § 478-3.

52.  The Court thus finds that pre-judgment interest at the
rate of 10.00% per year is appropriate.  This pre-judgment
interest rate shall apply from July 3, 2012, the date of the
accident, until the current date, or 2,257 days.

**III. SUMMARY**

On the basis of the foregoing Findings of Fact and Conclusions of Law, the Court concludes that Plaintiff Chad Barry Barnes is entitled to recover from Defendants (that is, SHR and M/V Tehani and her appurtenances[10]), jointly and severally:

1.  Maintenance in the amount of $68.00 per day. Over six years—2,257 days—have passed since the July 3, 2012 accident as of September 6, 2018. Accordingly, Defendants SHR and the M/V Tehani are obligated to pay Barnes $140,950.34[11] for past maintenance, and $68.00 per day until Barnes reaches maximum medical cure.

2.  Cure in the amount of $21,697.76.

3.  Punitive damages in the amount of $10,000.00.

---

[10] The Court notes that whether certain items constitute appurtenances to the Tehani are disputed and particularly whether the commercial use permit utilized in connection with the vessel is an appurtenance has been the subject of litigation and currently is on appeal before another district judge in this district. See In re Kristin Kimo Henry Case No. 14-01475. Accordingly, this court has made no ruling as to what constitutes appurtenances to the Tehani.

[11] The total amount of past maintenance due to Barnes is reduced by $12,525.66, which is the sum of the: (1) $600.00 check SHR or Henry paid to David Pane to cover Barnes's rent, Barnes Tsti. Tr. 30: 3—12; Henry Tsti. Tr. 20:21-22:5; (b) two payments of $962.83 each from SHR or Henry, Ex. 32 at pp. 3-4; see also Order Denying Plaintiff's Third Motion for Summary Judgment for Payment of Maintenance at p. 9 n.7, ECF No. 120; and (c) $10,000.00 rental proceeds Barnes received as maintenance, ECF No. 373.

4. Attorneys' fees and costs in an amount to be
determined after Barnes files an appropriate motion
before the magistrate judge. Barnes shall file a bill
of costs and a motion for attorneys' fees and related
non-taxable expenses in strict compliance with Local
Rules 54.2 and 54.3 no more than fourteen days
following the entry of judgment. Defendants may file
objections in accordance with Local Rules 54.2 and
54.3 to Barnes' requests for attorneys' fees and
costs. The magistrate judge will then determine the
appropriate amount of attorneys' fees and costs to
which Barnes is entitled, and thereafter any party may
file an appeal in accordance with the aforesaid Local
Rules. A separate judgment for attorneys' fees and
costs will be entered with an identical pre-judgment
interest rate applied.

Before applying pre-judgment interest and without
including attorneys' fees and costs, Barnes is entitled to a
total judgment in the amount of $172,648.10. Pre-judgment
interest at the rate of 10.00% per year applies to this amount
from July 3, 2012, to the present date.

Accordingly, pursuant to Federal Rule of Civil
Procedure 54, judgment shall enter in favor of Plaintiff Chad
Barry Barnes and against Defendants in the amount of

41

$305,856.64.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, September 6, 2018.



_____
Alan C. Kay
Sr. United States District Judge


Barnes v. Sea Hawaii Rafting, LLC et al., Civ. No. 13-00002 ACK-RLP, Findings
of Fact and Conclusions of Law.