IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

```
                                  )
CHAD BARRY BARNES,                )
                                  )
          Plaintiff,              )
                                  )
     v.                           )
                                  )
SEA HAWAI`I RAFTING, LLC;         )
KRIS HENRY; ALOHA OCEAN           )    Civ. No. 13-00002 ACK-RLP
EXCURSIONS, LLC; JOHN             )
DOES 1-20; MARY DOES              )
1-20; DOE CORPOPRATIONS           )
1-20; DOE PARTNERSHIPS            )
1-20; DOE ASSOCIATES              )
1-20; DOE GOVERNMENTAL            )
AGENCIES 1-20; AND OTHER          )
ENTITIES 1-20, in personam;       )
AND M/V TEHANI, HA 1629-CP,       )
AND HER ENGINES, EQUIPMENT,       )
TACKLE, FARES, STORES,            )
PERMITS, FURNISHINGS, CARGO       )
AND FREIGHT; DOE VESSELS 1-20,)
in rem.                           )
                                  )
          Defendants.             )
                                  )
```

## ORDER FINDING THAT THE M/V TEHANI'S TRAILER IS AN APPURTENANCE OF THE VESSEL

For the reasons discussed below, the Court finds that

the trailer on which the M/V Tehani has been secured is an

appurtenance of the vessel to which Plaintiff Barnes's maritime

lien attaches.

## BACKGROUND

For purposes of this Order, the Court will not recount

this case's lengthy procedural history beginning in 2013.  The

Court only discusses those facts of specific relevance to the issue that this Order addresses.

The Court of Appeals for the Ninth Circuit has found that Plaintiff Chad Barry Barnes ("Plaintiff Barnes") has a maritime lien on in rem Defendant the vessel M/V Tehani (the "Tehani") on the basis of Defendant Sea Hawai`i Rafting, LLC ("Defendant SHR") and the Tehani's failure to pay Plaintiff Barnes maintenance and cure. <u>Barnes v. Sea Hawaii Rafting, LLC, et al.</u>, 889 F.3d 517, 535 (9th Cir. 2018). Defendant SHR owned the Tehani at the time of the subject injury to seaman Plaintiff Barnes. The Tehani is a 25-foot rigid-hull inflatable boat powered by twin outboard engines. ECF No. 446 at 1-2. Plaintiff Barnes seeks to execute his maritime lien through in rem legal proceedings.

On August 1, 2018, the Court issued an Order Authorizing Issuance of Warrant for Maritime Arrest of the Tehani. ECF No. 388. However, on August 6, 2018, the United States Marshal Service notified the Court that the marshals did not have the ability to take custody of the vessel. <u>See</u> ECF No. 401. On September 27, 2018, the Court issued an Amended Order Authorizing Issuance of Warrant for Maritime Arrest ECF No. 441, on the basis that Plaintiff Barnes had apparently found a suitable substitute custodian willing to take custody of the vessel after its arrest.

Plaintiff Barnes's proposed substitute custodian has agreed to serve in this capacity only if the Tehani is arrested along with the trailer upon which it has been secured, which will allow the proposed substitute custodian to easily transport the vessel if doing so becomes necessary in the course of the substitute custodian's duties. Thus, this Court must determine whether the trailer is an appurtenance of the Tehani.

On September 28, 2018, the Court held a Hearing on Defendant Aloha Ocean Excursion, LLC's ("Defendant AOE") Motion to Alter or Amend the Judgment.[1] ECF No. 426. At the end of the

---

[1] On September 6, 2018, the Court filed its Findings of Fact and Conclusions of Law, ECF No. 424, after it held a trial on Plaintiff Barnes's claim for maintenance and cure. Judgment was entered on September 7, 2018. ECF No. 425. On September 12, 2018, Defendant AOE filed a Motion for Clarification of the Final Judgment Amount, ECF No. 426, which the Court construed as a Motion to Alter or Amend the Judgment. The initial discussion regarding the trailer issue took place at the Hearing on Defendant AOE's Motion. On October 5, 2018, the Court filed an Order, ECF No. 445, regarding Defendant AOE's Motion and Amended Findings of Fact and Conclusions of Law, ECF No. 446 ("Amended Findings and Conclusions"), which amended Plaintiff Barnes's judgment against in personam Defendant SHR and in rem Defendant the Tehani. An Amended Judgment in the amount of $279,406.12 in Plaintiff Barnes's favor was entered on October 6, 2018. ECF No. 447. Surprisingly, on November 2, 2018, Plaintiff Barnes appealed this Amended Judgment. ECF No. 461.

In the Amended Findings and Conclusions, the Court stated that Plaintiff Barnes was entitled to recover the Amended Judgment entered in his favor from Defendants SHR and the Tehani and her appurtenances. Amended Findings and Conclusions at 45. Notwithstanding the foregoing, counsel for Plaintiff Barnes stated in a Mediation Questionnaire filed with the Ninth Circuit on November 15, 2018, which was filed in connection with (Continued . . . .)

Hearing, the Court raised Plaintiff Barnes's concern that, in response to his submission of proposed substitute custodian documents, the Court had earlier noted in a Minute Order entered on September 26 2018, ECF No. 440, that Plaintiff Barnes's Second Amended Complaint did not assert that the trailer on which the Tehani has been secured was an appurtenance of the vessel.

---

(Continued . . . .)
Barnes's appeal of the Amended Judgment, and also stated at the appurtenance Hearing held on November 29, 2018, that this Court failed to state which defendants were on trial and which defendants judgment was entered against.

As the Court explained in footnote 3 on page 2 of the Amended Findings and Conclusions, Kris K. Henry was the sole owner and manager of Defendant SHR. Defendant Henry was not a defendant for purposes of the trial because he filed for Chapter 13 bankruptcy protection in 2014, see In re Kristin Kimo Henry, Case No. 14-01475, and the Bankruptcy Court declined Plaintiff Barnes's request for leave to assert in personam, unsecured claims against Defendant Henry or his bankruptcy estate. See In re Sea Hawaii Rafting, LLC, Case No. 14-01520, Dkt. No. 300 at 13-14. That matter is currently on appeal before another district judge in this district. See id. at Dkt. Nos. 301, 302.

As the Court explained in footnote 6 on page 17 of the Amended Findings and Conclusions, AOE was joined as a party defendant since the Tehani was sold to Defendant AOE by the Bankruptcy Court. However, the Ninth Circuit held in Barnes that the Bankruptcy Court did not have jurisdiction over the vessel and that Plaintiff Barnes has a maritime lien on the vessel. 889 F.3d at 533 ("The bankruptcy court lacked jurisdiction to adjudicate Barnes's maritime lien because the admiralty court had already obtained jurisdiction over the Tehani."). The sale of the vessel by the Bankruptcy Court was appealed, and on remand the Bankruptcy Court avoided the sale of the vessel. See In re Sea Hawaii Rafting, LLC, Case No. 14-01520, Dkt. Nos. 331, 343, 356.

The Court then asked counsel for Defendant AOE whether it would stipulate that the trailer constitutes an appurtenance. Counsel for Defendant AOE declined to so stipulate, but suggested that maybe the issue should be briefed. After further discussion, the Court stated that it was not going to rule on the issue at that time. The Court then asked counsel for Plaintiff Barnes whether he had attempted to rent a trailer on the Island of Hawai`i, or on Maui or O`ahu. Counsel for Plaintiff Barnes stated that his efforts to rent a trailer on the Island of Hawai`i were unsuccessful, but that he would endeavor to find a rental from the other islands. The Court stated that if counsel for Plaintiff Barnes's efforts to rent a trailer from the other islands were similarly unavailing, then as a last resort he should file a motion asking this Court to determine whether the trailer is an appurtenance of the vessel.

Notwithstanding the foregoing, on October 2, 2018, Plaintiff Barnes filed a Fourth Motion to Supplement Petition for Writ of Mandamus before the Ninth Circuit. Case No. 18-72203, Dkt. No. 12. In the supplemented Petition for Writ of Mandamus, Plaintiff Barnes states that this Court had determined the trailer is not an appurtenance. Id. The Court, in a Minute Order entered on October 10, 2018, ECF No. 448, summarized the foregoing and reiterated that Plaintiff Barnes should file a

motion if he continued to be unsuccessful in finding a rental trailer.

On October 22, 2018, the Court entered another Minute Order, ECF No. 453, where it directed Defendant AOE and Plaintiff Barnes to brief the issue of whether the trailer on which the Tehani has been secured is an appurtenance of the vessel. The Court required the parties to file their briefs by noon on November 2, 2018. Defendant AOE timely filed its brief on November 2, 2018. ECF No. 457. Just before noon on November 2, 2018 Plaintiff Barnes filed a Motion to Extend Time to file his brief, which requested a twelve-hour extension in which to file his brief and further stated that Plaintiff Barnes's counsel would be away on business in the Marshall Islands for the next several weeks. ECF No. 458. In a Minute Order entered that same day, the Court granted Plaintiff Barnes a twelve-hour extension in which to file his brief. ECF No. 459. Plaintiff Barnes filed his brief later that day. ECF No. 460. On November 5, 2018, Plaintiff Barnes filed a Supplement to his brief. ECF No. 462. On November 8, 2018, the Court of Appeals for the Ninth Circuit filed an order that stayed proceedings in Plaintiff Barnes's Petition for Writ of Mandamus pending this Court's ruling on the appurtenance issue. Case No. 18-72203, Dkt. No. 14.

On November 29, 2018, the Court held a Hearing on the appurtenance issue. At the Hearing, the Court directed the parties to file Supplemental Briefs describing in detail the manner in which the trailer is used on a daily basis, both at the time of the incident and currently. Defendant AOE and Plaintiff Barnes filed their respective briefs on December 5, 2018, ECF Nos. 478, 477.

## DISCUSSION

The only question before the Court at this time is whether the trailer upon which the vessel Tehani has been secured is an appurtenance of the vessel to which Plaintiff Barnes's maritime lien attaches. The parties have presented no cases where courts found that a trailer is appurtenant to a vessel, and the Court, through its research, has discovered none. Accordingly, it appears that this is a question of first impression; however, because the appurtenance determination is made on a case-by-case basis, the Court confines its analysis and holding to the unique facts of this case.

As is explained below, the Court holds that the trailer is an appurtenance of the Tehani to which Plaintiff Barnes's maritime lien attaches on the basis of several findings. First, the trailer is part of the vessel's usual equipment; second, the trailer is essential to the operation and mission of the vessel; third, the trailer is a necessary which

provides towage by drawing the Tehani to and from the water; and fourth the Bankruptcy Court both leased and subsequently sold to Defendant AOE the Tehani together with its trailer.

Prior to making its findings, the Court first sets forth the applicable law.

Under maritime law, a maritime lien arises against a vessel for various liabilities, including claims for maritime torts. Thomas J. Schoenbaum, Adm. and Mar. Law, § 9-1 (6th ed. 2018). It is well established that the failure to pay maintenance and cure is a tort that gives rise to a maritime lien for damages resulting from the failure to pay. Cortes v. Baltimore Insular Line, 387 U.S. 367, 370-71 (1932) (rev'd on other grounds, Miles v. Apex Marine Corp., 498 U.S. 19 (1990)). A maritime lien "attaches simultaneously with the cause of action and adheres to the maritime property even through changes of ownership until it is either executed through the in rem legal process available in admiralty or is somehow extinguished by operation of law." Schoenbaum, Adm. and Mar. Law, § 9-1.

A vessel is defined as the "hull and engines, tackle, apparel, and furniture of all kinds." The Augusta, 15 F.2d 727, 727 (E.D. La. 1920). In addition to the vessel, maritime liens also attach to the ship's "usual equipment . . . and appurtenances." The Great Canton, 1924 A.M.C. 1074, 1075 (S.D. N.Y. 1924) (finding that an unattached chronometer was an

appurtenance); Gowen, Inc. v. F/V Quality One, 244 F.3d 64, 67-68 (1st Cir. 2001) (finding that a vessel's fishing permits constituted appurtenances). The determination on what constitutes an appurtenance is a factual inquiry that is made on a case-by-case. Schoenbaum, Adm. and Mar. Law, § 9-1. Accordingly, the Court reiterates that its analysis is confined to the unique facts of this case.

Black's Law Dictionary defines the word "appurtenance" as "[s]omething that belongs or is attached to something else; esp[ecially], something that is part of something else that is more important." (10th ed. 2014). In the maritime context, the key inquiry into whether something is an appurtenance requires the court to analyze whether the item is "essential to the ship's navigation, operation, or mission." Gowen, 244 F.3d at 67-68 (citing Gonzalez v. M/V Destiny Panama, 102 F. Supp. 2d 1353, 1354 (S.D. Fla. 2000); United States v. F/V Sylvester F. Whalen, 217 F. Supp. 916, 917 (D. Me. 1963)).

Courts are guided in their inquiry by longstanding precedent. In The Frolic, the court observed that "[t]he word 'appurtenances' must not be construed with a mere reference to the abstract naked idea of a ship, for that which would be an incumbrance to a ship one way employed would be an indispensable equipment in another; and it would be a preposterous abuse to consider them alike in such different positions. You must look

to the relation they bear to the actual service of the vessel"
in order to determine whether something is an appurtenance. 148
F. 921, 922 (internal quotation marks omitted) (citing The
Dundee, 1 Hag. Adm. 109 (1823)).

When a ship is arrested, courts should compare "the
character of the property for which a sale exemption is sought
against the nature and mission of the subject vessel" when
determining whether certain property is an appurtenance. Motor-
Svcs. Hugo Stamp, Inc. v. M/V Regal Empress, Case No.: 8:03-cv-
703-24MSS, 2003 U.S. Dist. LEXIS 28903, at *91 (M.D. Fla. May
20, 2003), aff'd, 165 F. App'x 837 (11th Cir. 2006). If the
property is "necessary or beneficial" to the vessel, "the
property should remain with the vessel and be subject to the
Court's in rem jurisdiction and the claims of traditional
maritime lienors." Id. In determining whether something is an
appurtenance, courts may also consider whether treating it as
subject to a maritime lien "advances the objectives for which
such liens were created and, if so, whether there are overriding
objections to the contrary." Gowen, 244 F.3d at 68.

Ultimately, the outcome-determinative issue appears to
be whether the property in question is "essential" or "necessary
for the mission" of the vessel. Canaveral Port Auth. v. M/V
Liquid Vegas, No. 6:09-cv-1447-Orl-28DAB, 2009 WL 3347596, at *6
(M.D. Fla. Oct. 15, 2009) (finding that gaming equipment on a

vessel that functioned as a "floating casino" was an
appurtenance).

With this framework in mind, the Court begins its
analysis.

I.   **The Trailer Is Part of the Tehani's Usual Equipment**

A maritime lien arises not only against the vessel,
but also against its "usual equipment." See The Frolic, 148 F.
at 921. Black's Law Dictionary defines "equipment" as "[t]he
articles or implements used for a specific purpose or activity."
(10th ed. 2014).

The Court first notes that Plaintiff Barnes names as
the in rem defendant in his initial Complaint, First Amended
Complaint, and Second Amended Complaint, the "M/V TEHANI HA-
1629-CP, and her . . . equipment. . . ." (emphasis added). ECF
Nos. 1, 91, and 349. Therefore, if the trailer is part of the
vessel's usual equipment, it is subject to Plaintiff Barnes's
maritime lien. To determine whether or not the trailer
constitutes part of the Tehani's usual equipment, the Court must
consider the nature of the trailer and how it is used on a daily
basis.

In Plaintiff Barnes's Supplemental Brief regarding the
use of the trailer, he notes that at the time of the accident
the trailer was used at least twice a day in order to transport
the Tehani from Defendant Kris Henry's ("Defendant Henry") house

to the Honohokohau Harbor, and later from the harbor back to
Defendant Henry's house.  ECF No. 477 at 3.  The trailer was
also used to launch the Tehani into the water at the start of
each voyage and to remove the Tehani from the water when each
voyage was over.  Id.  Plaintiff Barnes's Declaration, ECF No.
477-1, confirms that the trailer was used to remove the Tehani
from the water after each and every trip it took; in other
words, the trailer was not kept in the water between trips.
Plaintiff Barnes's Decl. ¶ 11.  After each trip, the Tehani was
secured to the trailer and brought to a wash station where the
saltwater was rinsed off.  Id. ¶¶ 4(n), 11.  The trailer was
also used as storage for the Tehani at any time when it was not
in the water.  ECF No. 477 at 4.  Finally, the trailer was used
to tow the Tehani to the gas station on the harbor or at Costco
after each trip (or every other trip depending on ocean
conditions) in order to fuel the Tehani.  Plaintiff Barnes's
Decl. ¶ 5.  Thus, it appears that the Tehani was attached to the
trailer the vast majority of every daily twenty-four-hour
period.

          Defendant Henry's Declaration, ECF No. 476-1, notes
that the trailer that is currently used with the Tehani is not

the same trailer that was used at the time of the accident;[2] however, Defendant Henry also states that the use of the previous trailer at the time of the accident was similar to the use of the current trailer. Defendant Henry's Decl. ¶ 2, 9. Accordingly, the Court finds that Plaintiff Barnes's account regarding the use of the previous trailer is nevertheless instructive in the Court's appurtenance inquiry.

In addition, it appears that because of the Tehani's physical dimensions and hull structure, the trailer that is used in conjunction with the operation of the Tehani is quite unique. Plaintiff Barnes's Decl. ¶ 9. The trailer is apparently so unique, that it is difficult to acquire in the state of Hawai`i. Plaintiff Barnes's Decl. ¶ 10. Indeed, counsel for Plaintiff Barnes described the difficulties that he and Plaintiff Barnes have faced in renting or purchasing a substitute trailer at the Hearing on September 28, 2018 and at the Hearing on November 29, 2018. The trailer is also used solely in connection with the operation of the Tehani, and is not used to tow, store, or secure any other vessels. Plaintiff Barnes's Decl. ¶ 9.

---

[2] The fact that the trailer that is currently used with the Tehani is not the same trailer that was used at the time of the accident presents the issue of whether Plaintiff Barnes's maritime lien attaches to the current trailer. The Court addresses this issue <u>infra</u> at Part IV.

Based upon the foregoing review of the ways in which the trailer is used on a daily basis, as well as the unique relationship between the Tehani and its trailer, it is abundantly clear that the trailer is part of the Tehani's usual equipment. Indeed, the trailer is used on a daily basis to transport the Tehani to and from the harbor; to place the Tehani into the water at the start of voyages and to remove the vessel from the water when the voyages are over; to store the Tehani at all times when it is not in the water; and for regular maintenance of the Tehani, including the fueling and cleaning that occurs after each voyage. The Tehani and trailer essentially function as a single unit. Accordingly, the Court finds that the trailer is a piece of the Tehani's usual equipment to which Plaintiff Barnes's maritime lien attaches.

## II.  The Trailer Is Essential to the Tehani's Operation and Mission

The Court next considers whether the Tehani's trailer is subject to Plaintiff Barnes's maritime lien on the basis of whether or not it is "essential to the ship's navigation, operation, or mission" such that it should deemed an appurtenance of the vessel.  Gowen, 244 F.3d at 67-68.

### A.  Operation

Defendant AOE argues that a trailer should not be considered an appurtenance because it is not used during the

14

Tehani's operation on the water.  Defendant AOE's Memorandum at 5.  The Court finds Defendant AOE's argument unavailing.

Although the trailer is not used aboard the Tehani while it is operating on the water, it is well established that property "need not be aboard the vessel in order to be an appurtenance of the vessel." Stewart & Stevenson Svcs., Inc. v. M/V Chris Way Macmillan, 890 F. Supp. 552, 562 (N.D. Miss. 1995) (finding that propellers and tail shafts which were stored on the shore and not yet installed on the vessel were essential to its navigation and therefore appurtenances (citing United States v. The Zarco, 187 F. Supp. 371, 373 (S.D. Cal. 1960) (finding that an armature was appurtenant to a vessel even though it was no longer aboard the ship))).[3]  Accordingly, Defendant AOE's argument that the trailer should not be considered an appurtenance because it is not used aboard the ship is without merit.

Defendant AOE's argument also lacks merit because it appears that the trailer is momentarily used in the water while the Tehani is on the water.  Specifically, Plaintiff Barnes's declaration states that, in order to launch the Tehani, the

_____

[3] For additional examples of appurtenances that were not on board a vessel, see The Great Canton, 1924 A.M.C. at 1075 (finding that a chronometer on shore for repairs was an appurtenance of the vessel); Caterpillar Fin. Svcs. Corp. v. 1178 Crab Pots, 2001 A.M.C. 1605, 1615 (D. Alaska 1999) (finding that unattached crab pots were appurtenant to a fishing vessel).

trailer was reversed <u>into the water</u> until the Tehani floated off of the trailer bed. Plaintiff Barnes's Decl. ¶ 4(f). Thus, the trailer is used in the water in connection with the operation of the Tehani.

Furthermore, the trailer is undoubtedly essential to the operation of the Tehani. In order to operate safely, the Tehani must be maintained and supplied with gasoline and rinsed of seawater after each trip. The Tehani is secured upon the trailer while the crew accomplishes these basic maintenance tasks. The trailer is also essential to the operation of the Tehani because the vessel needs to be stored in a safe place when it is not in the water—a function that the trailer serves.[4] The trailer is also essential to the operation of the Tehani because it is used to launch the Tehani into the water for each trip and to retrieve the Tehani from the water when each trip concludes.

Defendant AOE argues that this Court should not find that the trailer is an appurtenance because to do so would create a "slippery slope" regarding what constitutes an appurtenance. Defendant AOE's Memorandum at 3. Specifically, Defendant AOE posits that if the trailer is an appurtenance,

---

[4] Without a trailer, the Tehani would have to be kept in the water at the harbor which apparently is a very expensive and uncommon method of storage for vessels such as the Tehani. Plaintiff Barnes's Decl. ¶ 11.

then "the truck which tows the trailer is also an appurtenance, because the trailer cannot be used without the truck." Id. Defendant AOE's argument is unavailing for several reasons.

First, contrary to Defendant AOE's assertion, the trailer is often used without the truck. As discussed, the trailer serves as storage for the Tehani whenever vessel is not in the water. Given that trucks serve numerous other transportation functions, the Court finds it unlikely that the truck is attached to the trailer at all times, especially when it is used for storage. It would appear that the truck is only used with the trailer when the Tehani is moved from place to place on land and when it is trailered into and out of the water, which represents only part of the time that the vessel spends attached to the trailer.

Second, unlike the trailer, the use of the truck is not specific to the Tehani. Indeed, the truck can be used in connection with any trailer or vessel and serves many non-maritime functions. This trailer, on the other hand, is used solely in connection with the operation of the Tehani because the design of the trailer is uniquely suited to the Tehani's dimensions and hull structure. It does not appear that the truck and the Tehani enjoy a similarly unique relationship because unlike the trailer, any vehicle with a tow rig could be used in connection with the operation of the Tehani.

17

Finally, while Defendant AOE's "slippery slope" concern is a legitimate one, the Court reiterates that appurtenance inquiries are conducted on a case-by-case basis, and that the Court's analysis is confined to the unique facts of this case. For these reasons, the Court rejects Defendant AOE's argument.

Defendant AOE correctly notes that the definition of appurtenance is not so broad as to include any object that has some logical connection to the use of the vessel. Defendant AOE's Memorandum at 5. Here, however, the trailer that is used in conjunction with the Tehani has more than simply a logical connection. The trailer is essential to the Tehani's operation, because without the trailer, the Tehani literally cannot operate on the water. By definition, therefore, the trailer is "essential to the vessel's . . . operation . . . ." Gowen, 244 F.3d at 67-68.

For the foregoing reasons, the Court finds that the trailer is essential to the operation of the Tehani and, therefore, is an appurtenance of the vessel to which Plaintiff Barnes's maritime lien attaches.

**B.  Mission**

Defendant AOE also argues that the trailer is not essential to the Tehani's mission of "serv[ing] passengers on the water." Defendant AOE's Memorandum at 5. The Court rejects

this argument for substantially the same reasons it rejected Defendant AOE's argument that the trailer was not essential to the operation of the Tehani.

In his Supplemental Brief, Plaintiff Barnes more fully characterizes the nature of the Tehani's mission. Plaintiff Barnes states that the mission of the Tehani is to take "customers out to sea for swimming, snorkeling and other recreational activities." Plaintiff Barnes's Supplemental Brief at 3.

The parties appear to agree that the Tehani's mission is to take passengers out on the water for recreational tours. The trailer is essential to the Tehani's mission because the trailer is used to place the Tehani into the water in order to embark on these tours, and to draw the Tehani out of the water after when the tours end. The other functions that the trailer serves, such as storage when the vessel is not in the water and securing the vessel during regular maintenance, are also critical to the mission of the vessel. Without the trailer the Tehani could not fulfill its mission of providing passengers with safe recreational tours.

Accordingly, the Court finds that the trailer is essential to the Tehani's mission and, therefore, the trailer is an appurtenance to which Plaintiff Barnes's maritime lien attaches.

## C.    Navigation

Plaintiff Barnes argues that the trailer is essential to the navigation of the vessel and, therefore, is also an appurtenance on that basis of the analysis.  Specifically, Plaintiff Barnes argues that the trailer momentarily aids the Tehani in its navigation as it carries the vessel down the ramp into the water, at which point the Tehani floats off of the trailer.  Plaintiff Barnes's Supplemental Brief at 5.

The Court finds that this argument is unpersuasive. Instrumentalities which are essential to a vessel's navigation include things like propellers, tail shafts, and engines.  <u>See</u> <u>M/V Chris Way MacMillan</u>, 890 F. Supp. at 562. (finding that propellers and tail shafts were essential to the vessel's navigation); <u>Gonzalez</u>, 102 F. Supp. 2d at 1357 (finding that two engines were essential to the vessel's navigation).

Unlike an engine or a propeller, which aid a vessel in navigation across the water, the Tehani's trailer does not aid in the vessel's navigation.  Nevertheless, the analysis courts use to determine whether something is an appurtenance of a vessel is disjunctive.  The object need only be essential to the vessel's navigation, operation, <u>or</u> mission.  Accordingly, because the Court has already determined that the trailer is essential to both the Tehani's operation and mission, as well as part of the vessel's equipment, the fact that Court finds the

trailer is not essential to the Tehani's navigation has no
bearing on the Court's conclusion that the trailer is an
appurtenance of the Tehani.

## III. The Trailer Provides the Tehani with a Necessary in the Form of Towage

Another argument supporting the proposition that the
trailer is an appurtenance is that it provides towage for the
Tehani.  Although there are numerous situations in which
maritime liens arise under the general maritime law, maritime
liens are also a creature of statute.  Specifically, 46 U.S.C. §
31342 provides that persons providing "necessaries to a vessel
on the order of the owner or a person authorized by the owner"
have maritime liens on the vessel.  See Bunker Holdings Ltd. v.
Yang Ming Liberia Corp., 906 F.3d 843, 845 (9th Cir. 2018)
(holding that a bunker supplier was entitled to a maritime lien
if it provided necessaries to the vessel on the order of the
vessel's owner or a person authorized by the owner).  The word
"necessaries" is defined as including "repairs, supplies,
towage, and the use of a dry dock or marine railway."  46 U.S.C.
§ 31301 (emphasis added).

Black's Law Dictionary defines "towage" as "the act or
service of towing ships and vessels, usu[ally] By means of a
small vessel called a tug."  (10th ed. 2014).  An earlier
edition of Black's Law Dictionary provides a more elaborate

definition, which includes "[t]he drawing of a ship or barge along the water by another ship or boat, fastened to her, or by men or horses, etc., on land." (4th ed. 1951). This definition is instructive because it shows that towage need not be rendered by a tug boat, and that the instrumentality providing towage can be land-based. See Ryan v. Hook, 34 Hun. (N.Y.) 185, 189 (1884) ("it clearly cannot make any difference as to [vessels'] liability for wharfage whether they are propelled by steam or sails of their own, or by tugs, or horse or mule power" (quoting Ex parte Easton, 95 U.S. 68, 74 (1877))).

Here, the trailer provides a "necessary" under 46 U.S.C. § 31301 in the way of "towage" for the Tehani; that is by towing or drawing the vessel from its storage site into and out of the ocean in the course of the vessel's daily operations, the Tehani's trailer is analogous to the function of a tug and the services which the trailer provides are analogous to towage. Like a tug that tows a barge from a harbor into the open ocean at the start of a voyage, and then back into the harbor upon the voyage's end, the Tehani's trailer similarly guides the vessel into and out of the water as each of its tours commences and concludes. While Plaintiff Barnes obviously is not seeking a lien for the provision of necessaries pursuant to 46 U.S.C. § 31342 for towage services; nevertheless, because the trailer

provides the Tehani with a necessary in the form of towage, the Court finds that the trailer is an appurtenance of the vessel.

## IV. The Bankruptcy Court Leased and Subsequently Sold to Defendant AOE the Tehani Together with Its Trailer

Defendant AOE argues that the trailer should not be considered an appurtenance of the vessel because it is the property of Defendant AOE, and not the property of Defendant SHR.[5] Defendant AOE's Memorandum at 5-6. Defendant AOE further argues that because there is no judgment against Defendant AOE, the trailer is not subject to execution like other property of a judgment debtor would be. Id. at 6. The Court finds that Defendant AOE's arguments are unpersuasive.

---

[5] The Court notes that as of December 6, 2018, the trailer and vessel are again owned by Defendant SHR. On that date, the Bankruptcy Court filed a Memorandum of Decision on Remanded Issues that addressed several issues remanded from the Ninth Circuit. These issues are (1) whether Plaintiff Barnes had prudential standing to seek a stay of the sale of the Tehani; (2) if Plaintiff Barnes had standing, whether the Bankruptcy Court lacked jurisdiction to authorize the sale; and (3) whether the sale of the Tehani should be avoided. In re Sea Hawaii Rafting, LLC, Case No. 14-01520, Dkt. No. 356 at 4. The Bankruptcy Court determined that the sale should be avoided and set aside the Sale Order authorizing the sale. Id. at 10-11. However, the Court notes that on December 10, 2018, Plaintiff Barnes nevertheless appealed the Bankruptcy Court's order. Id. at Dkt. No. 364. Regardless of the sale and its subsequent avoidance, the Bankruptcy Court's actions did not dispose of Plaintiff Barnes's maritime lien. Barnes, 889 F.3d at 535. Accordingly, the fact that Defendant SHR now owns the Tehani again in no way affects Plaintiff Barnes's maritime lien or the Court's analysis.

Moreover, Defendant AOE's argument regarding the judgment now appears to be moot given the fact that the Bankruptcy Court avoided the sale of the Tehani. Regardless, Defendant AOE's argument is misguided because Plaintiff Barnes's is seeking to execute his maritime lien on the Tehani; Plaintiff Barnes is not seeking to execute his judgment against Defendant SHR.

Furthermore, the fact that the Bankruptcy Court first leased and then sold the Tehani together with its trailer undercuts Defendant AOE's argument that the trailer is not essential to the Tehani's operation and mission. As the Court has discussed at length above, without the trailer Defendant AOE could not operate the Tehani in connection with its recreational tour business. The Bankruptcy Court leased and then sold the Tehani and its trailer as a unit, which strengthens the argument that the trailer is an appurtenance of the vessel.

A final issue related to the Bankruptcy Court's lease and subsequent sale of the Tehani concerns a factual question that arose after the Court requested supplemental briefing on the appurtenance issue. In his Declaration, Defendant Henry states that the current trailer used in conjunction with operation of the Tehani is not the same trailer that was involved in the accident. Defendant Henry's Decl. ¶ 2. Defendant Henry further states that the current trailer "was

purchased at some point in that [sic] last several years but I am not sure exactly when." Defendant Henry's Decl. ¶ 4. It is unclear, based on the Court's review of the record in the bankruptcy proceedings, which trailer was leased and subsequently sold to Defendant AOE. However, the record does indicate that the vessel and trailer were first leased to Defendant AOE on March 17, 2016, and then sold to Defendant AOE on May 9, 2016. Case No. 14-01520, Dkt. Nos. 142, 185. Because Defendant Henry states that the current trailer was purchased "in the last several years" it appears highly likely that the bankruptcy court leased and then sold the current trailer to Defendant AOE.

Although the current trailer was not involved in the accident, the Court finds that distinction makes no difference as to whether Plaintiff Barnes's maritime lien attaches to the trailer. As the Court has determined, the trailer is both part of the Tehani's usual equipment and appurtenant to the vessel. Because Plaintiff Barnes's maritime lien attaches to the vessel, its usual equipment, and appurtenances, the fact that this particular trailer was not in use at the time of the accident in no way makes it less a part of the Tehani's usual equipment or an appurtenance to which Plaintiff Barnes's maritime lien attaches.

Case law supports the Court's position. Gonzalez v. M/V Destiny Panama was a case involving a seaman who was injured aboard a ship on March 27, 2000 who later died of his injuries. No. 00-1690-CIV, 2002 WL 31962167, at *2 (S.D. Fla. Sept. 30, 2002). The representative of the seaman's estate filed suit against the vessel in rem, and the vessel was arrested on May 17, 2000. Gonzalez, 102 F. Supp. 2d at 1353. In April 2000 (after the accident but before the vessel was arrested) the owner purchased two replacement engines for the vessel which were not installed on the ship at the time of arrest. Id. at 1354. Notwithstanding the fact that the replacement engines were purchased after the accident took place and were never installed on the ship, the court held that the engines were appurtenances of the vessel. Id. at 1357.

Accordingly, the Court finds that the fact that the Tehani's current trailer was purchased after the accident took place in no way affects its conclusion that the trailer is an appurtenance of the Tehani to which Plaintiff Barnes's maritime lien attaches.

## CONCLUSION

For the foregoing reasons, the Court finds that the trailer on which the Tehani is secured is a piece of the Tehani's usual equipment and an appurtenance of the vessel to which Plaintiff Barnes's maritime lien attaches. Thus, the

trailer is subject to arrest by the United States Marshals on the basis of this Court's Amended Order Authorizing Issuance of Warrant for Maritime Arrest dated September 27, 2018.  ECF No. 441.

In order to proceed with the arrest of the vessel, Plaintiff Barnes would need to file amended proposed substitute custodian documents in accordance with the instructions set forth in the Court's Minute Order dated September 26, 2018, including reference to the trailer.  ECF No. 440.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai`i, December 13, 2018.

Alan C. Kay
Sr. United States District Judge

Barnes v. Sea Hawai`i Rafting, LLC, Kris Henry, M/V Tehani, et al., Civ. No. 13-00002 ACK-RLP, Order.

27