IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

|  |  |  |
|---|---|---|
| CHAD BARRY BARNES, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | |
| SEA HAWAI`I RAFTING, LLC; KRIS HENRY; ALOHA OCEAN EXCURSIONS, LLC; JOHN DOES 1-20; MARY DOES 1-20; DOE CORPORATIONS 1-20; DOE PARTNERSHIPS 1-20; DOE ASSOCIATES 1-20; DOE GOVERNMENTAL AGENCIES 1-20; AND OTHER ENTITIES 1-20, in personam; AND M/V TEHANI, HA 1629-CP, AND HER ENGINES, EQUIPMENT, TACKLE, FARES, STORES, PERMITS, FURNISHINGS, CARGO AND FREIGHT; DOE VESSELS 1-20, in rem. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civ. No. 13-00002 ACK-RLP |
| Defendants. | ) ) | |

### ORDER

For the reasons set forth below, the Court finds that the commercial use permit under which the vessel M/V Tehani (the "Tehani") is operated is not an appurtenance of the vessel. In addition, Plaintiff Chad Barry Barnes's ("Plaintiff Barnes") "Motion for an Order Appointing Himself as Substitute Custodian and Providing for <u>Custodia Legis</u> Expenses After Arrest" is DENIED; and Defendant Aloha Ocean Excursions, LLC's ("Defendant

AOE") "Motion for an Order Staying Execution of Order Authorizing Arrest of the Vessel and Appurtenances, or in the Alternative, for an Order Releasing the Vessel and Appurtenances from Arrest, Pursuant to Supplemental Admiralty Rule E(5)" is GRANTED IN PART AND DENIED IN PART.

## BACKGROUND

For purposes of this Order, the Court will not recount this case's lengthy procedural history beginning in 2013. The Court only discusses those facts and events of specific relevance to the issues that this Order addresses.

On January 14, 2019, Plaintiff Barnes filed a "Motion for an Order Appointing Himself as Substitute Custodian and Providing for Custodia Legis Expenses After Arrest," ("Plaintiff Barnes's Motion") together with various supporting documents. ECF No. 495. Defendant AOE filed its Memorandum in Opposition thereto on January 22, 2019. ECF No. 498. The Court held a hearing on Plaintiff Barnes's Motion on January 24, 2019 and took the matter under advisement.

Before the Court issued a ruling on Plaintiff Barnes's Motion, Defendant AOE filed on January 31, 2019 a "Motion for an Order Staying Execution of Order Authorizing Arrest of the Vessel and Appurtenances, or in the Alternative, for an Order Releasing the Vessel and Appurtenances from Arrest, Pursuant to Supplemental Admiralty Rule E(5)" ("Defendant AOE's Motion"),

together with an appraisal of the vessel Tehani in support of its Motion. Plaintiff Barnes filed his Memorandum in Opposition to Defendant AOE's Motion on February 13, 2019, ECF No. 519, and he filed an Errata thereto on February 14, 2019. ECF No. 520. The Court held a hearing on Defendant AOE's Motion on February 15, 2019. At the hearing, the Court heard oral argument regarding both Defendant AOE's Motion and Plaintiff Barnes's Motion.

Defendant AOE seeks to file a special bond, pursuant to Supplemental Admiralty Rule E(5)(a), in order to prevent the arrest of the Tehani or to secure the vessel's release once it has been arrested. The parties are not in agreement with respect to the value of the bond that Defendant AOE wishes to file. In such situations, Supplemental Admiralty Rule E(5)(a) requires that the Court set the value of the bond at the lesser of twice the amount of the plaintiff's claims or the value of the vessel. The parties both agree that the commercial use permit under which the Tehani operates affects the value of the vessel; however, the parties disagree as to whether or not the permit is an appurtenance of the vessel to which Plaintiff Barnes's maritime lien attaches.

At the hearing on February 15, 2019, where both Defendant AOE's Motion and Plaintiff Barnes's Motion were argued, the Court determined that it would have to rule on

whether or not the commercial use permit is an appurtenance of the vessel in order to accurately fix a bond value pursuant to Supplemental Admiralty Rule E(5)(a).  The Court held a subsequent hearing on February 28, 2019, at which William Wynhoff ("Mr. Wynhoff"), Deputy Attorney General and General Counsel for the Hawai`i Department of Land and Natural Resources (the "DLNR") testified.  Mr. Wynhoff's testimony concerned the transferability of commercial use permits under Hawai`i Administrative Rules ("HAR") § 13-231-62.  The Court also heard oral argument from the parties on the permit issue.

## **DISCUSSION**

In this Order, the Court addresses the commercial use permit issue, Plaintiff Barnes's Motion, Defendant AOE's Motion, and various ancillary issues.  In accordance with the Supplemental Admiralty Rules and the Court's equitable powers, and under the circumstances, the Court will move forward on two fronts—allowing Defendant AOE to file a bond, in an amount to be determined by the Court, in order to secure the release of the Tehani; and allowing Plaintiff Barnes to proceed with arresting the vessel during the interim period.  Prior to addressing the motions before the Court and the arrest of the vessel, the Court will address the commercial use permit issue.

## I. Whether or Not the Commercial Use Permit Is an Appurtenance of the Vessel

Plaintiff Barnes argues that the commercial use permit is like a fishing permit, and that because some courts have found that fishing permits are appurtenant to vessels, the Court should so find that the commercial use permit is appurtenant to the Tehani. Plaintiff Barnes also argues that the commercial use permit is an appurtenance because it is essential to the navigation, operation, and mission of the vessel. Defendant AOE argues that the commercial use permit is not appurtenant to the vessel because the permit is issued to Defendant AOE (and not to the vessel Tehani) and because such permits do not transfer with a vessel when the vessel is sold. For the reasons that follow, the Court finds that the commercial use permit under which the Tehani operates is not an appurtenance of the vessel.

The Court, in its Order Finding that the M/V Tehani's Trailer Is an Appurtenance of the Vessel, described at great length the law concerning what constitutes an appurtenance of a vessel to which a maritime lien attaches. See ECF No. 484, pp. 8-11. In summary, the key issue in determining what constitutes an appurtenance is whether the property in question is "essential to the ship's navigation, operation, or mission." Gowen, Inc. v. F/V Quality One, 244 F.3d 64, 67-68 (1st Cir. 2001). The Court also reiterates that the determination

regarding what constitutes an appurtenance is a factual inquiry that is made on a case-by-case basis.  Id. at 68 (citing Thomas J. Schoenbaum, Adm. and Mar. Law, § 9-1 (6th ed. 2018)).

In Gowan, the First Circuit upheld the district court's order confirming the marshal sale of the F/V Quality One, which included the fishing permits as appurtenances.  244 F.3d at 66.  The appellate court held that the vessel's fishing permits were appurtenances because treating fishing permits as subject to a maritime lien advances one of the objectives for which maritime liens are created—"to make readily available to a mobile borrower the secured credit that is often necessary to ensure that a vessel can obtain the basic supplies or services needed for its operation."  Id. at 68 (citing cases).  Importantly, the fishing permits in Gowan were transferable—that is, the permits could be sold along with the vessel, which is precisely what occurred when the marshal sold the vessel at auction.  Id. at 66.

Thus, in order to determine whether the commercial use permit under which the Tehani operates is an appurtenance of the vessel, the Court must first determine whether the permit can be transferred with the vessel when the vessel is sold.  The transferability of commercial use permits issued to corporations or other business entities under Hawai`i law is governed by HAR § 13-231-62(b), which provides in relevant part:

> (2) A commercial use permit or catamaran
> registration certificate issued to a
> corporation or other business entity shall
> automatically expire: . . .
> (B) If the vessel or vessels operated under
> the commercial use permit or catamaran
> registration certificate are sold or
> otherwise transferred and not replaced in
> accordance with the provisions of section
> 13-231-13(b) . . . .

Based upon the Court's reading of HAR § 13-231-62 and upon Mr. Wynhoff's testimony at the hearing held on February 28, 2019 regarding the DLNR's interpretation of the rules, the Court finds that commercial use permits are issued to individuals or business entities—not to vessels. HAR § 13-231-62(a)-(b). The Court further finds that when a vessel operating under a valid commercial use permit is sold or transferred, the commercial use permit will automatically expire unless the permittee replaces the vessel in accordance with the rules. HAR § 13-231-62(b)(2)(B).

Thus, based upon the plain meaning of the rules and Mr. Wynhoff's testimony, the Court finds that when a vessel is sold or transferred, the commercial use permit under which the vessel is operated cannot be transferred along with the vessel. The commercial use permit at issue here is distinguishable from the fishing permits in Gowan, which were able to be transferred when the vessel was sold. 244 F.3d at 66. By contrast, HAR § 13-231-62 precludes the transfer of a commercial use permit to

an individual or business entity that purchases the vessel operating under the permit. Even if the Court were to so find, as Plaintiff Barnes argues it should, that the permit is an appurtenance because it is essential to the navigation, operation, and mission of the vessel, the permit still cannot be transferred with the vessel if the vessel sold.

Accordingly, Court finds that the commercial use permit is not an appurtenance of the Tehani to which Plaintiff Barnes's maritime lien attaches.

## II. Defendant AOE's Motion

Defendant AOE's Motion is granted to the extent that the Court will allow Defendant AOE to post a bond, pursuant to Supplemental Admiralty Rule E(5)(a), to secure the release of the Tehani. However, the Court is not going to stay the arrest of the vessel pending Defendant AOE's filing of a bond because there is no guarantee that Defendant AOE is willing or able to file a bond in the amount that the Court determines, because the defendants have enjoyed six years' usage of the Tehani in the interim period without duly paying Plaintiff Barnes maintenance and cure, and to prevent potential exposure to other maritime liens. The Court also declines to fix a bond value at this time.

**III. The Arrest of the Vessel**

The marshal is directed to proceed with the arrest of the vessel as soon as Plaintiff Barnes submits funds for the necessary expenses and a certificate of insurance. Once the vessel has been arrested, the Court directs that the vessel be locked up and held in the storage facility at Gentry's Kona Marina in Honokohau Harbor, Kailua-Kona, where the vessel is currently housed. Plaintiff Barnes is directed to pay the monthly rent for the storage space while the vessel is in custody. The marshal shall serve as custodian of the vessel. The Court finds that this arrangement provides the most secure and suitable housing for the Tehani while it is under arrest.

**IV. Plaintiff Barnes's Motion**

Because the marshal shall serve as custodian of the vessel while it is under arrest, Plaintiff Barnes's Motion to be appointed substitute custodian is DENIED. Plaintiff Barnes's Motion is also denied for the reasons that follow.

There is limited precedent for Plaintiff Barnes's request for an order appointing himself, the plaintiff in the lawsuit, as substitute custodian. In one such case, a court allowed the plaintiff to serve as substitute custodian because the owner of the vessel consented to the arrangement in writing. See Mile 533 Marine Ways, Inc. v. M/V Clarissa, Civil Action No. C-10-090, 2010 WL 1371642, at *1 (S.D. Tex. Apr. 2, 2010). In

two other cases, courts allowed the plaintiffs to serve as substitute custodians where the arrested vessels were already being kept in the plaintiffs' boatyards.  See Nuta v. M/V Fountas Four, 753 F. Supp. 352, 352-53 (S.D. Fla. 1990); New River Yachting Ctr., Inc. v. M/V Little Eagle II, 401 F. Supp. 132, 134 (S.D. Fla. 1975).

Notwithstanding that some courts have appointed plaintiffs to serve as substitute custodians of the vessels against which they have filed suit, the Court finds that appointing Plaintiff Barnes to serve as substitute custodian is inappropriate.  Unlike the aforesaid cases, Defendant AOE has not consented in writing to having Plaintiff Barnes serve as substitute custodian, nor is the plaintiff in this case a boatyard where the vessel is currently kept.

Additional factors also preclude the Court from appointing Plaintiff Barnes as substitute custodian.  Although Plaintiff Barnes has extensive experience working with the Tehani, having previously served as captain of the vessel, Decl. ¶ 4, he has not provided the Court with enough information regarding where he intends to house and maintain the vessel if he is appointed as substitute custodian.  Indeed, Plaintiff Barnes's Declaration in support of his Motion provides no indication regarding where he plans to store the vessel.  At the hearing held on January 24, 2019, counsel for Plaintiff Barnes

indicated that Plaintiff Barnes would attempt to keep the vessel at the Honokohau Harbor in Kailua-Kona, where it is presently housed, but would move the vessel to some other undetermined location if doing so became necessary. In order to grant Plaintiff Barnes's Motion, the Court requires more specificity regarding where the vessel will be kept while under arrest.

In addition, Plaintiff Barnes's Declaration indicates that he has never before served in a substitute custodian capacity, and that he lacks the knowledge necessary to obtain the liability insurance policy that he is required to maintain while serving as substitute custodian. Decl. ¶¶ 3, 6.

For all of the foregoing reasons, and to more easily facilitate the sale of the vessel by the marshal should Defendant AOE fail to file a bond, the Court finds that it is appropriate for the marshals to retain custody of the vessel once it has been arrested. Accordingly, Plaintiff Barnes's Motion to appoint himself substitute custodian is DENIED.

**V. The Appraisal**

Once a vessel has been arrested, it is common practice for courts to order an independent appraisal of the vessel before it is sold. See Coastal Marine Management v. M/V Sea Hunter, 274 F. Supp. 3d 6, 10 (D. Mass. 2017) (citing Gowen, Inc. v. F/V Quality One, No. CIV. 99-371, 2000 WL 893402, at *4 (D. Me. June 14, 2000), aff'd, 244 F.3d 64 (1st Cir. 2001)).

Supplemental Admiralty Rule E(5)(a) states that where the parties do not agree on the value of a special bond, the court shall fix the value at either "(i) twice the amount of the plaintiff's claim or (ii) the value of the property on due appraisement, whichever is smaller."

Local Admiralty Rule E.10 provides guidance regarding the appraisal of an arrested vessel when a party seeks to secure the vessel's release by filing a bond. The Rule states that "[a]n order for appraisal of property so that security may be given or altered will be entered by the clerk at the request of any interested party." The Rule further provides that "[i]f the parties do not agree in writing upon an appraiser, a judicial officer will appoint the appraiser." Plaintiff Barnes has objected to the appraisal that Defendant AOE filed in support of its Motion. Accordingly, the parties will have seven days from the date of this Order to agree in writing on an appraiser and to request from the Court an order for the appraisal. If the parties do not agree on an appraiser in writing in seven days' time, the Court will appoint an appraiser pursuant to Local Admiralty Rule E.10. Plaintiff Barnes also may submit an appraisal at his expense from a reputable marine surveyor within 20 days of the date of this Order.

**VI. Hearing and Order Setting Bond Amount**

Once the appraisal by the Court-appointed appraiser has been filed, the Court will set a hearing at which it will determine the value of the bond that Defendant AOE must file with the Court in order to secure the release of the vessel. Defendant AOE will have 20 days within which to file a bond in the amount determined by the Court. If Defendant AOE files the bond, then Plaintiff Barnes's maritime lien will be transferred from the Tehani to the bond and the Tehani will be free of the maritime lien and released from the custody of the marshal. See Industria Nacional del Papel, CA v. M/V Albert F., 730 F.2d 622, 625 (11th Cir. 1984) (providing that when a vessel is released in exchange for posting security, the effect of the release is to transfer the lien from the vessel to the funds the security represents).

**VII. Notice of Arrest and Sale**

If Defendant AOE fails to file a bond in the Court-ordered amount within the 20-day period, the Court will proceed with the sale of the vessel. Prior to setting a date for the sale the Court will order Plaintiff Barnes to file a notice of the action and arrest, pursuant to Supplemental Admiralty Rule C(4), which complies with the requirements of Local Admiralty Rule C.3. In accordance with the Local Admiralty Rules, other claimants will then have a chance to intervene in a time to be

fixed by the Court. Once the intervention period has expired, the Court will set a date for the sale of the vessel.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, March 4, 2019.



_____
Alan C. Kay
Sr. United States District Judge

Barnes v. Sea Hawaii Rafting, LLC, Kris Henry, M/V Tehani, et al., Civ. No. 13-00002 ACK-RLP, Order.