IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAI`I

```
_____
                           )
CHAD BARRY BARNES,         )
                           )
          Plaintiff,       )
                           )
     v.                    )
                           )
SEA HAWAI`I RAFTING, LLC;  )
KRIS HENRY; ALOHA OCEAN    )    Civ. No. 13-00002 ACK-WRP
EXCURSIONS, LLC; JOHN      )
DOES 1-20; MARY DOES       )
1-20; DOE CORPORATIONS     )
1-20; DOE PARTNERSHIPS     )
1-20; DOE ASSOCIATES       )
1-20; DOE GOVERNMENTAL     )
AGENCIES 1-20; AND OTHER   )
ENTITIES 1-20, in personam;)
AND M/V TEHANI, HA 1629-CP,)
AND HER ENGINES, EQUIPMENT,)
TACKLE, FARES, STORES,     )
PERMITS, FURNISHINGS, CARGO)
AND FREIGHT; DOE VESSELS 1-20,)
in rem.                    )
                           )
          Defendants.      )
_____)
```

ORDER IMPOSING ENHANCED SANCTIONS PURSUANT TO THIS COURT'S
INHERENT POWER ON DEFENDANT ALOHA OCEAN EXCURSIONS, LLC
AND DEFENDANT KRISTIN KIMO HENRY

In a prior order issued on August 29, 2019, ECF No. 608 (the "First Sanctions Order"), the Court imposed sanctions jointly and severally on Defendant Aloha Ocean Excursions, LLC ("Defendant AOE") and Defendant Kristin Kimo Henry ("Defendant Henry") for their sanctionable conduct that the Court found was "tantamount to bad faith." Specifically, Defendant AOE and Defendant Henry were sanctioned based primarily on Defendant

- 1 -

Henry's misrepresentations that led to the transfer in ownership of a commercial use permit for the vessel M/V Tehani from Defendant Sea Hawai`i Rafting, LLC ("Defendant SHR") to Defendant AOE.  In the First Sanctions Order, the Court made clear that the sanctions would be "subject to significant enhancement" should the permit not be reissued to Defendant SHR.  First Sanctions Order at 17.  Contrary to the Court's clear direction, Defendant AOE and Defendant Henry prevailed on DOBOR to confirm and maintain the transfer of the permit to Defendant AOE.  Thus, nearly six months later, the permit remains with Defendant AOE.

For that reason and those discussed below, the Court hereby imposes enhanced monetary sanctions on Defendant AOE and Defendant Henry, payable to Plaintiff Chad Barry Barnes ("Plaintiff Barnes").  The enhanced sanctions will be calculated and assessed to compensate Plaintiff Barnes for the measurable loss resulting from Defendant AOE's and Defendant Henry's sanctionable conduct.  Specifically, the Court will calculate the sanctions in two parts:  (1) the value of the permit, which represents the loss suffered by Barnes as a result of the permit being wrongfully transferred from Defendant SHR to Defendant AOE and then never reissued to Defendant SHR, and (2) attorney's fees and costs incurred by Plaintiff Barnes in responding to Defendant AOE's and Defendant Henry's sanctionable conduct.

## BACKGROUND

This case has a long and complicated history, which the Court will not recount here.  Instead, the Court discusses those facts and events specifically relevant to the issues implicated in this Order:  (1) whether enhanced sanctions should be imposed against Defendant AOE and Defendant Henry for their ongoing failure to comply with this Court's directives and (2) if so, the appropriate way to measure such enhanced sanctions.

**A.    Relevant Prior Orders**

It is helpful to begin in early 2019 with two hearings held in June and July addressing Plaintiff Barnes's Motion to Stay Dispersal of Funds (the "Motion to Stay"), ECF No. 565.  In the Motion to Stay, Plaintiff Barnes had asked the Court to stay disbursement of the $35,000 in sale proceeds (from the sale of the vessel Tehani) then being held in the registry of the Court. Following the two hearings, the Court issued a minute order (the "July 17 Order"), ECF No. 585, (1) denying Plaintiff Barnes's motion to dismiss for lack of subject-matter jurisdiction and (2) denying Plaintiff Barnes's motion to stay the disbursement of the proceeds of the sale of the vessel.  In the same order, the Court disbursed $17,000 plus interest to Plaintiff Barnes and directed that Defendant AOE's share be disbursed only after the vessel

Tehani's commercial use permit was transferred back to Defendant SHR.[1/]

Plaintiff Barnes quickly appealed the July 17 Order, challenging "the Court's finding that the Court does have jurisdiction over a contract for the sale of a vessel." ECF No. 588. A few days later and still within the reconsideration period, Defendant AOE moved for reconsideration of the same July 17 Order, arguing that the Order functionally deprived Defendant AOE of property without due process of law. ECF No. 592.

While Defendant AOE's motion for reconsideration was pending, the Court advised the parties that it was considering sanctioning Defendant AOE and Defendant Henry for "wrongfully transferring the commercial use permit for the vessel M/V Tehani by Defendant Henry['s] misrepresentation to the harbormaster that he was simply requesting a change in name from Sea Hawaii Rafting, LLC to Aloha Ocean Excursions, LLC." ECF No. 601. The parties submitted briefing and the Court held a hearing on August 22, 2019, on whether to impose sanctions. See ECF No. 606. At the same hearing, the Court heard arguments on Defendant AOE's pending motion for reconsideration of the July 17 Order. See id. One week later, the Court issued two orders—

---

[1/] Defendant Henry had previously caused the permit to be transferred from Defendant SHR to Defendant AOE by misrepresenting that the change in owner was merely a name change when indeed it represented a different legal entity entirely. See July 17 Order at 3-4.

one imposing sanctions against Defendant AOE and Defendant Henry (the First Sanctions Order), and one denying Defendant AOE's motion for reconsideration of the July 17 Order, ECF No. 609 (the "Reconsideration Order").[2]

**B.    The First Sanctions Order**

In the First Sanctions Order, the Court held that Defendant AOE and Defendant Henry had acted deliberately, recklessly, wrongfully, and with an improper purpose, and that their conduct was tantamount to bad faith and therefore sanctionable within the Court's inherent power.  First Sanctions Order at 7-8, 13.  Sanctions were imposed jointly and severally against Defendant AOE and Defendant Henry in the amount of $25,000, which was to be payable to Plaintiff Barnes.  Id. at 16.  The Court directed the Clerk of Court to disburse $18,000 plus interest—which was being held in the registry of the Court— to Plaintiff Barnes as partial payment of the sanctions.  Id. The Court then instructed Defendant AOE and Defendant Henry to pay the remainder of the sanctions to Plaintiff Barnes no later than September 30, 2019.  Id.

---

[2]  The Court held that it had jurisdiction to decide the motion for reconsideration despite Plaintiff Barnes's earlier-filed appeal of the original July 17 Order.  Jurisdiction existed under Federal Rule of Appellate Procedure 4(a)(4)(B)(i), pursuant to which Defendant AOE's timely filing of a motion for reconsideration meant that Plaintiff Barnes's notice of appeal would only become effective upon entry of an order disposing of Defendant AOE's motion.

The First Sanctions Order also specifically directed Defendant AOE and Defendant Henry to "take appropriate steps to effectuate the successful transfer of the commercial use permit back to Defendant SHR" and to "pay any fine or transfer fee assessed in the course of transferring the permit back to Defendant SHR."   Id.   Finally—and critically here—the Court advised the parties that "the $25,000 sanction shall be subject to significant enhancement should the permit not be reissued to Defendant SHR."   Id. at 17.

## C.   Defendant AOE's and Defendant Henry's Failure to Comply With the First Sanctions Order

On September 10, 2019, Defendant AOE sua sponte notified the Court that it had taken steps to comply with the First Sanctions Order.   ECF No. 610 (the "Notice of Compliance").   Defendant AOE stated that it had "been in contact with DOBOR [Hawai`i's Division of Boating and Ocean Recreation] and that DOBOR has decided to let AOE keep the permit and pay the appropriate transfer fee."   Notice of Compliance at 2-3. Notwithstanding its characterization of the filing as a "Notice of Compliance," the filing and an attached declaration of Defendant Henry confirmed that the commercial use permit in fact was not reissued to Defendant SHR.   ECF No. 610-1.   Instead, contrary to the Court's explicit instructions in the First Sanctions Order, the permit was being maintained by DOBOR in the

name of Defendant AOE.  See id.  Plaintiff Barnes filed an
unsolicited response to the Notice of Compliance asserting that
the First Sanctions Order had been violated and that Defendant
AOE and Defendant Henry should be subject to enhanced sanctions.
ECF Nos. 613 (original) & 615 (errata).

**D.    The Order to Show Cause & the Pending Cross-Appeals**

On September 27, 2019, in response to the Notice of
Compliance, the Court issued an Order to Show Cause Why Enhanced
Sanctions Should Not Be Imposed Pursuant to this Court's
Inherent Power on Defendant Aloha Ocean Excursions, LLC and
Defendant Kristin Kimo Henry (the "Show Cause Order"), ECF No.
619.  The Show Cause Order directed Defendant AOE and Defendant
Henry to show cause why they should not be subject to enhanced
sanctions for their apparent violation of the First Sanctions
Order and continued failure to take meaningful steps to
effectuate the permit transfer.

On the same day the Show Cause Order was filed,
Defendant AOE filed a notice of appeal, ECF No. 618, of the
Reconsideration Order denying Defendant AOE's motion for
reconsideration of the July 17 Order disbursing the sale
proceeds conditional on the transfer of the permit back to
Defendant SHR.[3/]  In light of the Cross-Appeals, the Court

_____

[3/]  As a practical matter, then, AOE's appeal challenges the same order
(Continued . . . )

- 7 -

directed the parties to address in their briefing on the Show Cause Order whether the Court still has jurisdiction to consider imposing enhanced sanctions or whether the Cross-Appeals divest the Court of such jurisdiction.  See ECF No. 626.

Defendant AOE and Defendant Henry filed their brief on October 17 (1) opposing the imposition of enhanced sanctions, (2) arguing that the Court lacks jurisdiction to impose enhanced sanctions in light of the Cross-Appeals, and (3) seeking a stay pending disposition of the Cross-Appeals.  ECF No. 630 ("AOE Show Cause Br.").  Plaintiff Barnes filed his response brief on November 11 arguing—among many other irrelevant things—that the Court has jurisdiction to and should impose enhanced sanctions upon Defendant AOE and Defendant Henry.  ECF No. 637 ("Barnes Show Cause Br.").  Defendant AOE and Defendant Henry filed a reply on November 15.  ECF No. 640.

The Court held a hearing on December 20, 2019, at which it heard arguments and then advised the parties that the case would be continued for an evidentiary hearing to allow the parties to present evidence relevant to calculating enhanced sanctions.  See ECF No. 642.  That hearing was held on February

---

(the July 17 Order) previously appealed by Plaintiff Barnes.  The only difference is that Plaintiff Barnes directly appealed the original order (the July 17 Order) and Defendant AOE appealed the order denying reconsideration of that original order (the Reconsideration Order).  Accordingly, the appeals are being heard in the Ninth Circuit as cross-appeals under case numbers 19-16910 (AOE's appeal) and 19-16484 (Barnes's appeal).  Herein, the Court will reference these proceedings as the "Cross-Appeals."

11, 2020.  The Court heard arguments, but neither party presented any witnesses.

## DISCUSSION

The Court will begin by addressing the threshold matter of whether, given the pending Cross-Appeals, it has jurisdiction to consider imposing enhanced sanctions.  As discussed in detail below, the Court concludes that it does. The Court next addresses the substantive issue of whether enhanced sanctions are appropriate in light of Defendant AOE's and Defendant Henry's continued failure to comply with this Court's many directives to ensure the transfer of the commercial use permit back to Defendant SHR.  The Court holds that enhanced sanctions are indeed warranted.  Because such sanctions are to compensate Plaintiff Barnes for his losses resulting from the sanctionable conduct, the Court concludes by describing the proper calculation of the monetary value of the enhanced sanctions, which includes appointing an independent appraisal to valuate the vessel and permit.

## I.   Jurisdiction

As a threshold matter, the Court concludes that the pending Cross-Appeals of the July 17 Order and the associated Reconsideration Order do not divest it of jurisdiction to impose enhanced sanctions for Defendant AOE's and Defendant Henry's failure to comply with those and later orders.  Because

Defendant AOE challenges the Court's authority in this regard and requests a stay pending appeal, see AOE Show Cause Br. 7-10, the Court begins with a discussion of its jurisdiction and why a stay is not warranted in these circumstances.

> ### a. The Court has Jurisdiction to Supervise a Continuing Course of Conduct

"As a general rule, '[t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.'" Estate of Conners by Meredith v. O'Connor, 6 F.3d 656, 658 (9th Cir. 1993) (quoting Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982) (per curium)), superseded by rule on other grounds as stated in Baylor v. Mitchell Rubenstein & Assocs., P.C., 857 F.3d 939, 946 (D.C. Cir. 2017). This is a "judge-made" rather than a jurisdictional rule, and "its purpose is to promote judicial economy and avoid the confusion that would ensue from having the same issues before two courts simultaneously." Nat'l Resources Def. Council, Inc. v. S.W. Marine, Inc., 242 F.3d 1163, 1166 (9th Cir. 2001). By extension of this rule, a district court may not take any actions that would alter or adjudicate any substantial rights of the parties directly involved in the appeal. See McClatchy

Newpapers v. Central Valley Typographical Union no. 46, Int'l Typographical Union, 686 F.2d 731, 735 (9th Cir. 1982).

At the same time, the Ninth Circuit has held that, "in the kinds of cases where the court supervises a continuing course of conduct and where as new facts develop additional supervisory action by the court is required, an appeal from the supervisory order does not divest the district court of jurisdiction to continue its supervision, even though in the course of that supervision the court acts upon or modifies the order from which the appeal is taken." Hoffman for & on Behalf of N.L.R.B. v. Beer Drivers & Salesmen's Local Union No. 888, Int'l Broth. of Teamsters, Chauffeurs, Wharehousemen and Helpers of Am., 536 F.2d 1268, 1276 (9th Cir. 1976). District and appellate decisions in the Ninth Circuit have followed Hoffman to hold that courts have jurisdiction to act to "protect plaintiffs' rights in direct response to defendants' repeated and willful non-compliance with its earlier orders." Armstrong v. Brown, 732 F.3d 955, 959 n.6 (9th Cir. 2013); see also United States v. Douglas, 46 F.3d 1146 (9th Cir. 1995) (unpublished table opinion) (citing Hoffman to hold that, to the extent that the district court's order modified a prior order pending on appeal, the district court had jurisdiction to continue supervision and modification as necessary); State v. Trump, 263 F. Supp. 3d 1049, 1056 (D. Haw. 2017) (citing Hoffman to hold

that the court could issue further orders regarding an injunction, notwithstanding appeal, "to preserve the status quo or ensure compliance with its earlier orders").   But see McClatchy Newpapers, 686 F.2d at 735 (holding that the "limited exception articulated in Hoffman" did not apply because the ruling would "affect substantial rights of the parties after appeal").

A district court also has the authority to enforce its past orders even while an appeal is pending.  E.g., Nat'l Grange of the Order of Patrons of Husbandry v. Cal. State Grange, 182 F. Supp. 3d 1065, 1073-74 (E.D. Cal. 2016) (holding that defendant was still obliged to comply with court's prior injunction while appeal was pending); see also State v. Trump, 263 F. Supp. 3d at 1056 (issuing further orders to enforce injunction even though appeal was pending).  This circuit has emphasized in particular the power of a district court to retain jurisdiction in circumstances involving "a series of enforcement orders" and a "continuous course of conduct marked by the development of new facts."  Armstrong, 732 F.3d at 959 n.6.

While this case does not involve an injunction or an appeal of an order imposing injunctive relief, the Court concludes that it involves the type of facts contemplated by Hoffman and subsequent Ninth Circuit case law.  In Hoffman, the Ninth Circuit stated, "We think it apparent that an appeal from

- 12 -

a contempt order would not affect the court's jurisdiction to issue further contempt orders based on subsequent violations of the basic injunctive order." Hoffman, 536 F.2d at 1276.  The court then broadened the authority of the district court to continue enforcing orders in "cases where the court supervises a continuing course of conduct and where as new facts develop additional supervisory action by the court is required." Id. In such cases, "an appeal from the supervisory order does not divest the district court of jurisdiction to continue its supervision, even though in the course of that supervision the court acts upon or modifies the order from which the appeal is taken." Id.

Of course, the Cross-Appeals at issue here do not appeal the First Sanctions Order (in Hoffman's terms, the "supervisory order").  Instead, Defendant AOE appeals the earlier Reconsideration Order that in part directed it to take steps to initiate the permit transfer back to Defendant SHR, and the violation of which ultimately led to the assessment of the first set of sanctions in the First Sanctions Order.  Still, the Court has jurisdiction under the Hoffman rule to engage in "continuous supervision over a continuous pattern of . . . activity," which includes sanctioning Defendant AOE's and

Defendant Henry's subsequent noncompliance.[4/] Id. at 1277. Like the district court in Hoffman, the Court's "whole effort" here has been designed to bring Defendant AOE and Defendant Henry into compliance with the Court's prior directives to ensure the transfer of the permit back to Defendant SHR and, if that fails, then to compensate Plaintiff Barnes for the resulting monetary loss. Id. ("The court's whole effort was designed to bring the appellants into compliance with the injunction. Everything that was done was part of continuous supervision over a continuous pattern of union activity.").

For these reasons, the Court holds that it has jurisdiction to consider imposing enhanced sanctions and that the Cross-Appeals do not divest the Court of such jurisdiction.[5/]

### b. A Stay Pending Appeal is Not Warranted in These Circumstances

Having established that the Court has jurisdiction to proceed, the Court now turns to Defendant AOE's request that "the sanctions issue and the directives set forth in [the Reconsideration Order] be stayed pending AOE's appeal of [the Reconsideration Order]." AOE Show Cause Br. 11. As discussed

---

[4/] This is especially so here given that the possible enhanced sanctions would stem from subsequent violations of this Court's directives.

[5/] The Court notes that, in the order appealed from on due process grounds (the Reconsideration Order), the Court withheld Defendant AOE's $18,000 share until the permit was to be restored to Defendant SHR. Even if that ruling is reversed on appeal, the Court still has the independent right to enforce and sanction Defendant AOE's and Defendant Henry's noncompliance with the Court's subsequent directives. In that sense, the Court is not risking altering substantial rights of the parties being addressed on appeal.

more fully below, the Court holds that a stay is not warranted in these circumstances.

The standard for evaluating a request for a stay pending appeal is similar to that for evaluating a request for preliminary injunction.  See Lopez v. Heckler, 713 F.2d 1432, 143 (9th Cir. 1983).  "A stay is not a matter of right . . . . It is instead an exercise of judicial discretion . . . [that] is dependent upon the circumstances of the particular case." Lair v. Bullock, 697 F.3d 1200, 1203 (9th Cir. 2012) (quoting Nken v. Holder, 556 U.S. 418, 433, 129 S. Ct. 1749 (2009)) (internal quotation marks omitted) (alterations in Lair).  Judicial discretion in exercising a stay is guided by considering four factors:  "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  Id. (quoting Nken, 556 U.S. at 434, 129 S. Ct. 1749).  The first two factors are the "most critical," and the final two steps are reached "[o]nce an applicant satisfied the first two factors." Nken, 556 U.S. at 434-35, 129 S. Ct. 1749.

### i. Likelihood of Success on the Merits

The Court must first consider the likelihood of success on appeal.  On appeal, Defendant AOE argues primarily

that the Court erred in not eliciting testimony about the
circumstances surrounding the initial transfer of the permit
from Defendant SHR to Defendant AOE and that, notwithstanding,
any final determination about the reissuance of the permit would
properly be left to DOBOR.  With such testimony, Defendant AOE
argues, "there is at least a reasonable chance that the Ninth
Circuit could find in AOE's favor on the merits of the appeal."
AOE Show Cause Br. 9.

Defendant AOE's choice of words here is telling.
There is often at least a "reasonable chance" that a party may
succeed on appeal.  But that is not the appropriate standard.
Here, the Court cannot say that Defendant AOE has made a "strong
showing" that it is "likely to succeed on the merits."  The
permit was originally transferred to Defendant AOE based on
Defendant Henry's misrepresentation to DOBOR that the transfer
was merely a name change.  So the Court's directives in the July
17 and Reconsideration Orders were its response to that
misrepresentation.  And Defendant AOE's and Defendant Henry's
effort to preclude Barnes from enforcing his judgment and
maritime lien by depriving him of access to the permit—one of
two major assets of Defendant SHR (the other being the vessel
Tehani)—was an obvious and calculated tactic.  The Court gave
the parties ample opportunity to present their positions
surrounding the circumstances of the transfer—both in the form

- 16 -

of soliciting briefs and allowing them to present oral arguments and witness testimony, both at the initial hearing and then at the hearing on the later motion for reconsideration.  Thus, Defendant AOE's position that additional testimony and DOBOR's ultimate authority to decide whether the permit could remain with Defendant AOE does not present the "strong showing" needed to tilt this factor in favor of a stay.

For the reasons stated, this factor weighs against Defendant AOE and Defendant Henry.

### ii. Possibility of Irreparable Injury to Defendant AOE and Defendant Henry

The Court next considers whether Defendant AOE and Defendant Henry will be irreparably injured absent a stay.  The Defendants argue that they will be irreparably harmed because "[o]nce the permit is transferred to SHR, AOE will never get it back."[6/]  AOE Show Cause Br. 9-10.  Presumably, the idea is this: If the Court proceeds with the Show Cause Order and decides to impose enhanced sanctions or otherwise compels Defendant AOE to take further steps to ensure the permit is transferred back to Defendant SHR, then Defendant AOE will be forced to ask DOBOR to

---

[6/] Defendant AOE also cited ongoing settlement discussions as another reason to keep the permit in its name.  AOE Show Cause Br. 10 ("[T]he permit being in AOE's name may actually be helpful for the logistics of a settlement, and thus the status quo should remain for now.").  However, since Defendant AOE filed its brief in response to the Show Cause Order, settlement discussions reached an impasse (even with the permit remaining in Defendant AOE's name).  See ECF No. 635.  That being the case, this argument does not have any bearing on whether a stay is appropriate.

reissue the permit to Defendant SHR, perhaps depriving Defendant AOE of that asset permanently.

This concern appears to have been obviated by the parties' apparent mutual understanding that encouraging DOBOR to reissue the permit back to Defendant SHR now would be unproductive and risky.  See Barnes Sanctions Br. at 9.  As discussed infra, the Court in this Order will not order reissuance of the permit.  Regardless, it is entirely reasonable for the Court to act to ensure compliance with its prior orders or to compensate the injured party for the other's noncompliance, at the least by proceeding with considering whether to impose monetary sanctions for repeated violations of such orders.  Other than the "harm" that Defendant AOE and Defendant Henry would rightfully sustain as a result of their own past misfeasance if sanctions are imposed, the Court does not agree that declining to issue a stay would irreparably harm the Defendants.

Accordingly, this factor does not weigh in favor of granting a stay.[7]

### iii. Possibility of Substantial Injury to Other Parties

_____

[7]  The Court also notes that in response to the Show Cause Order, Defendant AOE stated that it was "ready and willing" to have DOBOR transfer the permit back to Defendant SHR, although it qualified that statement based on the issues "regarding the effect of appeal, settlement discussions, and AOE's request for a stay pending appeal."  AOE Show Cause Br. 5.  With those accompanying conditions, Defendant AOE's "proffer" is rendered meaningless. Not to mention, Defendant AOE and Defendant Henry still have taken no steps to effectuate the reissuance of the permit back to Defendant SHR.

The Court next considers whether issuance of the stay will substantially injure other parties interested in the proceeding—most obviously, Plaintiff Barnes.  Defendant AOE argues that even if the permit is transferred back to Defendant SHR, it would be of no use to Plaintiff Barnes unless and until he becomes the owner of SHR and SHR is no longer in bankruptcy. AOE Show Cause Br. 10.  The Court is perplexed by this argument. It presupposes that the in personam judgment against Defendant SHR would be unenforceable, which is not exactly true.  The bankruptcy court had lifted the stay against Defendant SHR—at least with respect to property outside of the bankruptcy estate, which would presumably have included the "abandoned" permit. See In re Sea Hawai'i Rafting, Inc., No. 14-01520, Dkt #300 at p. 12 of 19 (D. Haw. Bankr. Ct.) (granting "relief from the automatic stay to permit Mr. Barnes to proceed against SHR (but not against SHR's bankruptcy estate) on all claims").  Thus, had the permit remained with SHR, Barnes could have sought enforcement of his judgment through SHR's only asset besides the Tehani:  the permit.[8]

Regardless, Plaintiff Barnes will continue to suffer other injury or harm if a stay is put in place.  In his response

---

[8] As discussed infra, the value of the vessel Tehani is significantly diminished without the permit.  Moreover, obtaining a new permit is highly unlikely given the long line of applicants, and the restriction on the number of permits allowed is already far exceeded.

brief, Plaintiff Barnes describes the monetary loss caused by
the improper transfer of the permit from Defendant SHR to
Defendant AOE and the ongoing failure to reissue the permit to
Defendant SHR:  "The transfer has harmed Barnes and continues to
harm him.  It has delayed Barnes' ability to collect on his
Judgment for maintenance and cure.  It has cost Barnes in
further arrest charges."  Barnes Show Cause Br. 2.

        Those ongoing harms and delays sustained by Plaintiff
Barnes because of Defendant AOE's and Defendant Henry's shady
transfer of the permit and subsequent refusal to seek DOBOR's
approval to reissue it to Defendant SHR despite this Court's
directives to do so weigh this factor in Plaintiff Barnes's
favor.  Accordingly, this factor weighs against imposing a stay.

### iv. Public Interest

        Finally, the public interest factor is neutral.  While
Defendant AOE is correct that due process arguments present
issues of public concern, equally important is the public's
general faith in a litigant's ability to collect on a valid
judgment—especially one involving an injured seaman's right to
maintenance and cure—without a defendant dodging enforcement
through perverse tactics.  The Court's authority to supervise
and monitor parties' compliance with Court orders in litigation
is important to the public interest as well.  Accordingly, this

factor is neutral and does not weigh for or against imposing a stay.

All in all, the factors do not weigh in favor of granting a stay in these circumstances.  Accordingly, Defendant AOE's and Defendant Henry's request for a stay pending appeal is hereby DENIED.  The Court presses on to decide whether enhanced sanctions should be imposed pursuant to this Court's inherent power.

## II.  Enhanced Sanctions

On August 29, 2019, the Court issued the First Sanctions Order assessing sanctions jointly and severally against Defendant AOE and Defendant Henry in the total amount of $25,000, payable to Plaintiff Barnes.  The Clerk of Court disbursed $18,000 being held in the registry of the Court as partial payment of the sanction.  One month later, Defendant AOE and Defendant Henry paid the remaining amount to Plaintiff Barnes.  In the First Sanctions Order, the Court also directed "Defendant AOE and Defendant Henry to take appropriate steps to effectuate the successful transfer of the commercial use permit back to Defendant SHR" and required them to "pay any fine or transfer fee assessed in the course of transferring the permit back to Defendant SHR."  First Sanctions Order 16-17.  The Court cautioned the Defendants that "the $25,000 sanction shall be

subject to significant enhancement should the permit not be reissued to Defendant SHR." Id. at 17.

Despite these warnings and the explicit directives of the Court, the permit remains with Defendant AOE.  Not only that, but Defendant AOE and Defendant Henry have failed to take any valid steps to cause the reissuance of the permit.  Instead, they have done just the opposite.  They deem themselves in compliance with the First Sanctions Order simply because they requested that DOBOR allow Defendant AOE to pay a fee and retain the permit in its name.  See Notice of Compliance 2-4; see also Decl. of Def. Henry, ECF No. 610-1, ¶¶ 4-6.

It is hard to overstate the Court's frustration at Defendant AOE's and Defendant Henry's tortured interpretation of this Court's prior directives, and their continued avoidance of the Court's instructions.  The Court could not have been clearer when it issued the First Sanctions Order:  "the $25,000 sanction shall be subject to significant enhancement should the permit not be reissued to Defendant SHR."  First Sanctions Order 17. With that groundwork laid, the Court turns to explain its decision that enhanced sanctions are indeed warranted.  Like with the original sanctions assessed, the Court now enhances those sanctions pursuant to its "inherent power."

### a. Applicable Law

"Three primary sources of authority enable courts to sanction parties or their lawyers for improper conduct:  (1) Federal Rule of Civil Procedure 11, which applies to signed writings filed with the court, (2) 28 U.S.C. § 1927, which is aimed at penalizing conduct that unreasonably and vexatiously multiplies the proceedings, and (3) the court's inherent power."[9/]  Fink, 239 F.3d at 991.  Like in the First Sanctions Order, the Court is again imposing sanctions against Defendant AOE and Defendant Henry based upon its inherent power.

In the Ninth Circuit, Courts have inherent power to levy sanctions for "willful disobedience of a court order . . . or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. . . ."  Id. (citing Roadway Express, Inc. v. Piper, 447 U.S. 752, 766 (1980)).  Courts' inherent power to sanction "extends to a full range of litigation abuses."  Id. (citing Chambers v. NASCO, Inc., 501 U.S. 32, 46–47 (1991)).  Courts have the "inherent authority to impose sanctions for bad faith, which includes a broad range of improper conduct."  Fink, 239 F.3d at 992.

---

[9/]  The Court notes that an alternative route to ensuring compliance with court orders is through its contempt authority.  See In re Lehtinen, 564 F.3d 1052, 1058-59 (9th Cir. 2009) (comparing civil contempt authority and inherent power), abrogated on other grounds as recognized in In re Gugliuzza, 852 F.3d 884, 896-97 (9th Cir. 2017); Jones v. Clinton, 36 F. Supp. 2d 1118, 1125-26 (E.D. Ark. 1999) (same).  Given the circumstances here and the lack of an injunctive order, the Court does not explore the complicated procedural hurdles of civil or criminal contempt.

It is well settled that "sanctions are available if the court specifically finds bad faith or conduct tantamount to bad faith." Id. at 994.  Sanctions are also available "for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." Id.; see also Maui Police Dept., 276 F.3d at 1108 ("[R]egardless of whether defense counsel's behavior constituted bad faith per se, we readily find that counsel's reckless and knowing conduct . . . was tantamount to bad faith and therefore sanctionable under the court's inherent power.").  The Ninth Circuit has specifically held that sanctions are appropriate when a party acts "recklessly if there is something more—such as an improper purpose." Fink, 239 F.3d at 993.

The Court is mindful that its inherent power to sanction must be exercised with "restraint and discretion." Maui Police Dept., 267 F.3d at 1108 (quoting Chambers, 501 U.S. at 44).

### b. Analysis

For many of the reasons stated in the First Sanctions Order and alluded to throughout this Order, the Court finds it appropriate to enhance the monetary sanctions already imposed on Defendant AOE and Defendant Henry.  Such enhancement is the result not only of the Defendants' past misrepresentations and

failures to comply with the Court's directives,[10] but also of their blatant disregard for the Court's unambiguous statement in the First Sanctions Order to either take steps to ensure the permit is reissued to Defendant SHR or else face enhanced sanctions.

As discussed in the First Sanctions Order, Defendant AOE and Defendant Henry "deliberately, recklessly, and wrongfully caused the permit to be transferred to Defendant AOE," and their improper conduct has "potentially jeopardized the validity of the permit and put the permit at a risk of cancellation." First Sanctions Order at 7-8. Enhanced sanctions are now appropriate because Defendant AOE's and Defendant Henry's subsequent conduct has further jeopardized the validity of the permit and deprived Plaintiff Barnes—who holds a maritime lien and judgment against Defendant SHR—of a valuable

---

[10] These include the reasons discussed on pages 3-7 of the First Sanctions Order. Specifically, after the Court noted inconsistencies in Defendant Henry's representations to this Court and to the bankruptcy court handling Defendant SHR's Chapter 13 bankruptcy, Defendant Henry formed Defendant AOE. The Tehani vessel was eventually sold to Defendant AOE, but the sale explicitly did not include the commercial use permit, which at the time remained in the name of Defendant SHR. Notwithstanding, Defendant Henry wrote a letter to the Harbor Master of Honokohau Harbor requesting "a change in name from Sea Hawaii Rafting, LLC to Aloha Ocean Excursions, LLC" and representing that there had been "no changes in ownership or officers or any other changes." ECF No. 527-1. The permit was then reissued in Defendant AOE's name. After Judge Kobayashi issued an order voiding the bankruptcy court's sale of the Tehani to Defendant AOE, see Barnes v. Field, Civ. No. 16-00230 LEK-KSC (D. Haw. 2016), ECF No. 65, this Court held that title to the Tehani reverted back to Defendant SHR. ECF No. 585. So, while Defendant SHR now owns the Tehani and the Tehani is the vessel named on the permit, the permit remains in Defendant AOE's name as a result of Defendant Henry's misrepresentations of ownership to DOBOR.

asset.  See First Sanctions Order at 8 (describing how Defendant AOE's and Defendant Henry's deliberate and reckless conduct has "substantially limited Barnes's potential recovery of his maritime lien and judgment against Defendant SHR and the vessel Tehani"); see also id. at 12-13.  Defendant AOE's and Defendant Henry's actions have facilitated Defendant Henry's efforts to avoid paying maintenance and cure.  Even though Plaintiff Barnes has a substantial judgment against Defendant SHR and a corresponding maritime lien on the vessel Tehani, he cannot enforce the judgment because the permit was Defendant SHR's only substantial asset (besides the vessel).  As a result, Plaintiff Barnes is effectively limited to recovering only on his maritime lien for the value of the vessel, which is significantly diminished without the permit.  The permit is virtually untouchable so long as it remains in Defendant AOE's name.  See First Sanctions Order at 11.  Not to mention, the longer the permit remains with Defendant AOE, the more likely it becomes that any attempt to reissue it to Defendant SHR could result in the permit being voided altogether.  See First Sanctions order at 12.  In fact, the Court understands that the permit is—or at least it was at when previously renewed—authorized specifically for the operation of the vessel Tehani.  With the Tehani currently under arrest, the Court wonders how Defendant AOE is making use of the permit; presumably it is using the permit to

- 26 -

commercially operate some other vessel that is not the Tehani.
Doing so puts the permit at even greater risk of cancellation.[11]

The parties were warned of these concerns in the First
Sanctions Order. The Court explained that "by exposing the
permit to a risk of cancellation, Defendant AOE and Defendant
Henry have potentially limited Plaintiff Barnes's recovery to
the value of the vessel alone." First Sanctions Order at 12.
And the parties seem to agree that, without the permit, the
value of the vessel alone is significantly diminished. See
First Sanctions Order at 11 (describing how "without the permit
the Tehani cannot operate and be productive"). Despite these
warnings, Defendant AOE and Defendant Henry once again
purportedly "misconstrued" the Court's words to skirt their
duties and continue benefiting from the permit remaining with
Defendant AOE, where it is out of Plaintiff Barnes's reach.[12]

---

[11] At the February 11 hearing, counsel for Defendant AOE confirmed that
the permit has been renewed for the 2020 year, but he did not clarify whether
the permit remains attached to the Tehani or whether it was changed to a
different vessel.

[12] According to Defendant AOE, its "reading of the language from these
prior Orders was that the Court was directing AOE to contact DOBOR and let
DOBOR decide if the permit should be re-issued to SHR or stay with AOE upon
payment of the appropriate fee." AOE Show Cause Br. 4. The Court rejects
this interpretation. Indeed, the Court advised the parties that the ultimate
decision as to whether the permit could be reissued was necessarily in the
hands of DOBOR. See First Sanctions Order at 14; Reconsideration Order at 4.
But the Court made clear that "justice requires that the permit should be
reissued in the name of Defendant SHR" and that Defendant AOE and Defendant
Henry were to "take appropriate steps to effectuate the successful transfer"
of the permit, including by "pay[ing] any fine or transfer fee assessed in
the course of transferring the permit back to Defendant SHR." First
Sanctions Order at 16-17. This language makes clear that Defendant AOE and
(Continued . . . )

For these reasons, and for all the reasons discussed in the First Sanctions Order, the Court finds that Defendant AOE and Defendant Henry have again acted deliberately, recklessly, and wrongfully by continuing to put the validity of the permit at risk and by refusing to take any meaningful steps to ensure the permit reissues to Defendant SHR.  The Court therefore finds it appropriate to enhance the monetary sanctions already imposed against Defendant AOE and Defendant Henry in the First Sanctions Order.  The Court imposes enhanced sanctions against Defendant AOE and Defendant Henry because these Defendants have acted deliberately, recklessly, wrongfully, and with an improper purpose, and the Court finds that this conduct "was tantamount to bad faith and therefore sanctionable" pursuant to the Court's inherent power.  B.K.B. v. Maui Police Dept., 276 F.3d 1091, 1108 (9th Cir. 2002) (quoting Fink v. Gomez, 239 F.3d 989, 994 (9th Cir. 2001).

---

Defendant Henry were to do whatever necessary to try to have the permit reissued, while also recognizing the DOBOR would have the final say.  Yet the Notice of Compliance shows that all Defendant AOE and Defendant Henry did was contact DOBOR to coordinate paying a transfer fee that would ultimately allow the permit to remain with Defendant AOE.

   To be clear, this is not what the Court directed the parties to do and Defendant AOE and Defendant Henry have offered no evidence that their communications with DOBOR reflect a meaningful attempt to ensure the permit be reissued to Defendant SHR.  This flies in the face of the Court's warning in the First Sanctions Order.  And Defendant AOE's and Defendant Henry's strained interpretation of the Court's directives and their blatant mischaracterization of the Court's language is yet another example of their deliberate and wrongful sanctionable conduct.

### c. Calculating Amount of Enhanced Sanctions

The Court now confronts the task of quantifying the enhanced sanctions.  The purpose of the sanctions is to compensate Plaintiff Barnes for losses incurred as a result of wrongs committed by Defendant AOE and Defendant Henry.  See HM Elecs., Inc. v. R.F. Techs., Inc., 171 F. Supp. 3d 1020, 1026-27 (S.D. Cal. 2016) (discussing compensatory versus punitive sanctions); see also B.K.B., 276 F.3d at 1108-09 (affirming district court's reliance on its inherent power to award compensatory damages to plaintiff for "additional attorneys' fees and emotional and reputational damage").  In that regard, the Court must ensure that the harm suffered by Plaintiff Barnes is linked to the deliberate, reckless, and wrongful conduct of Defendant AOE and Defendant Henry.  See B.K.B., 276 F.3d at 1109 (upholding sanctions because "the amount the court imposed reflected its assessment of the actual harm incurred by Plaintiff").

With this framework in mind, the Court scheduled an evidentiary hearing and instructed the parties to submit evidence relevant to calculating the enhanced sanctions, assuming that the Court ultimately decided to impose such sanctions.  See ECF No. 643 (advising the parties to submit "affidavits, declarations, and other evidence relevant to the calculation of enhanced sanctions" and directing them to list

the "names of the witnesses each party intends to call").
Unfortunately, neither party provided any meaningful proposals
or evidence.  Plaintiff Barnes submitted a single letter
containing speculative statements about the financial and
personal impact of Defendant AOE's and Defendant Henry's
conduct.[13/]  See Decl. J. Friedheim, ECF No. 648-1, & Ex. A, ECF
No. 648-2 (the "Barnes Letter").  And Defendant AOE's brief
merely attacks the evidence put forth by Plaintiff Barnes as
insufficient and lacking foundation, without providing an
alternative measure for calculating the sanctions.  See ECF No.
647.

The Court determines that the following specific
evidence is relevant to calculating the enhanced sanctions.  As
the Court sees it, the actual loss to Plaintiff Barnes caused by
Defendant AOE's and Defendant Henry's sanctionable conduct can
be divided into two components.  The Court discusses each below.

### i.   Value of the Commercial Use Permit

First, the Court will assess sanctions for the loss of
the value of the commercial use permit.  Were it not for
Defendant AOE's and Defendant Henry's wrongful transfer of the

---

[13/]  The only numbers referenced are Barnes's own estimations of how much
he could apparently be earning if he had the permit.  Barnes provides no
support for these numbers, including how he arrived at them or how he would
have the capacity to run a business with the listed earning potential even if
he had access to the permit.  See Barnes Letter at p. 3 of 4.

permit and their continued refusal to remedy the situation, Plaintiff Barnes could have moved forward with enforcing his judgment against Defendant SHR by going after its assets, including the vessel Tehani and (at the time) the permit.[14/]  By transferring the permit and ignoring this Court's directives to reissue it back to Defendant SHR, Defendant AOE and Defendant Henry have thwarted Plaintiff Barnes's efforts to enforce his judgment.  Defendant Henry has continued to avoid paying maintenance and cure, and Plaintiff Barnes will never be able to pursue the value of the vessel Tehani together with the significantly-enhanced value with the commercial use permit, so long as the permit remains in the name of Defendant AOE.

    The value of the permit is therefore linked to Defendant AOE's and Defendant Henry's sanctionable conduct in the sense that, but for the permit being transferred to and remaining in Defendant AOE's name, Plaintiff could have pursued enforcement of its judgment against Defendant SHR and recovered against its two assets, being the vessel and the permit.

    Accordingly, the Court finds that Plaintiff Barnes is entitled to an award of enhanced sanctions derived from the

---

[14/]  Even though the Court has already held that the permit is not an appurtenance of the vessel—and therefore not subject to the maritime lien—Plaintiff Barnes could have reached the permit by enforcing his in personam judgment against Defendant SHR.  The commercial use permit was Defendant SHR's only asset aside from the vessel, and the bankruptcy court had lifted the automatic stay, which would have allowed Plaintiff Barnes to pursue his judgement for maintenance and cure against Defendant SHR.

monetary value of the commercial use permit, representing
Plaintiff Barnes's actual loss arising from Defendant AOE's and
Defendant Henry's wrongful conduct.[15]

To accomplish this valuation, the Court hereby
appoints Mr. Robert Oakley of All Island Marine Survey to
conduct an independent appraisal of the value of the permit.[16]
Defendant AOE and Defendant Henry, as the sanctioned parties who
have caused the loss of the permit, will be responsible for the
cost of the independent appraisal.  The parties may also submit
their own appraisal reports at their own expense from a
reputable marine surveyor within 30 days of this Order.  The
Court may also consider the prior appraisal submitted by
Defendant AOE early last year, which valued the vessel Tehani
(without the permit and trailer) at $75,000, and a replacement
value of $165,000.  See ECF No. 510-6.

Mr. Oakley's appraisal should focus on two valuations.
First, he should conduct an appraisal of the M/V Tehani, which

---

[15]  The parties agree that asking DOBOR to reissue the permit at this
point could risk the permit being voided altogether.  Thus, the Court will
not order Defendant AOE and Defendant Henry to comply with the Court's past
directives on this point; doing so would be in neither party's best
interests. The enhanced sanctions will only include the value of the permit,
not the value of the vessel.  As will be discussed in a separate order, if
Plaintiff Barnes is successful in piercing the corporate veil, his recovery
against Defendant Henry would be limited to the value of the vessel Tehani,
not including the value of the permit.
[16]  Mr. Oakley was previously appointed in early 2019 in connection with
Defendant AOE's request to file a special bond.  See ECF Nos. 532 (minute
order appointing) & 533 & 536 (parties' statements of no opposition).  His
website indicates that he is certified as a marine surveyor through the
Association of Certified Marine Surveyors.  See
http://www.allislandmarinesurvey.com (last visited Feb. 3, 2020).

is being held under seizure at Genrtys Kona Marina in Honokohau Harbor, Kailua-Kona.  Second, he should conduct an appraisal of the M/V Tehani, together with the value of operating with the commercial use permit.  Ultimately, the enhanced sanctions will be calculated based on the difference between the two—in other words, the value of the permit alone.

In addition to having the permit appraised, the Court will allow Plaintiff Barnes to conduct limited discovery to determine Defendant Henry's and Defendant AOE's use of the permit since it was transferred to Defendant AOE and the profits generated therefrom.  Such discovery is limited to (1) the gross receipts reported to DOBOR in connection with the permit for the last four years and (2) Defendant AOE's records of operating income and expenses for the last four years.  Any items not falling within one of these two categories remains solely under the magistrate judge's review in considering Plaintiff Barnes's recent motion to compel.  See ECF No. 652.

### ii.  Attorney's Fees and Costs

Plaintiff Barnes is also entitled to compensation for his attorney's fees and costs incurred in connection with the sanctionable conduct occurring after issuance of the First Sanctions Order.  Plaintiff Barnes shall submit materials addressing whether and to what extent he is entitled to attorney's fees and/or costs in connection therewith.  The

materials should comply with the requirements listed in Local Rule 54.2(f)(1)-(5).

Upon receipt of these items, the Court will refer the matter to the magistrate judge to review and calculate the appropriate amount of fees and costs consistent with this Order.

## CONCLUSION

For the reasons stated, the Court holds the following:

1)    The Court has jurisdiction to consider the imposition of enhanced sanctions.

2)    Defendant AOE's and Defendant Henry's request for a stay pending appeal is DENIED.

3)    Enhanced sanctions are to be imposed jointly and severally against Defendant AOE and Defendant Henry in an amount to be determined at a later date and consistent with this Order.

The Court appoints Mr. Robert Oakley of All Island Marine Survey to conduct an independent appraisal of the vessel Tehani and the commercial use permit, as explained above.  Once Mr. Oakley has completed his appraisal report, he should file it with the Clerk of Court.  After Mr. Oakley's appraisal report is filed and the Court has reviewed it, together with any appraisal reports submitted by the parties and the prior report submitted by Defendant AOE in early 2019, the Court will hold a hearing to allow the parties to express their positions and thereafter

calculate the monetary amount of enhanced sanctions payable to compensate Plaintiff Barnes for his losses stemming from the Defendants' sanctioned conduct, and issue an order imposing such enhanced sanctions accordingly.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai`i, March 2, 2020.



_____
Alan C. Kay
Sr. United States District Judge

Barnes v. Sea Hawaii Rafting, LLC, Kris Henry, M/V Tehani, et al., Civ. No. 13-00002 ACK-RLP, Order Imposing Enhanced Sanctions Pursuant to this Court's Inherent Power on Defendant Aloha Ocean Excursions, LLC and Defendant Kristin Kimo Henry.