IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAI`I

```
_____
                                )
CHAD BARRY BARNES,              )
                                )
          Plaintiff,           )
                                )
     v.                        )
                                )
SEA HAWAI`I RAFTING, LLC;       )
et al.                         )    Civ. No. 13-00002 ACK-WRP
                                )
          Defendants.          )
_____)
```

**ORDER (1) GRANTING PLAINTIFF'S MOTION FOR RECONSIDERATION, ECF. NO. 724, (2) STAYING THE BOND AND INTERLOCUTORY SALE PROCESS, AND (3) IMPOSING PARTIAL ENHANCED COMPENSATORY SANCTIONS PURSUANT TO THE ENHANCED SANCTIONS ORDER, ECF NO. 657**

For the reasons set forth below, the Court GRANTS Plaintiff Chad Barry Barnes's Motion to Reconsider Minute Order [ECF No. 717] Administratively Withdrawing Barnes' Motion for Summary Judgement to Pierce the Corporate Veil, ECF No. 724 (the "Motion to Reconsider").  The Court also STAYS, pending a decision on appeal, any action regarding an interlocutory sale and/or posting of a cash bond.  Finally, the Court imposes partial enhanced compensatory sanctions against Defendant Kris Henry and Defendant Aloha Ocean Excursions, LLC ("AOE") pursuant to the Court's inherent power and based on the grounds set forth in the Court's Order Imposing Enhanced Sanctions, ECF No. 657 (the "Enhanced Sanctions Order").  Such sanctions shall be calculated to compensate Plaintiff Barnes for the amount of the

U.S. Marshals fees (including insurance) and storage costs (together, the "Custodial Costs") incurred to maintain the vessel Tehani under arrest between August 29, 2019 (the date the Court issued the first Order Imposing Sanctions, ECF No. 608 (the "Initial Sanctions Order")) and August, 13, 2020 (the date of issuance of this Order), and shall require Defendant Henry and Defendant AOE to pay any currently-owing Custodial Costs and the ongoing Custodial Costs either until the vessel Tehani is released by bond or sale or upon an earlier Court order.

## BACKGROUND

This case has a long and complex procedural history, which the Court does not undertake to relay here.  The Court instead describes only those facts relevant to the issues before it now.

### I.   Sanctions Against Defendant Henry and Defendant AOE [1/]

On August 29, 2019, the Court assessed sanctions on Defendant AOE and Defendant Henry in the amount of $25,000, to be paid jointly and severally, for conduct that the Court found was "tantamount to bad faith."  ECF No. 608.  Defendant AOE and Defendant Henry were sanctioned based on bad-faith misrepresentations Defendant Henry made in 2016 that ultimately

---

[1/]  The Enhanced Sanctions Order contains more details about the conduct that led to the Court to sanction Defendant AOE and Defendant Henry.

led to the transfer in ownership of the commercial-use permit associated with the vessel M/V Tehani from Defendant Sea Hawai`i Rafting, LLC ("SHR") to Defendant AOE.  In imposing the first round of sanctions, the Court made clear that the sanctions would be "subject to significant enhancement" should the permit not be reissued to Defendant SHR.

After Defendant Henry and Defendant AOE paid the initial sanctions but failed to effectuate the reissuance of the permit back to Defendant SHR, the Court issued a second order imposing "enhanced sanctions" to compensate Plaintiff Barnes for "the measurable loss resulting from Defendant AOE's and Defendant Henry's sanctionable conduct," which would be calculated in several parts:

> (1) the value of the permit, which represents the loss suffered by Barnes as a result of the permit being wrongfully transferred from Defendant SHR to Defendant AOE and then never reissued to Defendant SHR, and (2) attorney's fees and costs incurred by Plaintiff Barnes in responding to Defendant AOE's and Defendant Henry's sanctionable conduct.

Enhanced Sanctions Order at 2.

To calculate the first part—the value of the permit—the Court appointed Robert Oakley to conduct an appraisal of the vessel and the permit.  Id. at 32.  The Court also stated that it may consider the prior appraisal submitted by Defendant AOE in early 2019, and gave the parties permission to submit their

own appraisal reports, which neither chose to do.[2]   See id.
Finally, the Court allowed Plaintiff Barnes to "conduct limited
discovery to determine Defendant Henry's and Defendant AOE's use
of the permit since it was transferred to Defendant AOE and the
profits generated therefrom."   Id. at 33.   To calculate the
second part—attorney's fees and costs—the Court provided that
Plaintiff Barnes could submit materials addressing his
entitlement to such costs, which would then be reviewed by the
Magistrate Judge.   The Court stated:

> After Mr. Oakley's appraisal report is filed
> and the Court has reviewed it, together with
> any appraisal reports submitted by the parties
> and the prior report submitted by Defendant
> AOE in early 2019, the Court will hold a
> hearing to allow the parties to express their
> positions and thereafter calculate the
> monetary amount of enhanced sanctions payable
> to compensate Plaintiff Barnes for his losses
> stemming from the Defendants' sanctioned
> conduct, and issue an order imposing such
> enhanced sanctions accordingly.

Enhanced Sanctions Order at 34-35.

Although the Enhanced Sanctions Order broadly
described the basis for the enhanced sanctions and how they
would be calculated, no enhanced sanctions have yet been
calculated or paid.[3]

---

[2]  The parties had 30 days from the date the Enhanced Sanctions Order
was issued to submit reports from any reputable marine surveyor.  Enhanced
Sanctions Order at 32.
[3]  This is partially due to delays caused by the Covid-19 pandemic,
(Continued . . . )

## II.  **Attempts to Pierce the Corporate Veil**

Well before the sanctions matters arose, Plaintiff Barnes has been seeking to pierce the corporate veil of Defendant SHR in an attempt to hold Defendant Henry personally liable for maintenance and cure.  See, e.g., ECF No. 157 (2015 motion seeking to pierce the corporate veil).  Several intervening issues related to Defendant SHR's and Defendant Henry's bankruptcies and the bad-faith transfer of the commercial-use permit caused the Court to postpone ruling on whether Plaintiff Barnes could successfully pierce the veil.  See ECF No. 158.  Several years later, in late 2019, the bankruptcy court ruled that Defendant Henry's bankruptcy discharge prevented Plaintiff Barnes from recovering any maintenance and cure from Defendant Henry personally, whether or not the corporate veil could be pierced.

On appeal in the district court, Judge Watson affirmed in part and reversed in part, clarifying that Plaintiff Barnes could in fact pursue his maintenance and cure claim against Defendant Henry personally if the corporate veil was pierced, but only up to the value of the in rem claim against the Vessel

---

which prevented the Court-appointed appraiser from surveying the vessel to determine its and the commercial-use permit's value.  Only just recently was the inter-island quarantine lifted, allowing the appraiser to conduct the survey.  The Court just received the appraiser report, which will now allow the Court to move forward with assigning a number to a portion of the enhanced sanctions.

Tehani (which would include the value of the permit should the Ninth Circuit find it appurtenant).  See Barnes v. Henry, Consolidated Case No. 1:19-cv-00210 (Doc. No. 12) (D. Haw. Jan. 13, 2020); Barnes v. Henry, Consolidated Case No. 1:19- cv-00211 (Doc. No. 12) (D. Haw. Jan. 13, 2020); see also In re Sea Hawaii Rafting, LLC, Bankr. No. 14-01520 (D. Haw. Bankr.).  Simply put, Judge Watson's ruling would allow Plaintiff Barnes to recover against Defendant Henry only for the amount of the secured maritime lien, meaning the value of the vessel Tehani.

Following Judge Watson's rulings, and around the time the Enhanced Sanctions Order was issued, this Court sua sponte reinstated Plaintiff Barnes's prior motion to pierce the corporate veil.  See ECF No. 658.  Meanwhile, Plaintiff Barnes appealed Judge Watson's rulings to the Ninth Circuit.  On July 1, 2020, Plaintiff Barnes filed the MSJ to pierce the corporate veil.  ECF No. 703.  In it, he asks the Court to pierce the corporate veil of Defendant SHR[4/] to hold Defendant Henry "personally liable for the Maintenance payments which SHR owes to Barnes as part of his wages, as if Henry were standing in SHR's shoes."  MSJ at 3.

---

[4/]  At some points in the MSJ, Plaintiff Barnes seems to also reference the idea of piercing the corporate veil of Defendant AOE.  The Court makes no finding at this time as to the merits of any arguments raised in the motion.

### III. Attempts to Release the Vessel & the Intervening Ninth Circuit Stay

The vessel Tehani has been under arrest since March 14, 2019.  Plaintiff Barnes has been prepaying the Custodial Costs to maintain the vessel in the custody of the U.S. Marshals.  In early June 2020, Plaintiff Barnes moved the Court for an interlocutory sale, ECF No. 680, and asked it to reconsider the prior holding that the Plaintiff must prepay the Custodial Costs, ECF No. 681.  He represented that it was not financially feasible for Plaintiff Barnes to continue paying the expenses as he was living on Social Security disability payments.  ECF No. 681 at 2.  Around the same time, the U.S. Marshal contacted the Court to advise of late payments of fees and costs and to caution the Court that the Marshals would need to be relieved as custodians if they did not receive payment.

In the midst of the Court and the parties dealing with those logistical problems, the Ninth Circuit on June 8 issued a broad and unequivocal stay of the admiralty and bankruptcy proceedings.  ECF No. 683.  Given several time-sensitive pending matters—including the accruing costs for the Marshals to maintain custody of the vessel, the need to consider proceeding with the interlocutory sale, and the readiness to move forward with calculating the enhanced compensatory sanctions—the Court requested that the Ninth Circuit lift the stay.  See ECF No.

685.  The Ninth Circuit granted the Court's request and lifted the stay on June 19.  ECF No. 688.  Pursuant to the statutory requirement, the Court subsequently denied Plaintiff Barnes's motion for reconsideration of the Court's prior order requiring him to prepay the Custodial Costs, ECF No. 694.  Thereafter, Plaintiff Barnes made a payment to the Marshals to maintain custody of the vessel.

**IV.  The Court's July 17, 2020 Minute Order**

On July 17, 2020, the Court issued a Minute Order, ECF No. 717 (the "Minute Order"), which <u>inter alia</u> administratively withdrew Plaintiff Barnes's Motion for Summary Judgement and to Pierce the Corporate Veil of Defendant Sea Hawaii Rafting, LLC, ECF No. 703 (the "MSJ").  The Court stated its rationale as follows:

> In light of the above and several pending appeals, it also appears to the Court to be in all the parties' best interests and in the economy of justice to defer proceeding with the Motion for Summary Judgment to Pierce the Corporate Veil, ECF No. 703, until the Ninth Circuit rules on certain pending appeals, primarily those regarding rulings by Judge Watson with respect to the extent to which Plaintiff Barnes may recover from Defendant Henry personally if the corporate veil is successfully pierced.  Because Plaintiff Barnes's Motion for Summary Judgment to Pierce the Corporate Veil directly implicates issues on appeal and may be impacted by the release or sale of the vessel, the Court ADMINISTRATIVELY WITHDRAWS that motion.

Minute Order at 2-3 (footnote omitted).

- 8 -

In the same Minute Order, the Court advised the parties that it was inclined to require Defendant Henry and Defendant AOE to pay certain Custodial Costs as partial sanctionable compensation for Barnes.  The Court allowed the parties the opportunity to brief that issue and then held a hearing on July 31, 2020, at which the parties and the Court discussed several of the overlapping issues in this case.

Meanwhile, the motion for interlocutory sale remains pending.  Defendants in response to the motion for interlocutory sale indicated that Defendant SHR had an interest in first having the opportunity to offer a cash bond for the release of the vessel, which the Court agreed to.  See ECF No. 717.

In the course of recent briefings and hearings before the Court, both parties have now suggested that the Court should stay the interlocutory sale and bond process pending the Ninth Circuit appeal as to whether the commercial-use permit is an appurtenance to the vessel, which could impact the value of the vessel (and therefore the maritime lien).

## STANDARD

A party may ask the court to reconsider and amend a previous order pursuant to Federal Rule of Civil Procedure ("FRCP") 59(e).  Reliance Ins. Co. v. The Doctors Co., 299 F. Supp. 2d 1131, 1153 (D. Haw. 2003).  FRCP 59(e) offers "an

extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." Id. (citing Carroll v. Nakatani, 342 F.3d 934, 945 (9th Cir. 2003)).  In the Ninth Circuit, a successful motion for reconsideration must accomplish two goals.  First, it must demonstrate some reason why the court should reconsider its prior decision.  Na Mamo O'Aha 'Ino v. Galiher, 60 F. Supp. 2d 1058, 1059 (D. Haw. 1999) (citation omitted).  Second, a motion for reconsideration must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision.  Id.  Courts have established three grounds justifying reconsideration:  (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice.  Mustafa v. Clark Cty. Sch. Dist., 17 F.3d 1169, 1178-79 (9th Cir. 1998); Galiher, 60 F. Supp. 2d at 1059; Reliance, 299 F. Supp. 2d at 1153.  This District has implementing these standards in Local Rule 60.1.2.  Galiher, 60 F. Supp. 2d at 1059; Reliance, 299 F. Supp. 2d at 1153.  "Whether or not to grant reconsideration is committed to the sound discretion of the court."  Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation, 331 F.3d 1041, 1046 (9th Cir. 2003) (citing Kona Enter., 229 F.3d at 883).

## DISCUSSION

### I.   Stay of Interlocutory Sale and/or Bond

As noted above, both parties have suggested the Court should stay the posting of a cash bond and/or the interlocutory sale of the vessel until the Ninth Circuit has ruled on the pending appeal of whether the commercial-use permit is appurtenant to the vessel.  The Court finds that a stay of those matters is appropriate to ensure the proper valuation for releasing the vessel pursuant to a cash bond payment or sale. Therefore, the Court ADMINISTRATIVELY WITHDRAWS Plaintiff Barnes's Motion for Interlocutory Sale, ECF No. 680, and STAYS any action regarding the sale and/or posting of a bond.  Upon the Ninth Circuit ruling on the permit-appurtenance issue, either party may move the Court to reinstate the motion or to allow Defendant SHR the opportunity to post a cash bond.

### II.  Imposition of Partial Compensatory Enhanced Sanctions

Turning next to the payment of certain Custodial Costs, the Court imposes as partial compensatory enhanced sanctions, based on Defendant Henry and Defendant AOE's bad-faith conduct, the prior Custodial Costs between the date of the Initial Sanctions Order and the date of this Order, as well as any currently-owing Custodial Costs and the ongoing Custodial Costs to maintain the vessel in custody until the vessel is released from Plaintiff Barnes's maritime lien or upon earlier

Court order.  The Custodial Costs thus far have been prepaid by Plaintiff pursuant to 28 U.S.C. § 1921.  See also ECF No. 315.  Ordinarily, such costs are taxable against Defendants.  See ECF No. 315 at 3 n.1 (citing In re Lindsey, 178 B.R. 895, 902 (Bankr. N.D. Ga. 1995)); Haw. Local Admiralty R. E.13(b).  However, were this an ordinary case, the arrest period would have been much shorter, and the vessel released much sooner.

As a result of various factors, the vessel remains under arrest after almost a year and a half.  The major factor for the delay is the sanctioned bad-faith conduct of Defendant Henry and Defendant AOE.  See generally Enhanced Sanctions Order (addressing the impact of Defendant Henry's and Defendant AOE's bad-faith conduct and requiring that those Defendants pay certain costs as enhanced sanctions).  Their bad-faith conduct set in motion a series of events that contributed to the delays in this case, precluded a feasible sale of the vessel with access to the permit (which was necessary for meaningful operation of the vessel), and caused Plaintiff to face continuing payments to maintain the arrest of the vessel.  While Defendants were attempting to stall or limit Plaintiff's recovery, it was not feasible to proceed with the sale of the vessel.  The permit had been wrongfully transferred, and that also raised questions about the proper value of the vessel.

Thus, exercising its broad authority as a court sitting in admiralty and its inherent authority as discussed in the Enhanced Sanctions Order, the Court finds at this time that requiring Defendant AOE and Defendant Henry—because of their bad-faith conduct—to pay a portion of (that is, only from the date the Enhanced Sanctions Order was issued) the prior-incurred Custodial Costs, as well as any currently-owing Custodial Costs and the ongoing future Custodial Costs, is the most equitable approach to handling the unique circumstances of this case.  Cf. Beauregard, Inc. v. Sword Servs. L.L.C., 107 F.3d 351, 353 (5th Cir. 1997) (approving of the district court's use of its discretion and "inherent powers" to manage litigation and noting that "[c]ourts routinely enter orders that divide the custodia legis expenses among the parties of an in rem action" and "[w]hen such orders are entered is largely discretionary and vary in different cases").  For purposes of equity and based on their identified bad-faith conduct, the Court directs that Defendant AOE and Defendant Henry are required to compensate Barnes—as partial compensatory enhanced sanctions—in the amount of the prior Custodial Costs from the date of the Initial Sanctions Order through the date of this Order.  Going forward, pending the Ninth Circuit appeals and until the vessel is released or upon an earlier Court order, Defendant Henry and Defendant AOE are directed to pay—as further partial

- 13 -

compensatory enhanced sanctions based on the same sanctioned bad-faith conduct—any currently-owing Custodial Costs and the ongoing Custodial Costs.[5]

The Court emphasizes that it is not imposing <u>new</u> sanctions.  It is simply quantifying a <u>portion</u> of the compensatory enhanced sanctions already assessed in the Enhanced Sanctions Order.  The Court also notes that the imposition of sanctions in the form of prior and ongoing Custodial Costs does <u>not</u> encompass all the enhanced sanctions imposed by the Court in the Enhanced Sanctions Order.  To the contrary, the Court will later impose the rest of the compensatory enhanced sanctions as described in the Enhanced Sanctions Order.  <u>See</u> Enhanced Sanctions Order at 33-35.

In sum, the Court has broad discretion in an admiralty case to fashion an equitable remedy.  It also has inherent authority to sanction, which it has already made detailed findings on in the Enhanced Sanctions Order.  Thus, exercising its discretion and authority, the Court directs Plaintiff Barnes to submit, within 20 days of issuance of this Order, an affidavit with evidence of the prior amounts paid for the

---

[5]  As noted above, such fees are ordinarily prepaid by the plaintiff and taxable as costs.  The Court's imposition of enhanced sanctions now—requiring that Defendants pay Plaintiff Barnes back for certain Custodial Costs and pay for ongoing Custodial Costs should not be considered as precluding the later imposing of other costs (so long as those costs are not the same as those already reimbursed by Defendants as enhanced sanctions).

Custodial Costs between August 29, 2019, and the date of this Order, for review by the Magistrate Judge.  Defendant Henry and Defendant AOE are ORDERED to issue payment to Barnes for those prior Custodial Costs within 14 days after the Magistrate Judge's finding that Plaintiff has made the requisite showing of such costs.  The parties also are ORDERED to immediately confer with each other and with the U.S. Marshal about coordinating for Defendant Henry and Defendant AOE to begin paying the currently-owed and ongoing future payments to the Marshals and storage costs to the marina for such Custodial Costs.

## III. Motion for Reconsideration

On July 20, Plaintiff Barnes sought reconsideration of the Court's decision to administratively withdraw his MSJ to pierce the corporate veil.  As stated, the Court withdrew the motion for several reasons:  (1) the pending Ninth Circuit appeal regarding whether the permit is appurtenant to the vessel, which would impact the value of the maritime lien; (2) the pending Ninth Circuit appeal of the Judge Watson order, which would impact to what extent, if any, Plaintiff Barnes could recover against Defendant Henry, even if he were to successfully pierce the veil; and (3) the likelihood that the vessel (and therefore the maritime lien) would be released through an interlocutory sale or posting of a cash bond, possibly making a recovery of the maritime lien claim under

Judge Watson's ruling duplicative.  The Court's overarching reason was an attempt to encourage efficiency and the "economy of justice."  Minute Order at 3.

Plaintiff Barnes argues that the Court should reconsider its decision because "[t]he question of how much Barnes can recover if he pierces the corporate veil does not in anyway affect the question of whether or not Barnes can pierce the corporate veil."  Mot. Recon. at 3.  Defendant AOE and Defendant Henry in response argue that "the Court's withdrawal of Plaintiff's Motion for Summary Judgment was a sound judgment call and cannot be said to be a manifest error, especially given the number of issues on appeal and the fact that all but one of the pending appeals were initiated by Plaintiff."  ECF No. 735 ("Opposition") at 3.

Under ordinary circumstances, the Court would find Defendant AOE and Defendant Henry's arguments persuasive and reaffirm its prior decision, which as Defendants point out was simply a judgment call based on the circumstances as they existed at that time.  However, the Court—again exercising its judgment and discretion—finds that the more appropriate course of action would be to GRANT Plaintiff Barnes's Motion to Reconsider and reinstate his MSJ seeking to pierce the corporate veil.

First, it has now been some seven years since the accident that triggered this case took place on the vessel Tehani.  The Ninth Circuit at multiple junctures has encouraged this Court to proceed swiftly to ensure Plaintiff Barnes's recovery of maintenance and cure to which he may be entitled. See, e.g., Barnes v. Sea Haw. Rafting, LLC, 889 F.3d 517, 543 (9th Cir. 2018) ("We urge the district court to move quickly upon remand."); id. at 543 n.21 (approving of the district court's approach to sever the issue of maintenance and cure and set it for trial and encouraging "the court and the parties to continue to pursue it expeditiously on remand"); see also ECF No. 688 (lifting the stay to allow the district court to move forward with the case).  Moreover, before Judge Watson's ruling that Plaintiff Barnes could possibly recover for the in rem claim/maritime lien, the bankruptcy discharge precluded any possible recover against Defendant Henry.  And one of the reasons the Court originally withdrew the MSJ was because of the likelihood at that time that the vessel—and therefore the maritime lien—would soon be released.[6]  Without the maritime lien securing the vessel, then presumably there would not have

---

[6] This also explains why the Court had previously—in March 2020—reinstated the older motion seeking to pierce the corporate veil.  Although the Ninth Circuit appeal of Judge Watson's ruling was pending, there was no imminent likelihood of the vessel (and maritime lien) being released.  It was not until June 2020 that Plaintiff Barnes initiated the process of moving forward with the interlocutory sale.

been a way to adopt Judge Watson's procedure (Plaintiff piercing the veil to enforce the in rem judgment secured by the maritime lien) without facing the potential for a double recovery of the same secured debt.  In light of the Court's decision to now stay the sale and bond process (and thereby the release of the vessel and lien), and at the parties' joint request, the Court finds that it would no longer be inefficient to move forward with deciding whether Plaintiff Barnes is entitled to pierce the corporate veil of Defendant SHR.

The Court finds that, proceeding now with the MSJ to pierce the corporate veil could expedite Plaintiff Barnes's recovery after the Ninth Circuit rules on the appeal of Judge Watson's rulings.  In other words, if Plaintiff Barnes is successful in piercing the corporate veil, he could then quickly recover whatever the Ninth Circuit says he is entitled to recover, rather than having to wait for this Court to then commence the motions process at that time, which would take several more months before it could be determined what recovery Barnes might be entitled to.

In sum, while Defendant AOE and Defendant Henry's Opposition sets forth sound reasons for why the Court's original decision made sense at the time, given the unique and fast-changing facts in this case, as well as the Ninth Circuit's encouragement that the Court should act quickly to determine the

extent to which Plaintiff Barnes may be entitled to maintenance and cure, the Court finds that the Motion for Reconsideration should be GRANTED, and the proceedings with respect to piercing the veil should move forward.

## CONCLUSION

For the foregoing reasons, the Court makes the following rulings:

1. The proceedings on the bond and interlocutory sale are hereby STAYED pending the Ninth Circuit appeal addressing whether the commercial-use permit is appurtenant to the vessel.  Accordingly, the Court ADMINISTRATIVELY WITHDRAWS Plaintiff Barnes's Motion for Interlocutory Sale, ECF No. 680.

2. The Court ORDERS Defendant Henry and Defendant AOE to pay a portion of the compensatory enhanced sanctions previously imposed by the Enhanced Sanctions Order, ECF No. 657, as detailed above.  The partial compensatory enhanced sanctions shall be for the amount of Custodial Costs paid by Plaintiff Barnes between August 29, 2019 (the date the Initial Sanctions Order was issued) and August 13, 2020 (the date of issuance of this Order), as well as for any currently-owing Custodial Costs and the ongoing Custodial

Costs until the vessel is released or upon earlier Court order.

3. Plaintiff Barnes's Motion for Reconsideration, ECF No. 724, is GRANTED and the Motion for Summary Judgment to pierce the corporate veil, ECF No. 703, is hereby REINSTATED.  The Court sets that motion for hearing on **October 15, 2020**, at 11:00 a.m.


IT IS SO ORDERED.

DATED:  Honolulu, Hawai`i, August 13, 2020.



_____

Alan C. Kay
Sr. United States District Judge


Barnes v. Sea Hawaii Rafting, LLC, Kris Henry, M/V Tehani, et al., Civ. No. 13-00002 ACK-RLP, Order (1) Granting Plaintiff's Motion for Reconsideration, ECF No. 724, (2) Staying the Bond and Interlocutory Sale Process, and (3) Imposing Partial Enhanced Compensatory Sanctions Pursuant to the Enhanced Sanctions Order, ECF No. 657