IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAI`I

```
                                    )
CHAD BARRY BARNES,                  )
                                    )
          Plaintiff,                )
                                    )
     v.                             )
                                    )
SEA HAWAI`I RAFTING, LLC;           )
et al.                              )    Civ. No. 13-00002 ACK-WRP
                                    )
                                    )
          Defendants.               )
                                    )
```

## ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT TO PIERCE THE CORPORATE VEIL (ECF NO. 703)

Before the Court is Plaintiff Chad Barry Barnes's Motion for [Partial] Summary Judgment to Pierce the Corporate Veil, ECF No. 703 (the "Motion") in which Plaintiff Barnes seeks to hold Defendant Kris Henry personally liable for the corporate debts of Defendant Aloha Ocean Excursions ("AOE") and Defendant Sea Hawaii Rafting ("SHR").  For the reasons set forth below, the Court DENIES Plaintiff Barnes's Motion.  Specifically, the Court holds that (1) there is no reason to pierce Defendant AOE's corporate veil because Defendant Henry is already personally liable for the relevant sanctions, and (2) genuine issues of material fact exist as to whether Plaintiff Barnes is entitled to pierce Defendant SHR's corporate veil.

**BACKGROUND**

For purposes of this Order, the Court will not recount this case's lengthy procedural history.  The Court only discusses those facts and events of specific relevance to the issues that this Order addresses.

I.   **Factual Background**

a. **Filing of Lawsuit, Subsequent Bankruptcies, & Judgment**

Plaintiff Barnes is a seaman who was injured in 2012 when the boat on which he was working, the M/V Tehani, exploded. Seeking the maritime remedy of maintenance and cure, among other relief, Plaintiff Barnes sued the vessel Tehani in rem and Defendant SHR (the owner of the vessel) and Defendant Henry (the sole owner and manager of Defendant SHR) in personam, to enforce his maritime lien against the vessel.

Shortly after the lawsuit was filed, Defendant Henry and Defendant SHR both filed for bankruptcy.  See In re Kristin Kimo Henry, Case No. 14-01475 (Bankr. D. Haw.); In re Sea Hawaii Rafting, LLC, Case No. 14-01520 (Bankr. D. Haw.); see also Pl.'s Concise Statement of Facts ("CSF"), ECF No. 704, ¶¶ 6-7; Defs.' CSF, ECF No. 754, ¶¶ 6-7 (admitting).  The bankruptcies complicated this otherwise simple maritime case and led to years of litigation while the bankruptcy court and the Ninth Circuit clarified several novel legal questions at the intersection of bankruptcy and admiralty law.

- 2 -

The bankruptcy court in 2018 ultimately allowed Plaintiff Barnes to pursue his in rem claims against the vessel as well as his in personam claims against Defendant SHR, but not against Defendant Henry.  The Court conducted a three-day bench trial to determine the amount of maintenance and cure, and awarded Plaintiff Barnes a judgment in the amount of $279,406.12,[1] jointly and severally against Defendant SHR in personam and the vessel Tehani in rem.[2]  See ECF Nos. 446 & 447.

### b. Collection Efforts & Transfer of Commercial-Use Permit

Plaintiff Barnes has been largely unsuccessful in collecting on his judgment.  His collection efforts have been hindered by the bankruptcies and other procedural complications, as well as by Defendant SHR's insolvency.  Plaintiff Barnes has also been unable to pursue what was virtually the only asset of Defendant SHR (aside from the vessel Tehani), a valuable commercial-use boating permit.  See ECF Nos. 608 & 657.  At the time of the accident, lawsuit, and bankruptcy filings, the permit had been associated with the vessel Tehani and in Defendant SHR's name.  Id.; see also ECF No. 528.

At a hearing on February 28, 2019, it was revealed that two years earlier Defendant Henry had written a letter to the

---

[1]  Plaintiff Barnes was also awarded $233,405.44 in attorney's fees and costs.  ECF No. 517.

[2]  Defendant Henry was not a defendant for purposes of the trial because he was protected by an automatic stay as a result of his Chapter 13 bankruptcy.  ECF No. 446 at 2 n.3.

harbor master at Honokohau Harbor—where the vessel Tehani was located—requesting that the Division of Boating and Ocean Recreation ("DOBOR") reissue the commercial-use permit from Defendant SHR to Defendant AOE.  ECF No. 585.  Defendant AOE is another single-member LLC formed by Defendant Henry less than one year after he and Defendant SHR filed bankruptcy.  Id.; see also Ex. B to Decl. of Jay Friedheim ("Friedheim Decl."), ECF No. 703-4; Pl.'s CSF ¶¶ 9-10; Defs.' CSF ¶¶ 9-10 (admitting).  Defendant Henry's letter represented that the transfer would only reflect a "change in name," ECF No. 527-1, when in fact Defendant SHR and Defendant AOE were entirely separate entities, ECF No. 585.  Based on Defendant Henry's misrepresentation in that letter, DOBOR reissued the commercial-use permit from Defendant SHR to Defendant AOE, where it remains today.[3/]   ECF Nos. 585, 608, & 657; see also Ex. C to Friedheim Decl., ECF No. 703-5.

        The permit transfer ultimately led the Court to impose sanctions on Defendant Henry and Defendant AOE.  See ECF Nos. 608 (imposing "initial" sanctions) & 657 (imposing "enhanced" sanctions).  After holding hearings and considering evidence, the Court made findings that Defendant Henry's request for reissuance of the commercial-use permit from Defendant SHR to Defendant AOE was a "misrepresentation" in that the "name change" was in fact a

_____

        [3/]  At some point after the permit was reissued, Defendant AOE had the permit changed to operate with the vessel Wiwo`ole.  See Ex. C to Friedheim Decl.

transfer between two separate and distinct entities.   ECF No. 608 at 10-11.  The Court found that Defendant's transfer of the permit deprived Plaintiff Barnes of the opportunity to pursue the valuable asset of Defendant SHR, against whom Plaintiff Barnes held a judgment.  See id. at 7-8.  The Court had previously ruled that the permit was not appurtenant to the vessel Tehani.  ECF No. 528 at 1.[4/]  The Court found that the vessel and the commercial-use permit were virtually the only assets held by Defendant SHR against which Plaintiff Barnes might have enforced his maritime lien and judgment.  See ECF No. 608 at 8.  The Court thus reasoned that the transfer of the permit to a different LLC prevented the operation of the vessel out of Honokohau Harbor and thus significantly diminished the value of the vessel, thereby severely and negatively impacting Plaintiff Barnes's ability to collect.  See id.  Based on those findings, the Court imposed the initial sanctions in the amount of $25,000, designed to partially compensate Plaintiff Barnes for the resulting loss.[5/]  Id. at 16-17.  The Court also directed Defendant Henry and Defendant AOE to take steps to have the permit reissued to Defendant SHR or else the sanctions would be substantially enhanced.  Id. at 17.

---

[4/]  This ruling is now pending on appeal before the Ninth Circuit.  See Barnes v. Sea Hawaii Rafting, Case No. 19-15646 (9th Cir.).

[5/]  The initial sanctions have been paid in full by Defendant Henry and Defendant AOE.

When Defendants then ignored the Court's directive in the initial sanctions order to take meaningful steps to have the permit reissued to Defendant SHR, the Court imposed "enhanced" sanctions.[6/]   ECF No. 657.   The Court held that Defendants had acted "recklessly, wrongfully, and with an improper purpose," and that their "conduct 'was tantamount to bad faith and therefore sanctionable' pursuant to the Court's inherent power."   Id. at 28 (quoting B.K.B. v. Maui Police Dept., 276 F.3d 1091, 1108 (9th Cir. 2002)).   Based on those findings, the Court assessed enhanced sanctions to compensate Plaintiff Barnes for the loss of the value of the commercial-use permit, as well as for related attorney's fees and costs.   Id. at 31-35.

### c. Attempt to Pierce the Corporate Veil

Plaintiff Barnes now seeks to hold Defendant Henry personally liable for the judgment against Defendant SHR and the vessel Tehani.   Whether Plaintiff Barnes can do that depends on two questions:   (1) is he entitled to pierce the corporate veil of Defendant SHR and (2) assuming he is, would he be able to recover from Defendant Henry personally, even though Defendant Henry is protected by a Chapter 13 bankruptcy discharge?

The bankruptcy court answered "no" to the second question.   ECF No. 553.   On appeal in the district court, Judge

---

[6/]   A large portion of the enhanced sanctions are still being calculated and remain owing by Defendant AOE and Defendant Henry.

Watson reversed, concluding that Plaintiff Barnes could recover his judgment against Defendant Henry personally if the corporate veil is pierced, but the recovery would be limited to the value of the debt secured by the maritime lien (in other words, the value of the vessel Tehani):

> [I]f Barnes is successful in piercing the corporate veil, SHR's liability to pay maintenance and cure as the shipowner of the vessel will, in effect, become Henry's liability.  As a result, . . . if the corporate veil is pierced, Henry will be treated as if he had owned the vessel because he will stand in the shoes of SHR.  Just like SHR, therefore, Henry would be liable in rem for satisfying the maintenance and cure claim to the extent it is secured by the relevant vessel.

Barnes v. Henry, No. 19-cv-00210-DKW-RT, 2020 WL 201457, at *3 (D. Haw. Jan. 13, 2020).[7/]

While that issue plays out on appeal, Plaintiff Barnes seeks to answer the first question:  Is he entitled to pierce the corporate veil?  In his pending Motion, Plaintiff Barnes seeks to pierce the corporate veils of both Defendant SHR and Defendant AOE to hold Defendant Henry personally liable for both entities' debts.  See Mot. at 3-4.  He asserts that "[Defendant] Henry

---

[7/]   Judge Watson left "for the admiralty court to determine whether SHR's corporate veil should be pierced and [to determine] the value of the relevant vessel."  Barnes, 2020 WL 201457 at *3.  Plaintiff Barnes has appealed several of Judge Watson's rulings on appeals from the bankruptcy court that implicate the extent to which Plaintiff Barnes can enforce his judgment against Defendant Henry personally.  See Barnes v. Henry, Case No. 19-17614 (9th Cir.) (appeal of district court cases 19-cv-00212-DKW-RT, 19-cv-00213-DKW-RT, & 19-cv-00215-DKW-RT).

should be held personally liable for the Maintenance payments which SHR owes to Barnes" and for the "original and enhanced sanctions owed by AOE and Henry" in connection with the wrongful transfer of the commercial-use permit.  Id.

## II.  Procedural Background

Plaintiff Barnes filed his Motion for partial summary judgment and CSF on July 1, 2020.  See ECF Nos. 703 (Motion) & 704 (CSF).  Two weeks later, the Court administratively withdrew the Motion, finding that it was in the parties' interests and in the economy of justice to defer proceeding with the Motion.[8/]  ECF No. 717.  Plaintiff Barnes then asked the Court to reconsider that decision.  ECF No. 724.  On August 13, the Court granted the motion for reconsideration, reinstated the Motion, and set a hearing.  ECF No. 739.  Defendant Henry and Defendant AOE filed their Opposition and CSF in opposition on September 23.  ECF Nos. 753 (Opposition) & 754 (CSF).  Plaintiff Barnes did not file any reply.  A telephonic hearing on the Motion was held on October 14.

---

[8/]  Specifically, the Court determined that, because the extent to which Plaintiff Barnes could recover from Defendant Henry personally (if at all) was on appeal, it would be premature and possibly moot to decide whether the corporate veil should be pierced.  See ECF No. 717.

## STANDARD

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Federal Rule of Civil Procedure ("Rule") 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986); see also Broussard v. Univ. of Calif., 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact."  Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (citing Celotex, 477 U.S. at 323, 106 S. Ct. 2548); see also Jespersen v. Harrah's Operating Co., 392 F.3d 1076, 1079 (9th Cir. 2004).  "When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a genuine issue for trial."  Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586–87, 106 S. Ct.

1348 (1986) (citation and internal quotation marks omitted and emphasis removed); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S. Ct. 2505 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." In re Barboza, 545 F.3d 702, 707 (9th Cir. 2008) (citing Anderson, 477 U.S. at 248, 106 S. Ct. 2505). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. 1348; see also Posey v. Lake Pend Oreille Sch. Dist. No. 84, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor" (internal citation and quotation omitted)).

## DISCUSSION

This Motion requires the Court to decide the narrow question of whether Plaintiff Barnes has established as a matter of law that he is entitled to pierce the corporate veils of

Defendant SHR and Defendant AOE.  Courts are generally wary of piercing the veil, especially on summary judgment and especially where fraud is alleged.  As detailed below, the Court holds that Plaintiff Barnes has failed to meet his burden of showing that there is no genuine issue of material fact as to his ability to pierce the corporate veils of both entities.[9/]  Although Plaintiff Barnes may ultimately be able to show that the veil of Defendant SHR should be pierced, he has failed to put forth sufficient evidence demonstrating veil piercing is appropriate as a matter of law.  Accordingly, Plaintiff Barnes's Motion must be DENIED.

## I.   Applicable Law

The doctrine of "piercing the corporate veil" allows creditors of corporations to pierce the corporate shell to hold shareholders liable for corporate debts if they abuse the corporate form to defraud creditors.  See UA Local 343 of the United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus. of the U.S. & Canada, AFL-CIO, 48 F.3d 1465, 1475 (9th Cir. 1994).  Courts have applied the veil-piercing doctrine to limited liability companies, Ermis Mgmt. Co. Ltd. V.

---

[9/]  The Court notes at the outset that Judge Watson has already decided that Defendant Henry can be held personally liable for the in rem judgment against the vessel Tehani if the corporate veil is pierced.  The Court makes no findings herein as to the extent to which Plaintiff Barnes would be entitled to recover from Defendant Henry personally if he is ultimately successful in piercing the veil.

United Calif. Discount Corp., No. 2:07-CV-01021-PMP-RJJ, 2009 WL 10709407, at *6 (D. Nev. Aug. 3, 2009), and in admiralty cases, Chan v. Society Expeditions, Inc., 123 F.3d 1287, 1294 (9th Cir. 1997).

"Federal courts sitting in admiralty generally apply federal common law when examining corporate identity." Id. Federal common law in the Ninth Circuit considers three factors to decide whether to pierce the corporate veil: "[1] the amount of respect given to the separate identity of the corporation by its shareholders, [2] the degree of injustice visited on the litigants by recognition of the corporate entity, and [3] the fraudulent intent of the incorporators." Seymour v. Hull & Moreland Eng'g, 605 F.2d 1105, 1111 (9th Cir. 1979). A plaintiff "must prevail on the first threshold factor and on one of the other two." UA Local 343, 48 F.3d at 1475.

"The Ninth Circuit has applied 'a relatively rigorous veil-piercing standard, and ought to be placed among the circuits where it is relatively difficult to pierce the veil.'" Viera v. Chehaiber, Civ. No. ED CV:08-00182 JRG (JCRx), 2010 WL 960347, at *3 (C.D. Cal. Mar. 16, 2010) (quoting Stephen B. Presser, Piercing the Corporate Veil 3-114 to -115 (1999)). "Corporate separateness is respected unless doing so would work injustice upon an innocent third party." Chan, 123 F.3d at 1294 (quoting Kilkenny v. Arco Marine Inc., 800 F.2d 853, 859 (9th

Cir. 1986)).  Moreover, "federal common law allows piercing of the corporate veil where a corporation uses its alter ego to perpetrate a fraud or where it so dominates and disregards its alter ego's corporate form that the alter ego was actually carrying on the controlling corporation's business instead of its own."  Id.  However, "[c]ommon ownership alone is insufficient to support disregard of the corporate form," id., and the "inability to collect [from an insolvent defendant] does not, by itself, constitute an inequitable result," Bd. of Trs. of Mill Cabinet Pension Tr. Fund for N. Calif. v. Valley Cabinet & Mfg. Co., 877 F.2d 769, 774 (9th Cir. 1989) (quoting Seymour, 605 F.2d at 1113).

Although federal common law controls, courts "may look to state law for guidance."[10/]  Id. at 772 (quoting Laborers Clean-Up Contract Admin. Tr. Fund v. Uriarte Clean-Up Serv., 736 F.2d 516, 523 (9th Cir. 1984)).  "Hawai`i appellate courts historically have been reluctant to pierce the corporate veil." Estate of Daily v. Title Guar. Escrow Serv., Inc., 178 B.R. 837, 844 (D. Haw. 1995) (collecting cases).  The Hawai`i Supreme Court has stated that "[t]he corporate 'veil' will be pierced and the legal entity of the corporation will be disregarded only where recognition of the corporate fiction would bring about

---

[10/]  Both Plaintiff Barnes and Defendants AOE and Henry rely without distinction on both federal common law and Hawai`i state law.  See Mot. at 5-11; Opp. at 7-8.

- 13 -

injustice and inequity or when there is evidence that the corporate fiction has been used to perpetrate a fraud or defeat a rightful claim." Chung v. Animal Clinic, Inc., 63 Haw. 642, 645, 636 P.2d 721, 723 (1981).  Hawai`i courts have looked to several factors when deciding whether to pierce the corporate veil.[11/]  See Robert's Haw. Sch. Bus, Inc. v. Laupahoehoe Transp. Co., 91 Haw. 224, 242, 982 P.2d 853, 871 (1999), superseded by

---

[11/] These factors include:
   [1] Commingling of funds and other assets, failure to segregate funds of the separate entities, and the unauthorized diversion of corporate funds or assets to other than corporate uses; [2] the treatment by an individual of the assets of the corporation as his own; [3] the failure to obtain authority to issue stock or to subscribe to or issue the same; [4] the holding out by an individual that he is personally liable for the debts of the corporation; [5] the identical equitable ownership in the two entities; [6] the identification of the equitable owners thereof with the domination and control of the two entities; [7] identi[ty] of . . . directors and officers of the two entities in the responsible supervision and management; [8] sole ownership of all of the stock in a corporation by one individual or the members of a family; [9] the use of the same office or business location; [10] the employment of the same employees and/or attorney; [11] the failure to adequately capitalize a corporation; [12] the total absence of corporate assets, and undercapitalization; [13] the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another corporation; [14] the concealment and misrepresentation of the identity of the responsible ownership, management and financial interest, or concealment of personal business activities; [15] the disregard of legal formalities and the failure to maintain arm's length relationships among related entities; [16] the use of the corporate entity to procure labor, services or merchandise for another person or entity; [17] the diversion stockholder [sic] or other person or entity, to the detriment of creditors, or the manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in another; [18] the contracting with another with intent to avoid performance by use of a corporate entity as a shield against personal liability, or the use of a corporation as a subterfuge of illegal transactions; and [19] the formation and use of a corporation to transfer to it the existing liability of another person or entity.

Robert's, 91 Haw. at 242, 982 P.2d at 871; see also Calipjo v. Purdy, 144 Haw. 266, 278 n.23, 439 P.3d 218, 230 (2019) (discussing various factors relevant to piercing the veil).

statute on other grounds as noted in Davis v. Four Seasons Hotel Ltd., 122 Haw. 423, 428 n.9, 228 P.3d 303, 308 n.9 (2010).

Hawai`i courts have recognized that "piercing the corporate veil ordinarily should not be disposed of by summary judgment, in view of the complex economic questions often involved, especially if fraud is alleged."  Id. (quoting 1 William Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 41.95, at 699-705 (ed. 1999)); see also Television Events & Mktg., Inc. v. AMCON Distrib., Co., 484 F. Supp. 2d 1124, 1143 (D. Haw. 2006) (acknowledging "the reluctance of Hawaii courts to make determinations regarding alter ego liability at the summary judgment stage").

## II.  Analysis

With the substantive law in mind, the Court now considers the merits of Plaintiff Barnes's summary judgment motion, which seeks to pierce the corporate veils of both Defendant AOE and Defendant SHR.

### a. Defendant AOE

Plaintiff argues that the Court should pierce the corporate veil of Defendant AOE to hold Defendant Henry personally liable for the initial and enhanced sanctions assessed against Defendant Henry and Defendant AOE in connection with the wrongful transfer of the commercial-use permit.  Mot. at 3-4; see also ECF Nos. 608 & 657.  Defendant Henry and

Defendant AOE counter that this argument is "a moot point" because the sanctions were assessed against Defendant AOE and Defendant Henry jointly and severally.  Opp. at 23.  The Court agrees.

As discussed, the veil-piercing doctrine allows a creditor to pursue a corporate debt personally.  Here, Plaintiff has not shown the existence of any corporate debt owed by Defendant AOE for which Defendant Henry is not already personally liable.  See UA Local 343, 48 F.3d at 1476 (explaining that the "veil-piercing doctrine does not come into play" unless the plaintiff establishes the right to a money judgment against the corporate entity).  There is no judgment against Defendant AOE, and both sanctions orders assessed sanctions jointly and severally against Defendant AOE and Defendant Henry.  There is thus no reason for the Court to conduct the veil-piercing analysis for Defendant AOE when Plaintiff Barnes is already in a position to pursue the amounts against Defendant Henry personally.  Accordingly, to the extent that Plaintiff Barnes's Motion seeks to pierce the corporate veil of Defendant AOE, the Motion is DENIED.

### b. Defendant SHR

Turning to the central question raised by the Motion, the Court must decide whether Plaintiff Barnes has met his burden of showing that there is no genuine issue of fact

material to whether he is entitled to pierce the corporate veil of Defendant SHR.  The Court holds that Plaintiff Barnes has not met that burden.

Considering the legal framework and the circumstances here, the Court concludes that Plaintiff Barnes has failed to establish as a matter of law that the three factors of the Ninth Circuit's veil-piercing test favor piercing the veil.  As discussed earlier, those factors are "[1] the amount of respect given to the separate identity of the corporation by its shareholders, [2] the degree of injustice visited on the litigants by recognition of the corporate entity, and [3] the fraudulent intent of the incorporators."  Seymour, 605 F.2d at 1111.  And to prevail on summary judgment, Plaintiff Barnes must establish that there are no genuine issues of material fact as to the first prong and either of the second two prongs.  See UA Local 343, 48 F.3d at 1475.

During the hearing on Plaintiff Barnes's summary judgment Motion important points were made toward the Seymour first factor on separate identity and second factor on injustice, especially in general regarding the transfer of the permit from Defendant SHR to Defendant AOE; however, most of those points were not adequately raised in Plaintiff Barnes's Motion, and little evidence supporting those points was included, such as pertinent documents and specific findings in

this Court as well as in the bankruptcy proceedings.  Thus, Defendant AOE and Defendant Henry did not have the opportunity to prepare a meaningful response, and the Court cannot consider such points.

The Court will next assess Plaintiff Barnes's presentation pertaining to the Seymour factors.

Here, Plaintiff Barnes has failed to establish as a matter of law that Defendant Henry disregarded corporate formalities, which is necessary for the first factor.  That alone compels the Court to deny the Motion.  But even if Plaintiff Barnes had established a disregard of corporate formalities, he has failed to establish one of the other two factors, which require a showing of injustice or fraudulent intent.

### i. Factor 1: Respect for the Separate Identity of Corporate Entity

The first factor of the three-prong test is the amount of respect given to the separate identity of the corporation.  When analyzing the first factor, courts typically look to whether corporate formalities were disregarded.  "Corporate formalities include keeping separate corporate records, issuing stock, avoiding commingling of funds, and maintaining the formal roles of corporate officials."  Trs. of the Alaska Laborers Health & Sec. Retirement, Training & Legal Servs. Fund v.

Raindance Health Care Grp., Inc., No. 3:09-cv-0120-RRB, 2010 WL 11619563, at *3 (D. Alaska May 2, 2010) (citing Valley Cabinet, 887 F.2d at 772-73).  The mere fact that a company ultimately fails or becomes insolvent "is not probative evidence that corporate formalities were not observed."  Id. (citing Seymour, 605 F.2d at 1112).

Plaintiff Barnes argues that this factor favors piercing the veil because Defendant Henry "is just a guy who has these corporate entities and he does what he pleases [and] he figures that because they are both entirely his he can do what ever [sic] he wants to do."  Mot. at 15.  He also proffers some arguments at pages six, seven, and nine in his Motion, and some evidence, in an attempt to establish that Defendant Henry disregarded corporate formalities.  But his arguments are speculative, and most of the evidence is improper, inadequate, or not material to the relevant legal question.

Plaintiff Barnes submits four pieces of evidence that he claims show a disregard of corporate formalities:  (1) the Hawaii Department of Commerce and Consumer Affairs ("DCCA") business record of Defendant SHR (Ex. A to Friedheim Decl., ECF No. 703-3); (2) a copy of the commercial-use permit, currently in the name of Defendant AOE and associated with the vessel Wiwo`ole (Ex. C to Friedheim Decl.); (3) Defendant SHR's charter vessel insurance policy reflecting its coverage in place at the

- 19 -

time of Plaintiff Barnes's injury (Ex. D to Friedheim Decl., ECF No. 703-6); and (4) copies of checks issued on behalf of Defendant SHR (Ex. E to Friedheim Decl., ECF No. 703-7).[12/]  At the summary judgment stage, the Court must consider all evidence and inferences therefrom in the light most favorable to Defendant AOE and Defendant Henry, as the nonmoving parties. Viewing the limited evidence submitted by Plaintiff Barnes through that lens, the Court identifies material issues of fact as to the amount of respect given to the corporate identity.

For example, Plaintiff Barnes argues that Defendant SHR was not adequately capitalized.  As evidence of undercapitalization, he points to Defendant SHR's lack of assets and its bankruptcy, as well as its "inadequate" insurance coverage that failed to cover injuries to captain or crew.  Mot. at 10.  The fact that a company fails or becomes insolvent is not evidence that corporate formalities were not observed.  See Seymour, 605 F.2d at 1112; see also Sheppard v. River Valley Fitness One, L.P., No. CIV.00-111-M, 2002 WL 197976, at *12 (D.N.H. Jan. 24, 2002) (rejecting the argument that entities had "no assets" as "factually insufficient to support a claim that those entities were undercapitalized for purposes of veil piercing").

---

[12/]  In addition, Plaintiff Barnes points to admissions made by Defendants in their answer to the Third Amended Complaint.

And as far as inadequate insurance coverage, Plaintiff Barnes has provided no authority for his assumption that limited insurance coverage is evidence of undercapitalization for purposes of the veil-piercing analysis.  Indeed, the Court is aware of no such authority.  Most courts measure capitalization based on what is sufficient to operate normal business, not based on the ability to pay a potential liability arising from a lawsuit.  See, e.g., Laborers Clean-Up, 736 F.2d at 524 (explaining that a corporation is undercapitalized when it is unable to meet debts that may reasonably be expected to arise in the normal course of business); In re: Hydroxycut Marketing & Sales Practices Litig., 810 F. Supp. 2d 1100, 1122-23 (S.D. Cal. 2011) (declining to find that company was undercapitalized because even though capital was not enough to satisfy large judgments, it was enough to operate normal business); Sheppard, 2002 WL 197976 at *12 ("[T]he proper measure of the sufficiency of a corporate entity's capitalization is not whether it can pay a potential judgment in a lawsuit but, rather, whether it had sufficient assets to meet the obligations incurred by conducting ordinary business in the industry in which it operates.").

Plaintiff also asserts that Defendant Henry "intermingled his own money with that of his companies."  Mot. at 10.  There is no evidence in the record of commingling of funds.  Plaintiff points to a series of checks issued by

Defendant SHR, sometimes payable to "Chad Barnes" and sometimes payable to "cash."  See Ex. E to Friedheim Decl.  Plaintiff Barnes does not explain how these checks show that Defendant Henry commingled his personal funds with corporate funds.  In fact, if anything, the checks—issued by Defendant SHR—show that Defendants did not commingle funds.[13]

Plaintiff Barnes's other arguments are likewise not backed up by any evidence.  He asserts that Defendants failed to comply with federal and state law to "maintain their corporate existence, including but not limited to holding meetings, having proper insurance in place and paying applicable state and federal taxes, on their employees."  Pl.'s CSF ¶ 13.  Besides there being no evidence to support these claims,[14] Defendants have proffered evidence and a declaration in opposition to show that they indeed complied with state and federal tax requirements.[15]  See Ex. 1 to Decl. of Kris Henry ("Henry

---

[13]  Plaintiff also suggests without explanation that Defendant Henry caused Defendant SHR to "falsely label[] the checks as being for such things at boat supplies."  Mot. at 9.  There is no evidence in the record to support the claim that these checks were "falsely label[ed]," and Plaintiff Barnes's conclusory assertion does not make it so.

[14]  In his CSF, the only evidence Plaintiff Barnes cites for these assertions is Defendants' answer to the operative complaint, ECF No. 697. Pl.'s CSF ¶ 13.  Defendants omitted any response to the relevant paragraph, which they now assert is "of no consequence" because their answer contained a catch-all denial.  Opp. at 11; see also ECF No. 697 ¶¶ 38, 43.  The Court agrees with Defendants that, without more, this apparent omission in the answer is not enough to carry Plaintiff Barnes's burden on summary judgment.

[15]  The Court makes no finding on this point one way or another.  It is unnecessary where Plaintiff Barnes has provided absolutely no evidence in the first place to show that Defendants failed to pay state and federal taxes. (Continued . . . )

Decl."), ECF No. 753-3; Henry Decl. ¶¶ 9, 14.  Plaintiff Barnes's own evidence even shows that Defendant SHR was in good standing with the Hawaii DCCA until it filed for bankruptcy in 2014.  See Ex. A to Friedheim Decl; cf. Henry Decl. ¶ 13.

All this to say, absent from Plaintiff Barnes's Motion and CSF is any meaningful evidence that Defendants disregarded the corporate formalities.  The Motion, CSF, and supporting evidence submitted by Plaintiff Barnes contain no evidence of intermingling funds, no evidence of undercapitalization, no evidence that Defendant SHR failed to pay federal taxes, and no evidence or legal authority that a single-member LLC is required to maintain a certain type of insurance coverage or to hold meetings.

Moreover, Plaintiff Barnes's overarching assertion that Defendant Henry views himself and his LLCs as one and the same is not supported by proper evidence.[16/]  And Plaintiff Barnes vaguely alluding to misrepresentations in the bankruptcy proceedings without pointing to any specific findings or

_____

See Enter. Tech. Holdings, Inc. v. Noveon Sys., Inc., No. 05-CV-2236 W (CAB), 2008 WL 11338356, at *8 (S.D. Cal. July 29, 2008) ("If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence." (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 159-60, 90 S. Ct. 1598, 1609-10 (1970))).

[16/]  The only evidence Plaintiff Barnes cites for this point is argument of counsel from a hearing before this Court.  "[T]he arguments and statements of counsel 'are not evidence and do not create issues of material fact." Barcamerica Int'l USA Tr. v. Tyfield Importers, Inc., 289 F.3d 89, 593 n.4 (9th Cir. 2002) (quoting Smith v. Mack Trucks, 505 F.2d 1248, 1249 (9th Cir. 1974))).

documents to back up his claims is not enough at this late stage in the litigation.

As the moving party, it is Plaintiff Barnes's "initial burden of informing the court of the basis for [his] [M]otion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." Soremekun, 509 F.3d at 984 (citing Celotex, 477 U.S. at 323, 106 S. Ct. 2548). Defendant AOE and Defendant Henry cannot adequately respond to Plaintiff Barnes's legal position if Plaintiff Barnes fails to state it outright in his Motion. And it is not this Court's job to gather evidence and frame Plaintiff Barnes's argument for him. See United States v. Sainz, 933 F.3d 1080, 1087 (9th Cir. 2019) ("[A]s a general rule, our adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief." (quoting Greenlaw v. United States, 54 U.S. 237, 244, 128 S. Ct. 2559 (2008))).

At the summary judgment stage, the Court must consider all evidence and inferences therefrom in the light most favorable to Defendants as the nonmoving parties. The only real undisputed fact tilting in Plaintiff Barnes's favor on this first factor is that Defendant Henry was the sole owner and stockholder of both Defendant SHR and Defendant AOE, and that he

was and is the only person exercising control over both
entities.  Pl.'s CSF ¶ 8; Defs.' CSF ¶ 8 (admitting); see
Robert's, 91 Haw. at 242, 982 P.2d at 871 (a case cited by both
parties, Mot. at 5 & Opp. at 8-9 n.3, that recognized several
factors for piercing the veil, including "identical equitable
ownership in the two entities," "equitable owners . . . with the
domination and control of the two entities," and "sole ownership
of all of the stock in a corporation by one individual").  It is
well settled, however, that piercing the corporate veil requires
more than common ownership.  Chan, 123 F.3d at 1294; cf.
Robert's, 91 Haw. at 242, 982 P.2d at 871 (recognizing as other
factors for piercing the veil, "the concealment and
misrepresentation of the identity of the responsible ownership,
management and financial interest, or concealment of personal
business activities," "the disregard of legal formalities and
the failure to maintain arm's length relationships among related
entities," and "the manipulation of assets and liabilities
between entities so as to concentrate the assets in one and the
liabilities in another").

Applying the Ninth Circuit's "relatively rigorous
veil-piercing standard," Viera, 2010 WL 960347 at *3 (citation
omitted), the limited evidence proffered by Plaintiff Barnes in
his Motion does not support a finding that Defendant Henry so
disregarded the corporate form that the veil should be pierced.

- 25 -

Plaintiff Barnes has failed to meet his burden of establishing the first factor, and Defendants' Opposition raises material issues of fact that preclude disposition of this issue on summary judgment.  Even assuming Plaintiff Barnes had met his burden on the first factor, "evidence establishing shareholder disrespect for a corporation's separate identity alone is an insufficient reason to pierce the corporate veil."  Valley Cabinet, 811 F.2d at 773.  For the sake of completion, the Court briefly considers the second and third factors of the veil-piercing test.

### ii. Factors 2 & 3:  Injustice or Fraudulent Intent

The failure to establish disrespect of the corporate form is enough to deny the Motion.  Nonetheless, the Court briefly addresses the other two factors, which consider the degree of "injustice" and the "fraudulent intent" of the incorporators.  Plaintiff Barnes argues that the evidence proffered by him in his Motion supports a finding of both injustice and fraudulent intent.  The Court disagrees.

In his Motion and when asked by the Court at the hearing, Plaintiff Barnes identified one overarching "injustice."  He asserts that it would be unjust not to pierce the veil because Plaintiff Barnes is suffering financially and will not be able to recover maintenance and cure if the veil is not pierced.  While the Court is sympathetic to this concern, it

is not in itself reason enough to pierce the veil.  Precedent in this circuit establishes that the "inability to collect does not, by itself, constitute an inequitable result."  Valley Cabinet, 877 F.2d at 774; see also UA Local 343, 48 F.3d at 1476 (rejecting the argument that "it would be unjust not to pierce the veil because they would not be able to recover damages otherwise"); Robert's, 91 Haw. at 242, 982 P.2d at 871 (recognizing as other relevant factors those referenced earlier regarding the separate identity factor).

As far as the "fraudulent intent" factor, Plaintiff Barnes argues that Defendant Henry's misrepresentation to DOBOR about the relationship between Defendant SHR and Defendant AOE is evidence of fraud.  Based on the scant evidence submitted by Plaintiff—despite this case having been litigated for many years—the Court cannot agree that this is enough for a finding of fraudulent intent on summary judgment.  As noted earlier, courts in this circuit and in Hawai`i are generally reluctant to pierce the veil on summary judgment, especially where fraud is alleged.  See Robert's, 91 Haw. at 242, 982 P.2d at 871 ("[P]iercing the corporate veil ordinarily should not be disposed of by summary judgment, in view of the complex economic questions often involved, especially if fraud is alleged.").

In any event, it is well settled that "[g]arden variety fraud should be insufficient to pierce the corporate

veil in the absence of evidence of shareholder abuse of the corporate form to defraud creditors." UA Local 343, 48 F.3d at 1476 (quoting Valley Cabinet, 877 F.2d at 773). As the moving party seeking to establish the fraud factor in his favor, Plaintiff Barnes has the burden to establish as a matter of law that Defendant Henry "misused the corporate form to perpetrate the[] fraud."[17/] Id. (quoting Valley Cabinet, 877 F.2d at 773). His Motion fails to meet that burden here.

Viewed in the light most favorable to Defendants, genuine issues of fact exist on all three factors of the veil-piercing inquiry. Accordingly, to the extent that Plaintiff Barnes's Motion seeks to pierce the corporate veil of Defendant SHR, the Motion is DENIED.[18/]

---

[17/] At the hearing, counsel for Defendants suggested that the fraud factor can only be satisfied by a showing that the corporation was formed with fraudulent intent, not that the corporation was subsequently used to perpetrate a fraud. This distinction has been rejected by the Ninth Circuit. See Valley Cabinet, 877 F.2d at 774 ("We perceive no valid distinction between forming a corporation with fraudulent intent and subsequently using a corporate shell to perpetrate a fraud. Consequently, we hold that post incorporation misuse of the corporate form in appropriate cases can satisfy the fraudulent intent element.").

[18/] Although counsel for Plaintiff Barnes seemed to back away from this position at the hearing, the Motion invites the Court to decide the validity of Henry's Chapter 13 discharge, Mot. at 10-13, and to find Defendant Henry personally liable for the full judgment rather than just the value of the maritime lien, Mot. at 21. The Court declines that invitation and instead limits its analysis to the veil-piercing inquiry. The Court makes no finding as to the validity of the bankruptcy discharge or as to the amount Plaintiff Barnes would be entitled to recover if he is ultimately successful in piercing the veil (both of which are issues pending on appeal in the Ninth Circuit).

## CONCLUSION

For above-stated reasons, the Court DENIES Plaintiff Barnes's Motion for [Partial] Summary Judgment to Pierce the Corporate Veil, ECF No. 703, without prejudice to file a renewed motion seeking summary judgment to pierce Defendant SHR's corporate veil.  In the event Plaintiff Barnes intends to file a second motion seeking summary judgment to pierce the corporate veil of Defendant SHR, the Court directs him to develop the record and point the Court to any evidence, documents, prior rulings and specific findings, and legal authority that may be relevant to the analysis.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai`i, November 9, 2020.

Alan C. Kay
Sr. United States District Judge

Barnes v. Sea Hawai`i Rafting, et al., Civ. No. 13-00002 ACK-RLP, Order Denying Plaintiff's Motion for Partial Summary Judgment to Pierce the Corporate Veil (ECF No. 703).